IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Elizabeth Bakalar,

_____
                        Plaintiff(s),

vs.

Michael J. Dunleavy, Tuckerman Babcock,
and State of Alaska,

_____
                        Defendant(s).

CASE NO. 3AN-19- **0Ч4Ч4 CI**

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: Tuckerman Babcock

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) Stephen Koteff _____, whose address is: 1057 W. Fireweed Lane, Ste. 207, Anchorage, AK 99503 _____.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☑ This case has been assigned to Superior Court Judge Aarseth _____ and to a magistrate judge.

☐ This case has been assigned to District Court Judge _____.

CLERK OF COURT

1·10·19
Date

By: KD
Deputy Clerk

I certify that on 1·10·19 a copy of this Summons was ☐ mailed ☑ given to
☐ plaintiff ☑ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order ☐ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk KD

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/17)(cs)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

Exhibit A
Page 1 of 34

STEPHEN KOTEFF, No. 9407070
JOSHUA A. DECKER, No. 1201001
ACLU OF ALASKA FOUNDATION
1057 W. FIREWEED LANE, STE. 207
ANCHORAGE, AK 99503
(907) 258-0044
*skoteff@acluak.org*

COPY
Original Received

JAN 1 0 2019

Clerk of the Trial Courts

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

## SUPERIOR COURT FOR THE STATE OF ALASKA
### THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ELIZABETH BAKALAR, )<br><br>  Plaintiff, )<br><br>v. )<br><br>MICHAEL J. DUNLEAVY, in his )<br>individual and official capacities; )<br>TUCKERMAN BABCOCK; and the )<br>STATE OF ALASKA, )<br><br>  Defendants. )<br> ) | Case No. 3AN-19-04444CI |

## Complaint for Damages and Injunctive Relief

Plaintiff Elizabeth Bakalar complains and alleges as follows:

### Introduction

1. Elizabeth (Libby) Bakalar brings this action to vindicate her

rights to freedom of speech under the Alaska Constitution and the

Constitution of the United States.

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 2 of 34

Exhibit A
Page 2 of 34

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

2. Ms. Bakalar frequently exercises her free speech rights by speaking publicly about national politics and by criticizing President Donald Trump in her blog, "One Hot Mess Alaska."

3. Defendants Michael J. Dunleavy and Tuckerman Babcock violated Ms. Bakalar's rights to free speech when they fired her from her job as an assistant attorney general for the State of Alaska, a position which she held for over twelve years and for which she was repeatedly recognized for professional excellence.

4. Defendants terminated Ms. Bakalar's employment because they were unhappy with the political views expressed in Ms. Bakalar's blog postings.

5. Ms. Bakalar seeks in this action to defend the principle that public employees may not be harassed or retaliated against for holding opinions that are disfavored by elected officials.

### Jurisdiction and Venue

6. This is a complaint for declaratory relief and damages brought pursuant to AS 22.10.020(a) and (g). This court has original jurisdiction over the parties and over the subject matter of this dispute pursuant to AS 09.05.015(a)(1) and AS 22.10.020(a).

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____                                    Page 2 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 3 of 34

Exhibit A
Page 3 of 34

7. Venue is proper in this district pursuant to AS 22.10.030 and Alaska Rule of Civil Procedure 3(c).

## Parties

8. Plaintiff Elizabeth Bakalar is a resident of Juneau, Alaska.

9. Defendant Michael Dunleavy is the Governor of the State of Alaska and is responsible, in whole or in part, for the decision to terminate Ms. Bakalar's employment. Mr. Dunleavy is sued in his official and individual capacities.

10. Defendant Tuckerman Babcock is the chief of staff to Governor Dunleavy, and was the chair of Gov. Dunleavy's transition team after Mr. Dunleavy was elected on November 6, 2018. Mr. Babcock is responsible, in whole or in part, for the decision to terminate Ms. Bakalar's employment. Mr. Babcock is sued in his individual capacity.

11. Defendant State of Alaska is a sovereign entity organized in accordance with the laws of the United States.

## Factual Statement

12. Ms. Bakalar was employed by the State of Alaska as an assistant attorney general in the Department of Law for over twelve years. Ms. Bakalar was first hired by the State as an "Attorney II" in

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

July 2006. The position of Attorney II is considered by the State to be "the initial level of professional law practice."

13.     When she was first hired, Ms. Bakalar was a member of the Department's Human Services section, representing the Department of Health and Social Services in agency advice, litigation, and regulations.

14.     Ms. Bakalar's tenure at the Department of Law was characterized by steady upward advances. In January 2009 she was promoted to the position of Attorney III, "the first experienced level of professional practice," according to the State. At the time of her promotion her supervisors found her to be "very smart and capable."

15.     In April 2011 Ms. Bakalar transferred to the Department's Labor and State Affairs section, where she was assigned to represent the Division of Elections and then-Lieutenant Governor Mead Treadwell.

16.     Ms. Bakalar was again promoted in March 2012, to the position of Attorney IV, defined as a "full working level class" of attorneys who work on more complex cases that "involve difficult legal issues." Ms. Bakalar was seen at this time as a "highly valued" lawyer who could "comfortably handle complex matters" and who did a

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

"splendid job" on issues that were "novel, highly complicated, and involved detailed analysis [*sic*] of applicable constitutional law."

17.     Ms. Bakalar became an indispensable member of the Labor and State Affairs section, and was called upon to represent numerous state agencies in the Departments of Health and Social Services, Administration, Public Safety, Education and Early Development, and Commerce, Community, and Economic Development.

18.     In 2013, Ms. Bakalar received the Attorney General's Award for Legal Writing from then-Attorney General Michael Geraghty, which is given periodically to just one attorney in the Department of Law for excellence in legal writing. The award reads: "In recognition of your thorough research, rigorous analysis, and clear writing—often accomplished on tight deadlines. Your written work product is exceptional."

19.     In July 2018 Ms. Bakalar was promoted into the "expert" class of attorneys that hold the position of Attorney V.

20.     Between 2011 and 2018, Ms. Bakalar authored thirteen published Attorney General Opinions regarding certification of ballot measures, referenda, and the recall of state officials and school board members. Her most recent published Attorney General Opinion

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____                                      Page 5 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 6 of 34

Exhibit A
Page 6 of 34

recommended denying certification of the Stand for Salmon ballot measure, which was subsequently litigated and found partly unconstitutional by the Alaska Supreme Court.

21. Ms. Bakalar also defended the State of Alaska in 2013 in a two-week federal trial brought by Alaska Native individuals and tribes under the language assistance provisions of Section 203 of the federal Voting Rights Act. In late 2014, she defended the Parnell administration in a lawsuit brought by the Alaska Dispatch News under the state Public Records Act over records related to the National Guard sexual assault scandal. In 2016, Ms. Bakalar represented the State in a trial over the conduct of the 2016 primary election in House District 40.

22. Over the course of her employment with the State of Alaska, Ms. Bakalar's representation resulted in favorable decisions to the State from the Alaska Supreme Court and the Ninth Circuit Court of Appeals in *Hughes v. Treadwell*, 341 P.3d 1121 (Alaska 2015); *State v. Alaska Fisheries Conservation Alliance, Inc.*, 363 P.3d 105 (Alaska 2015); *Bachner Co., Inc. v. State*, 387 P.3d 16 (Alaska 2016); *Mallott v. Stand for Salmon*, 431 P.3d 159 (Alaska 2018); *Nageak v. Mallott*, 426 P.3d 930 (Alaska 2018); *Patterson v. Walker*, 429 P.2d 829 (Alaska

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

2018); and *Raymond v. Fenumiai*, 580 Fed.Appx. 569 (Mem) (9th Cir. 2014).

23. Although Ms. Bakalar represented the State in many important and sometimes high-profile cases, Ms. Bakalar was never in what is considered a "policymaking" role during her employment. Neither affiliation with a particular political party nor allegiance to or eschewing of any political points of view was an appropriate requirement for the effective performance of Ms. Bakalar's job.

24. In 2014, Ms. Bakalar started a blog entitled "One Hot Mess Alaska" that focused on her personal lifestyle and parenting.

25. Since 2014, One Hot Mess Alaska has included commentary, often in irreverent terms, on topics such as books and movies, childhood reminiscences, friendships, music, technology, style, fashion, and national politics.

26. After the 2016 presidential election, Ms. Bakalar started blogging more about national politics, to oppose what she viewed as human rights abuses and a deterioration in constitutional norms under the Trump administration.

27. Ms. Bakalar also occasionally participated in rallies or public gatherings to support social justice causes.

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____                                    Page 7 of 25

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

28.    Although Ms. Bakalar has been outspoken about her political views, she has never publicly criticized in her blog or otherwise any positions taken by the State of Alaska in matters related to her work as an assistant attorney general.

29.    Despite the views expressed in her blog, Ms. Bakalar's opinions in no way interfered with the discharge of her duties and responsibilities as an assistant attorney general.  Indeed, Ms. Bakalar won high praise for her work from colleagues and clients from both sides of the political spectrum.

30.    In January 2017 Nancy Driscoll Stroup, an attorney in Palmer, Alaska, started a blog of her own entitled "Ethics and One Hot Mess Alaska."  Ms. Stroup was very clear about the purpose of this blog:  "This blog makes the case that Blogger Libby Bakalar of 'One Hot Mess Alaska' fame should not be working as an Assistant Attorney General for the State of Alaska."

31.    Ms. Stroup has posted numerous times on this blog between January 2017 and the present and has repeatedly called for Ms. Bakalar to lose her job as an assistant attorney general.  Ms. Stroup made clear that she believes Ms. Bakalar should not be an

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Page 8 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 9 of 34

Exhibit A
Page 9 of 34

assistant attorney general for the State of Alaska because Ms. Bakalar is "hysterically anti-Trump" and has "a liberal worldview."

32. Ms. Stroup also made many accusations that Ms. Bakalar was blogging while she was at work and violating provisions of the State of Alaska Executive Ethics Act that prohibit state employees from conducting personal business on State time. Ms. Stroup also voiced these complaints to a number of State officials.

33. Soon after Ms. Stroup made these complaints, the State of Alaska initiated an investigation into Ms. Bakalar's blogging activities to determine if she was using State time to write and post to her blog.

34. The State hired an outside attorney, William J. Evans from the Anchorage law firm Sedor Wendlandt Evans Filippi, to conduct the investigation and to issue findings about whether Ms. Bakalar had violated the Executive Ethics Act.

35. On March 16, 2017, Mr. Evans issued a fourteen-page report that concludes that Ms. Bakalar did not violate any ethical standards in writing or posting to One Hot Mess Alaska. The report further notes that Ms. Bakalar's supervisor described her as "an exceptional attorney who can produce organized, top notch legal work quicker than any attorney she has supervised during her long career."

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Her supervisor was also certain that Ms. Bakalar's blogging activities "had not interfered with her work" in any way.

36. On November 6, 2018, Michael Dunleavy was elected Governor of Alaska. On November 8, 2018, the Governor-elect announced that Tuckerman Babcock would serve as his chief of staff and as the chair of Mr. Dunleavy's transition team.

37. Immediately prior to being selected as Mr. Dunleavy's chief of staff and transition chair, Mr. Babcock served for two-and-a-half years as the chair of the Alaska Republican Party.

38. Mr. Babcock's primary role as chair of the Alaska Republican Party was to promote Republican candidates and get them elected to State offices.

39. As the chair of the Alaska Republican Party, Mr. Babcock was well known for his criticisms of Republicans who, once elected, attempted to work in bipartisan coalitions or who attempted to work in a bipartisan manner to address important policy issues in Alaska.

40. As the chair of the Alaska Republican Party, Mr. Babcock also attempted to undermine Republican elected officials who worked in a bipartisan manner and attempted to facilitate, sometimes successfully, their removal from office.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Page 10 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 11 of 34

Exhibit A
Page 11 of 34

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

41.     On November 16, 2018, Mr. Babcock sent a memorandum to more than 1,200 at-will State of Alaska employees requesting their resignations.  The Babcock memorandum states in part that "the incoming administration will be making numerous personnel decisions" and that Mr. Dunleavy "is committed to bringing his own brand of energy and direction to state government."

42.     Although characterized as "customary during the transition from one administration to the next," the request for resignations was sent to an unprecedented number of State of Alaska employees, including, according to several legislators who criticized the move, "medical doctors, psychiatrists, pharmacists, fiscal analysts, state tax code specialists, investment managers, petroleum geologists, trust managers, accountants, research analysts, IT professionals, loan officers, military & veterans affairs coordinators, marine transportation managers, administrative law judges, and state attorneys presently working on behalf of the public on important and complicated legal issues, including prosecutors on criminal cases."

43.     When asked about the memorandum the day after it was issued, Mr. Babcock said that then-Governor-elect Dunleavy "just

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

wants all of the state employees who are at-will . . . to affirmatively say, 'Yes, I want to work for the Dunleavy administration.'"

44.    Mr. Babcock further stated that the requests for resignations were meant to solicit a pledge of allegiance from state employees to Mr. Dunleavy's political positions by asking, "'Do you want to work on this agenda, do you want to work in this administration? Just let us know.'"

45.    Mr. Babcock also announced that any state employee who refused or failed to offer her or his allegiance to Mr. Dunleavy risked being fired. "If you don't want to express a positive desire, just don't submit your letter of resignation," Babcock said. "And then you've let us know you just wish to be terminated."

46.    Mr. Dunleavy echoed Mr. Babcock's description of the resignation requests, saying they were meant "to give people an opportunity to think about whether they want to remain with this administration . . . ."

47.    The Babcock memorandum states that the resignations would not be "automatic," but that "consideration will be given" to each employee's "statement of interest in continuing in [her or his] current or another appointment-based state position."

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

48.    The Babcock memorandum set a deadline of November 30, 2018, for employees to submit their resignations and statements of allegiance to the Dunleavy transition team.

49.    On information and belief, all of the attorneys in the Department of Law received the Babcock memorandum requesting their resignations, regardless of whether they were "policymakers" or not.  Ms. Bakalar was one of the non-policymaking attorneys who received it.

50.    The Babcock memorandum caused a great deal of confusion, uncertainty, and anxiety within the Department.  In an effort to allay these concerns, then-Attorney General Jahna Lindemuth provided the Department's attorneys with suggested language for those attorneys who intended to comply with the Babcock memorandum's resignation ultimatum.  The language included the following statement:  "I would like to continue serving the State of Alaska in the new Dunleavy administration in my current position, and I ask that my resignation not be accepted."

51.    Ms. Bakalar submitted her resignation to the Dunleavy transition team before the November 30 deadline, and included the statement that Attorney General Lindemuth suggested.  Ms. Bakalar

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____                                    Page 13 of 25

also described in her resignation notice all of the work she had performed for the Department and for the State of Alaska.

52.     Mr. Dunleavy was sworn in as the Governor of Alaska at 12:00 p.m. on December 3, 2018.

53.     At 12:18 p.m., Ms. Bakalar was notified that her resignation had been accepted and that her employment had been terminated.  She was given less than two hours to clean out her office and leave the building.

54.     Ms. Bakalar's employment was terminated at the direction of Mr. Dunleavy and Mr. Babcock.

55.     Only one other non-policymaking attorney in the Department, assistant attorney general Ruth Botstein, was fired when Mr. Dunleavy became Governor.  Like Ms. Bakalar, Ms. Botstein was an Attorney V, had outstanding performance evaluations, enjoyed the confidence of her supervisors and colleagues, and had represented the State in numerous cases.  Ms. Botstein worked in the Opinions, Appeals, and Ethics section of the Department and has twice represented the State of Alaska before the United States Supreme Court.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Page 14 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 15 of 34

Exhibit A
Page 15 of 34

56.     Although Ms. Botstein's social media presence is much more limited than Ms. Bakalar's, in January 2017 Ms. Botstein tweeted or retweeted several posts that are critical of Donald Trump.

57.     Shortly after President Trump assumed office, Ms. Botstein retweeted two tweets from an account named "Rogue POTUS Staff," one of which accused Mr. Trump as wanting to "be remembered as a King," and another arguing that Mr. Trump is "known to favor low quality pub[lic] schools, saving quality edu[cation] for the right, to remind commoners 'where they rank in the world.'"

58.     In addition to complaining about Ms. Bakalar's blogging activities, Ms. Stroup also complained about Ms. Botstein's tweets.  On February 27, 2017, Ms. Stroup posted a message on social media in which she complained that "[t]he 'Deep State' is a true problem in our country. . . .  The vast majority of AAGs for the State of Alaska are liberal.  One of them – one of the state's top appellate attorneys – who has represented the State in many high profile political cases (including US Supreme Court cases) is posting all sorts of left-wing liberal nonsense on her twitter feed and keeps retweeting the completely bogus 'Rogue Potus Staffer' stuff. . . .  I don't trust ANY of these AAGs to represent conservative Alaskan's [*sic*] interests."

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

59.     After the 2018 election, Ms. Stroup complained to Mr. Dunleavy's transition team that attorneys in the Labor and State Affairs and Opinions, Appeals, and Ethics sections were "very, very liberal." She urged the transition team to "carefully vet" such lawyers because she believed having them work for the State of Alaska created a "lack of trust."

60.     Like Ms. Bakalar, Ms. Botstein submitted a resignation letter in response to the Babcock memorandum.

61.     Like Ms. Bakalar, Ms. Botstein's resignation was accepted within minutes of Mr. Dunleavy becoming Governor.

62.     On December 12 and 13, 2018, a news story about Ms. Bakalar's and Ms. Botstein's firings aired on Alaska radio. The story highlighted Ms. Botstein's most recent United States Supreme Court argument in which she argued a position on behalf of the State that was closely aligned with John Sturgeon, a hunting advocate who is fighting a legal battle to increase access to federal lands in Alaska. Mr. Sturgeon's case has been known to be a "celebrated cause for conservative Alaska politicians, including [Mr.] Dunleavy."

63.     The December 12 and 13 news story also quoted Mr. Sturgeon as saying that Ms. Botstein "did a fantastic job. . . . I was

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

extremely surprised that they didn't keep her, and I'm not sure the reason."

64.    On December 13, soon after the news story aired, the State approached Ms. Botstein to inquire about her interest in being reinstated to her position.

65.    Ms. Botstein asked if Ms. Bakalar was also asked to consider an offer of reinstatement. She was told no.

66.    On information and belief, several other State of Alaska employees intended, but were unable, to submit resignation notices on November 30 because a strong earthquake that occurred in Southcentral Alaska on that day disrupted their ability to get to work or send and receive email. These employees were also fired from their jobs on the morning of December 3.

67.    On information and belief, these employees submitted their resignation letters immediately after learning that they had been fired, explaining the reason for their inability to meet the Babcock memorandum's November 30 deadline, and their termination notices were rescinded.

68.    Three other non-policymaking employees refused to submit their resignations to the Dunleavy transition team because they did not

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

believe that their jobs required them to offer a pledge of allegiance to the new Governor.

69.    All three of the employees who refused to submit their resignations were fired by Mr. Babcock as soon as Mr. Dunleavy became Governor.

**First Cause of Action: 42 U.S.C. § 1983**
**Violation of the Right to Freedom of Speech Under the First**
**Amendment of the U.S. Constitution**

70.    The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

71.    Inherent in the First Amendment's guarantee is the principle that public employees in non-policymaking roles cannot constitutionally be compelled to relinquish the free speech rights they otherwise enjoy as citizens to comment on matters of public interest.

72.    Plaintiff Elizabeth Bakalar frequently engaged in public speech on matters of public concern.

73.    Ms. Bakalar was employed in a non-policymaking role as an assistant attorney general for the State of Alaska.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@achuak.org

74.   Defendants received and were aware of numerous complaints about Ms. Bakalar's public speech on matters of public concern.

75.   Much of Ms. Bakalar's public speech on matters of public concern was contrary to the political beliefs of Defendants Dunleavy and Babcock.

76.   Defendants retaliated against Ms. Bakalar for her public and political speech by terminating her employment.

77.   Defendants had no legitimate reason for terminating Ms. Bakalar's employment.

78.   By terminating Ms. Bakalar's employment, Defendants have violated, and continue to violate Ms. Bakalar's rights to free speech guaranteed by the First Amendment to the United States Constitution.

79.   Defendants' violation of Ms. Bakalar's free speech rights was done with intent, malice, and gross and reckless disregard for Ms. Bakalar's constitutional rights.

80.   Ms. Bakalar has suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

## Second Cause of Action: Violation of the Right to Freedom of Speech Under Article I § 5 of the Alaska Constitution

81.    Article I § 5 of the Alaska Constitution provides: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

82.    Like the United States Constitution, the Alaska Constitution's free speech guarantee includes the principle that public employees in non-policymaking roles cannot constitutionally be compelled to relinquish the free speech rights they otherwise enjoy as citizens to comment on matters of public interest.

83.    Plaintiff Elizabeth Bakalar frequently engaged in public speech on matters of public concern.

84.    Ms. Bakalar was employed in a non-policymaking role as an assistant attorney general for the State of Alaska.

85.    Defendants received and were aware of numerous complaints about Ms. Bakalar's public speech on matters of public concern.

86.    Much of Ms. Bakalar's public speech on matters of public concern was contrary to the political beliefs of Defendants Dunleavy and Babcock.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

87.     Defendants retaliated against Ms. Bakalar for her public and political speech by terminating her employment.

88.     Defendants had no legitimate reason for terminating Ms. Bakalar's employment.

89.     By terminating Ms. Bakalar's employment, Defendants have violated, and continue to violate Ms. Bakalar's rights to free speech guaranteed by Article I § 5 of the Alaska Constitution.

90.     Defendants' violation of Ms. Bakalar's free speech rights was done with intent, malice, and gross and reckless disregard for Ms. Bakalar's constitutional rights.

91.     Ms. Bakalar has suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

### Third Cause of Action: Violation of the Implied Covenant of Good Faith and Fair Dealing

92.     Every at-will employment contract in Alaska is subject to the implied covenant of good faith and fair dealing.

93.     The implied covenant of good faith and fair dealing has two components, a subjective component and an objective component.  If an employer breaches either component, the employer breaches the implied covenant.

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Page 21 of 25

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

94.    An employer breaches the subjective component of the implied covenant of good faith and fair dealing when it terminates an employee's employment and the termination decision is motivated by an improper or impermissible objective.

95.    An employer breaches the objective component of the covenant of good faith and fair dealing if it treats an employee in a manner that a reasonable person would regard as unfair.

96.    Under either component an employer cannot legally terminate an employee on unconstitutional grounds or for reasons violating public policy.

97.    It is the public policy of the State of Alaska, embodied in Article XII, § 6 of the Alaska Constitution, that the employment of persons by the State be governed by the merit principle.

98.    It is also the public policy of the State of Alaska, embodied separately in AS 39.26.010, that a person's political affiliation or philosophy have no bearing on her or his consideration for employment with the State.

99.    It is also the policy of the State of Alaska, embodied in AS 44.17.040, that the principal executive officer of each State department be responsible for the appointment and removal of

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

employees. In accordance with this policy, Ms. Bakalar was hired with the understanding that she was subject to removal only by the Attorney General.

100. Defendants Michael Dunleavy and Tuckerman Babcock unconstitutionally directed the termination of Ms. Bakalar's employment with the State.

101. Defendants Michael Dunleavy and Tuckerman Babcock also violated the public policy of the State when they directed the termination of Ms. Bakalar's employment.

102. Defendants violated both the subjective and objective components of the implied covenant of good faith and fair dealing when they terminated Ms. Bakalar's employment.

103. Defendants' violation of the covenant has caused Ms. Bakalar harm in the form of lost wages, benefits, and other remuneration.

## Prayer for Relief

Accordingly, based on the facts set forth above, Plaintiff requests that judgment be entered in her favor as follows:

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____                                    Page 23 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 24 of 34

Exhibit A
Page 24 of 34

1. For declaratory judgment that Defendants violated Ms. Bakalar's First Amendment rights to free speech by terminating her employment;

2. For declaratory judgment that Defendants violated Ms. Bakalar's rights to free speech guaranteed by the Alaska Constitution by terminating her employment;

3. For declaratory judgment that Defendants violated the implied covenant of good faith and fair dealing by terminating Ms. Bakalar's employment;

4. For an injunction ordering Mr. Dunleavy in his official capacity and the State of Alaska to reinstate Ms. Bakalar to her position as an assistant attorney general, and pay her back pay and front pay and make her whole with respect to any other diminishment of remuneration or compensation resulting from the loss of her job;

5. For an injunction ordering Defendants to refrain from any future retaliation against Ms. Bakalar and any other similarly situated non-policymaking State of Alaska employees;

6. For damages, including punitive damages, against Defendants Dunleavy and Babcock in their individual capacities for the unlawful

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

*Bakalar v. Dunleavy, et al.*
COMPLAINT
Case No. 3AN-19-_____

Page 24 of 25

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 25 of 34

Exhibit A
Page 25 of 34

deprivation of Ms. Bakalar's free speech rights, in an amount to be adduced by the evidence at trial;

7.  For Plaintiff's costs and attorneys' fees incurred in obtaining the relief sought in this proceeding; and

8.  For such other relief as this court may deem just and equitable.

Dated January 10, 2019.

By:_____
Stephen Koteff, Bar No. 9407070
Joshua A. Decker, Bar No. 1201001
ACLU OF ALASKA FOUNDATION
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
(907) 263-2007 (telephone)
skoteff@acluak.org
jdecker@acluak.org

*Counsel for Plaintiff Elizabeth Bakalar*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

SOA DOA
PERSONNEL

APR 1 6 2012

TECHNICAL SERVICE

STATE OF ALASKA
DEPARTMENT OF LAW
PERFORMANCE EVALUATION REPORT FOR ATTORNEYS AND ASSOCIATE ATTORNEYS

| NAME | JOB CLASSIFICATION TITLE | PCN | EMPLOYEE NUMBER |
|---|---|---|---|
| Elizabeth (Libby) Bakalar | Attorney III | 03· bn | 302154 |

| REPORT COVERAGE | | REASON FOR REPORT |
|---|---|---|
| FROM | TO | |
| 1/31/08 | 3/1/2012 | ☒ ANNUAL   ☐ RESIGNATION   ☒ OTHER (SPECIFY) Promotion |

## OVERALL PERFORMANCE RATING

☐ DOES NOT MEET DEPARTMENTAL EXPECTATIONS    ☒ MEETS OR EXCEEDS DEPARTMENTAL EXPECTATIONS*

Rater's Recommended Action: Promotion to Attorney IV, effective 3/16/2012.

Evaluation was discussed with employee ☒ YES ☐ NO  If no, explain: _____

Signature of Rater _Nathalie Vaada_  Title Chief, Labor & State Affairs  Date 3/15/12

Employee:  ☒ Concur with Evaluation    ☐ Disagree (Employee comments attached)

Signature: _____  Date 3/15/12

Division Signature: _____  Title Chief Civil Div  Date 4/16/12

Department Signature: _____  Title Dep. A.G.  Date 4/16/12

## DUTIES ASSIGNED TO THIS POSITION

During this rating period Libby worked for the Human Services section of the Juneau office until August 1, 2011, when she transferred to the Labor and State Affairs Section. While in Human Services her primary duties include representing the Division of Public Health, the food stamp section of the Division of Public Assistance, she handled all of the substantiated allegations of neglect and abuse under AS 47.05.300 for the Office of Children's Services, and conducted the involuntary mental commitments for southeast Alaska, she also handled a number of significant administrative (602) appeals to the superior court, as well as civil litigation related to the Medicaid program. Upon transferring to the Labor and State Affairs Section in August 2011, Libby was assigned to represent the Division of Elections and the Lieutenant Governor's office. She handles such matters as initiative applications, ballot challenges, candidate and voter eligibility, and compliance with federal voting requirements. Libby represents elections and the Lieutenant Governor in litigation, provides advice, and assists with legislation and regulations.

SOA DOA DOPLR

MAY 2 3 2012

For purposes of AS 39.27.011(h) this rating satisfies the requirement for a rating of "good" or higher."
Planning &
Information Center

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page
Case No. 3AN-19-

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 27 of 34

Exhibit A
Page 27 of 34

1. Applies good judgment in advising on legal matters and in preparing written materials and oral presentations:

☐ Deficient ☐ Needs Improvement ☒ Good ☐ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

Libby is very bright and capable. She is well versed on providing advice on legal issues and has become very comfortable with her role as an agency attorney. Libby is an exceptionally good writer. And, since the last rating period, she has worked hard on her personal interaction and verbal advice with her clients. In a short period of time, Libby has established a good working relationship with elections and the lieutenant governor's office and they routinely seek her advice and trust her judgment.

2. Applies effective legal research in advising on legal matters and in preparing written materials and oral presentations:

☐ Deficient ☐ Needs Improvement ☐ Good ☒ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

Libby does an excellent job on legal research; she is quick to understand an issue and to find authority on point. She is able to recognize and assess the core legal issues of her cases. Libby has worked to finely hone her research skills and the effort shows in her written anaylsis. She is an exceptional writer. She continues to work on and improve her oral presentations. She has already demonstrated her ability to learn new areas of law (i.e., election law) and to produce excellent written memoranda on election issues under tight deadlines.

3. Produces grammatical, well-organized, concise, understandable, and persuasive written materials:

☐ Deficient ☐ Needs Improvement ☐ Good ☒ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

Libby has great technical skills and is very confident with her writing. She was the "go to" person in the Human Services section for assistance in writing and editing to make the section work product better. Libby has continued to produce high-quality written work in the Labor & State Affairs section.

4. Makes well-organized, concise, understandable, and persuasive oral presentations:

☐ Deficient ☐ Needs Improvement ☒ Good ☐ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

Libby continues to work on her oral presentation skills, and shows more skill and ease in her oral expositions. Her work in L&SA has enabled her to argue before the superior court on complex case motions and appeals.

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page 5
Case No. 3AN-19-                 Exhibit A
                                          Page 28 of 34

5. Efficiently allocates time to competing priorities, and works diligently and efficiently to complete assignments by deadlines:

☐ Deficient ☐ Needs Improvement ☐ Good ☒ Exceptional

☐ Not observed during this rating period

Libby is very well organized. She works diligently to learn the law and become familiar with the facts of her cases and is diligent in meeting her deadlines. Her work product improved as she continued to focus more on the details and subtexts of the project. She is collaborative with others and exercises good judgment as to when to ask others to brainstorm with her in fleshing out ideas and concepts.

6. Willingly accepts and carries out new assignments, accepts supervision, demonstrates a positive attitude toward the job, and demonstrates a willingness to learn new skills:

☐ Deficient ☐ Needs Improvement ☐ Good ☒ Exceptional

☐ Not observed during this rating period

Libby willingly takes on new work assignments. She has been instrumental in researching and analyzing a novel constitutional issue for DMV during this period. She has a positive attitude about her work assignments. She also willingly accepts supervision and follows through on her case assignments.

7. Demonstrates the ability to work independently, and to identify, analyze, and solve problems:

☐ Deficient ☐ Needs Improvement ☒ Good ☐ Exceptional

☐ Not observed during this rating period

Libby is able to work independently and her recent move to the L&SA section has allowed her independence to flourish. While in the Human Services section, the circumstances often limited Libby from being able to take full ownership of a project or matter. Instead, she often worked with the section supervisor collaboratively on cases. With the cases she handled on her own in Human Services, she worked through issues appropriately and demonstrated the ability to handle matters independently. In the LSA section, she is able to act independently on matters and has a platform to demonstrate the ability to handle a more complex caseload using her own judgment, skill and expertise.

8. Demonstrates proficiency in trial and administrative advocacy skills, including planning and implementing an effective litigation strategy, conducting thorough discovery, developing a strong record, skillfully examining witnesses, presenting effective opening and closing arguments, and preserving issues for appeal:

☐ Deficient ☐ Needs Improvement ☒ Good ☐ Exceptional

☐ Not observed during this rating period

Libby has developed a strong set of litigation skills. She especially excels as to motion practice and oral advocacy on those motions. She has handled a number of contested evidentiary hearings at the OAH and by all accounts has done a fine job.

9. Proficiently handles regulation and legislation assignments:

☐ Deficient ☐ Needs Improvement ☐ Good ☒ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

Libby's excellent writing skills have served her well on regulation and legislation projects.

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page 5
Case No. 3AN-19-

Exhibit A
Page 29 of 34

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 29 of 34

10. Works effectively with others as a member of a team, the section, the office, and the department:

☐ Deficient     ☐ Needs Improvement     ☒ Good     ☐ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position
Libby is a team player who works very well with others and is a great colleague.

---

11. Regularly communicates with clients or victims and law enforcement about significant developments in their matters, and has established efficient and effective working relationships with them:

☐ Deficient     ☐ Needs Improvement     ☒ Good     ☐ Exceptional

☐ Not observed during this rating period
Libby had very good working relationships with her client at DHSS and has already established a good working relationship with elections and the Lt. Governor's office. DHSS clients all reported how attentive she was to their questions and concerns and they were sorry to see her leave. It will help her enormously to have her primary client be in Juneau as it will focus her interpersonal efforts, which while top notch, are still not her preferred mode of communication. In her last review this was an issue mentioned by the rater that she should focus on and to her credit she did. Those efforts resulted in better client relationships and better outcomes for the client.

---

12. Is considerate of and interacts effectively, respectfully, and professionally with clients or victims and law enforcement, support staff, co-workers, members of the public, opposing counsel, court personnel, and supervisors:

☐ Deficient     ☐ Needs Improvement     ☒ Good     ☐ Exceptional

☐ Not observed during this rating period
☐ Does not apply to this position

---

13. Demonstrates good work habits, including punctuality, reliability, and professional appearance:

☐ Deficient     ☐ Needs Improvement     ☒ Good     ☐ Exceptional

☐ Not observed during this rating period

---

14. Effectively manages and organizes files, and keeps supervisor and support staff apprised of significant workload issues:

☐ Deficient     ☐ Needs Improvement     ☐ Good     ☒ Exceptional

☐ Not observed during this rating period
Libby is well-organized and efficient with her time. She manages her projects and cases very well. She keeps her supervisors and her clients informed at all facets of a project. She also prepares a monthly report for the lieutenant governor to apprise him of developments in election and initiative matters -- a report that is much appreciated by the lieutenant governor.

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page 4
Case No. 3AN-19-

Exhibit A
Page 30 of 34

Case 3:19-cv-00025-JWS    Document 1-1    Filed 02/06/19    Page 30 of 34

15. Complies with departmental policies such as those on settlement authority, appeals, case assessment, charging decisions, and press contacts:

☐ Deficient    ☐ Needs Improvement    ☒ Good

☐ Not observed during this rating period

16. Complies with departmental requirements for leave, travel, and timesheets:

☐ Deficient    ☐ Needs Improvement    ☒ Good

☐ Not observed during this rating period

17. Acts ethically and honestly in performing duties:

☐ Unacceptable    ☒ Acceptable

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page 5
Case No. 3AN-19-

Exhibit A
Page 31 of 34

Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 31 of 34

18. Additional comments and performance goals:

Libby has been an attorney for over six years and has been with the Department for more than five years. Each year there is a marked leap in her continued development as an attorney. She was a great member of the human services team and is missed by that section. Libby's greatest skills continue to be her writing, which is technically outstanding, and her fine analytical skills. She continues to work on making these skills even better. Libby has taken supervision and suggestions about how to improve the other facets of her work very well and has made improvements in those areas, including being more comfortable with oral argument in administrative proceedings, court, and client meetings. She still relies upon her writing and analytical skills, but has seen the benefit of face-to-face meetings in getting to core issues and problems so that she can better advocate for her client.

Libby is always willing and ready to take on a new project or assist in an existing project and get it done. Libby has evolved and developed into an attorney that can handle any project handed to her. She is competent, qualified and works independently to achieve the goals of her client. She is collaborative when necessary but can rely on her own judgment when it comes to her cases. She can comfortably handle complex matters.

Since joining the L&SA section in August 2011, Libby has demonstrated her ability to work independently and effectively for the division of elections and the lieutenant governor. She has effectively handled several high-level and politically sensitive election matters since joining the section. She has written several opinions for the division, including a legal review of a petition seeking to recall a state representative and a complicated opinion on an initiative that seeks to revive a coastal zone management program in state law. The issues she has handled for elections have been novel, highly complicated, and involved detailed analysis of applicable constitutional law. She has done a splendid job for elections. The lieutenant governor and the director of elections routinely seek her advice on election matters and they quickly came to trust her advice. She has shown her versatility as a legal practioner as well, having volunteered to take on a superior court appeal for the Division of Motor Vehicles regarding a constitutional challenge to division practices and policies regarding the change of a person's sex on their driver's license. Libby is already a highly valued member of the L&SA section and it is a pleasure to work with her.

Based on the rater's joint review of Libby's work and the characteristics and performance standard typical of an Attorney IV, we are pleased to promote Libby to an Attorney IV.

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page 6
Case No. 3AN-19-

Exhibit A
Page 32 of 34

| SUPERVISION | | | |
| --- | --- | --- | --- |
| ☒ Does not apply to this position | | | |

**19. Appropriately directs and delegates tasks to employees:**

☐ Deficient    ☐ Needs Improvement    ☐ Good    ☐ Exceptional

☐ Not observed during this rating period

**20. Regularly and effectively communicates – including written evaluations – with employees about the quality of their performance and developments that may concern the employees:**

☐ Deficient    ☐ Needs Improvement    ☐ Good    ☐ Exceptional

☐ Not observed during this rating period

**21. Is readily approachable and accessible to subordinates, guides and motivates employees, and fosters a positive work environment:**

☐ Deficient    ☐ Needs Improvement    ☐ Good    ☐ Exceptional

☐ Not observed during this rating period

**22. Resolves conflicts constructively and capably handles challenging situations:**

☐ Deficient    ☐ Needs Improvement    ☐ Good    ☐ Exceptional

☐ Not observed during this rating period

Bakalar v. Dunleavy, et al.
COMPLAINT, Exhibit 1, Page Exhibit A
Case 3:19-cv-00025-JWS    Document 1-1    Filed 02/06/19    Page 33 of 34    Page 33 of 34

The performance ratings are defined as follows:

## OVERALL PERFORMANCE RATINGS

1.  **Does not meet departmental expectations:** The employee's performance during the rating period was below job expectations for the position, whether due to lack of effort or lack of skill. The employee's work was inadequate. Corrective action is required.

2.  **Meets or exceeds departmental expectations:** The employee's performance during the rating period consistently satisfied or exceeded job expectations for the position, reflected positively on the organization, and demonstrated a commitment to the organization's work. For purposes of AS 39.27.011(h) this rating satisfies the requirement of a rating of "good" or higher."

## COMPONENT RATINGS

1.  **Deficient:** The employee's performance during the rating period consistently or significantly fell below job expectations. Corrective action is required.

2.  **Needs improvement:** The employee's performance was inconsistent and needs improvement to fully meet job expectations. Corrective action is required.

3.  **Good:** The employee's performance during the rating period consistently met or exceeded job expectations, reflected positively on the organization, and demonstrated a commitment to the organization's work. The employee is a fully competent, valuable member of the organization.

4.  **Exceptional:** The employee performed extraordinarily well during the rating period, greatly exceeding job expectations.

The overall performance rating on the first page reflects the rater's overall assessment of the employee's job performance during the rating period. The individual component ratings on the following pages reflect the rater's assessment of the various components of the employee's job performance. The overall performance rating is not an average or similar function of the component ratings.

Bakalar v. Dunleavy, et al.        Exhibit A
Case 3:19-cv-00025-JWS   Document 1-1   Filed 02/06/19   Page 34 of 34 Exhibit 1  Page 8
Case No. 3AN-19-   Page 34 of 34