Mark Choate, AK #8011070
Attorney for Plaintiff
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Tel: (907) 586-4490
Fax: (206) 424-9705
Email: lawyers@choatelawfirm.com

## IN THE UNITED STATES DIsTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ELIZABETH BAKALAR,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA,<br><br>    Defendants. | Case No. 3:19-CV-00025 JWS<br><br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## <u>FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiff Elizabeth Bakalar, by and through her counsel Choate Law Firm, LLC, alleges against the above-named Defendants as follows:

### INTRODUCTION

1.    Plaintiff Elizabeth Bakalar ("Ms. Bakalar" or "Plaintiff") brings this action to vindicate her rights to freedom of speech under the Alaska Constitution and the Constitution of the United States.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 1 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 1 of 22

2.        Ms. Bakalar frequently exercises her free speech rights by speaking publicly about national politics and by criticizing President Donald Trump in her blog, "One Hot Mess Alaska."

3.        Defendants Michael J. Dunleavy and Tuckerman Babcock (collectively, "Defendants") violated Ms. Bakalar's rights to free speech when they fired her from her job as an assistant attorney general for the State of Alaska, a position which she held for over twelve years and for which she was repeatedly recognized for professional excellence.

4.        Defendants terminated Ms. Bakalar's employment because they were unhappy with the political views expressed in Ms. Bakalar's blog postings.

5.        Ms. Bakalar seeks in this action to defend the principle that public employees may not be harassed or retaliated against for holding opinions that are disfavored by elected officials.

## JURISDICTION AND VENUE

6.        This court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983. This court has ancillary jurisdiction pursuant to 28 U.S.C. §1367 over each of Plaintiff's claims, to the extent they arise under Alaska law.

7.        Venue is proper in the District of Alaska under 28 U.S.C. §1391(b) based on the fact that all of the Defendants reside in the District, based upon the fact that all of the Defendants reside in the State of Alaska, and based on the fact that most if not all of the events and conduct on which the claims are based occurred, or are occurring, in the District.

## PARTIES

8.        Plaintiff Elizabeth Bakalar is a resident of Juneau, Alaska.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 2 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 2 of 22

9. Defendant Michael Dunleavy ("Gov. Dunleavy") is the Governor of the State of Alaska, a resident of the State of Alaska, and is responsible, in whole or in part, for the decision to terminate Ms. Bakalar's employment. Mr. Dunleavy is sued in his official and individual capacities.

10. Defendant Tuckerman Babcock ("Mr. Babcock") was the chief of staff to Governor Dunleavy, a resident of the State of Alaska, and was the chair of Gov. Dunleavy's transition team after Mr. Dunleavy was elected on November 6, 2018. Mr. Babcock is responsible, in whole or in part, for the decision to terminate Ms. Bakalar's employment. Mr. Babcock is sued in his individual capacity.

11. Defendant State of Alaska is a sovereign entity organized in accordance with the laws of the United States.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. Ms. Bakalar was employed by the State of Alaska as an assistant attorney general in the Department of Law for over twelve years. Ms. Bakalar was first hired by the State as an "Attorney II" in July 2006. The position of Attorney II is considered by the State to be "the initial level of professional law practice."

13. When she was first hired, Ms. Bakalar was a member of the Department's Human Services section, representing the Department of Health and Social Services in agency advice, litigation, and regulations.

14. Ms. Bakalar's tenure at the Department of Law was characterized by steady upward advances. In January 2009 she was promoted to the position of Attorney III, "the first experienced level of professional practice," according to the State. At the time of her promotion, her supervisors found her to be "very smart and capable."

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 3 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 3 of 22

15.     In April 2011, Ms. Bakalar transferred to the Department's Labor and State Affairs section, where she was assigned to represent the Division of Elections and then-Lieutenant Governor Mead Treadwell.

16.     Ms. Bakalar was again promoted in March 2012, to the position of Attorney IV, defined as a "full working level class" of attorneys who work on more complex cases that "involve difficult legal issues." Ms. Bakalar was seen at this time as a "highly valued" lawyer who could "comfortably handle complex matters" and who did a "splendid job" on issues that were "novel, highly complicated, and involved detailed analysis [sic] of applicable constitutional law."

17.     Ms. Bakalar became an indispensable member of the Labor and State Affairs section and was called upon to represent numerous state agencies in the Departments of Health and Social Services, Administration, Public Safety, Education and Early Development, and Commerce, Community, and Economic Development.

18.     In 2013, Ms. Bakalar received the Attorney General's Award for Legal Writing from then-Attorney General Michael Geraghty, which is given periodically to just one attorney in the Department of Law for excellence in legal writing. The award reads: "In recognition of your thorough research, rigorous analysis, and clear writing-often accomplished on tight deadlines. Your written work product is exceptional."

19.     In July 2018 Ms. Bakalar was promoted into the "expert" class of attorneys that hold the position of Attorney V.

20.     Ms. Bakalar also defended the State of Alaska in 2013 in a two-week federal trial brought by Alaska Native individuals and tribes under the language assistance provisions of Section 203 of the federal Voting Rights Act. In late 2014, she defended the Parnell administration in a lawsuit brought by the Alaska Dispatch News under the state Public Records Act over records

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 4 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 4 of 22

related to the National Guard sexual assault scandal. In 2016, Ms. Bakalar represented the State in a trial over the conduct of the 2016 primary election in House District 40.

21. Over the course of her employment with the State of Alaska, Ms. Bakalar's representation resulted in favorable decisions to the State from the Alaska Supreme Court and the Ninth Circuit Court of Appeals in *Hughes v. Treadwell*, 341 P.3d 1121 (Alaska 2015); *State v. Alaska Fisheries Conservation Alliance, Inc.*, 363 P.3d 105 (Alaska 2015); *Bachner Co., Inc. v. State*, 387 P.3d 16 (Alaska 2016); *Mallott v. Stand for Salnwn*, 431 P.3d 159 (Alaska 2018); *Nageak v. Mallott*, 426 P.3d 930 (Alaska 2018); *Patterson v. Walker*, 429 P.2d 829 (Alaska 2018); and *Raymond v. Fenumiai*, 580 F. App'x. 569 (9th Cir. 2014).

22. Although Ms. Bakalar represented the State in many important and sometimes high-profile cases, Ms. Bakalar was never in what is considered a "policymaking" role during her employment.

23. Ms. Bakalar's responsibilities as an attorney for the State were well-defined and narrow in scope, and she did not act as an adviser or formulate plans for the implementation of policy goals.

24. Rather, Ms. Bakalar was charged with working individual -- though complex -- cases by her supervisors and to pursue overarching goals defined by higher level officials in government.

25. Among other matters on cases she worked, Ms. Bakalar needed to get permission from supervisors to disqualify a judge, to file a Rule 11 motion, to file an appeal, to travel, and even to get supplies.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 5 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 5 of 22

26.     Moreover, neither affiliation with a particular political party nor allegiance to or eschewing of any political points of view was an appropriate requirement for the effective performance of Ms. Bakalar's job.

27.     In 2014, Ms. Bakalar started a blog entitled "One Hot Mess Alaska" that focused on her personal lifestyle and parenting.

28.     Since 2014, One Hot Mess Alaska has included commentary, often in irreverent terms, on topics such as books and movies, childhood reminiscences, friendships, music, technology, style, fashion, and national politics.

29.     After the 2016 presidential election, Ms. Bakalar started blogging more about national politics, to oppose what she viewed as human rights abuses and a deterioration in constitutional norms under the Trump administration.

30.     Ms. Bakalar also occasionally participated in rallies or public gatherings to support social justice causes.

31.     Although Ms. Bakalar has been outspoken about her political views, she has never publicly criticized in her blog or otherwise any positions taken by the State of Alaska in matters related to her work as an assistant attorney general.

32.     Despite the views expressed in her blog, Ms. Bakalar's opinions in no way interfered with the discharge of her duties and responsibilities as an assistant attorney general. Indeed, Ms. Bakalar won high praise for her work from colleagues and clients from both sides of the political spectrum.

33.     In January 2017 Nancy Driscoll Stroup, an attorney in Pahner, Alaska, started a blog of her own entitled "Ethics and One Hot Mess Alaska." Ms. Stroup was very clear about the

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 6 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 6 of 22

purpose of this blog: "This blog makes the case that Blogger Lib by Bakalar of 'One Hot Mess Alaska' fame should not be working as an Assistant Attorney General for the State of Alaska."

34.     Ms. Stroup has posted numerous times on this blog between January 2017 and the present and has repeatedly called for Ms. Bakalar to lose her job as an assistant attorney general. Ms. Stroup made clear that she believes Ms. Bakalar should not be an assistant attorney general for the State of Alaska because Ms. Bakalar is "hysterically anti-Trump" and has "a liberal worldview."

35.     Ms. Stroup also made many accusations that Ms. Bakalar was blogging while she was at work and violating provisions of the State of Alaska Executive Ethics Act that prohibit state employees from conducting personal business on State time. Ms. Stroup also voiced these complaints to a number of State officials.

36.     Soon after Ms. Stroup made these complaints, the State of Alaska initiated an investigation into Ms. Bakalar's blogging activities to determine if she was using State time to write and post to her blog.

37.     The State hired an outside attorney, William J. Evans from the Anchorage law firm Sedor Wendlandt Evans Filippi, to conduct the investigation and to issue findings about whether Ms. Bakalar had violated the Executive Ethics Act.

38.     On March 16, 2017, Mr. Evans issued a fourteen-page report that concludes that Ms. Bakalar did not violate any ethical standards in writing or posting to One Hot Mess Alaska. The report further notes that Ms. Bakalar's supervisor described her as "an exceptional attorney who can produce organized, top notch legal work quicker than any attorney she has supervised during her long career." Her supervisor was also certain that Ms. Bakalar's blogging activities "had not interfered with her work" in any way.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 7 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 7 of 22

39.     On November 6, 2018, Michael Dunleavy was elected Governor of Alaska. On November 8, 2018, the Governor-elect announced that Tuckerman Babcock would serve as his chief of staff and as the chair of Mr. Dunleavy's transition team.

40.     Immediately prior to being selected as Mr. Dunleavy's chief of staff and transition chair, Mr. Babcock served for two-and-a-half years as the chair of the Alaska Republican Party.

41.     Mr. Babcock's primary role as chair of the Alaska Republican Party was to promote Republican candidates and get them elected to State offices.

42.     As the chair of the Alaska Republican Party, Mr. Babcock was well known for his criticisms of Republicans who, once elected attempted to work in bipartisan coalitions or who attempted to work in a bipartisan manner to address important policy issues in Alaska.

43.     As the chair of the Alaska Republican Party, Mr. Babcock also attempted to undermine Republican elected officials who worked in a bipartisan manner and attempted to facilitate, sometimes successfully, their removal from office.

44.     On November 16, 2018, Mr. Babcock sent a memorandum to more than 1,200 partially-exempt State of Alaska employees requesting their resignations. The Babcock memorandum states in part that "the incoming administration will be making numerous personnel decisions" and that Mr. Dunleavy "is committed to bringing his own brand of energy and direction to state government."

45.     Although characterized as "customary during the transition from one administration to the next," the request for resignations was sent to an unprecedented number of State of Alaska employees, including, according to several legislators who criticized the move, "medical doctors, psychiatrists, pharmacists, fiscal analysts, state tax code specialists, investment managers, petroleum geologists, trust managers, accountants, research analysts, IT professionals,

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 8 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 8 of 22

loan officers, military & veterans affairs coordinators, marine transportation managers, administrative law judges, and state attorneys presently working on behalf of the public on important and complicated legal issues, including prosecutors on criminal cases."

46.     When asked about the memorandum the day after it was issued, Mr. Babcock said that then-Governor-elect Dunleavy "just wants all of the state employees who are at-will . . . to affirmatively say, 'Yes, I want to work for the Dunleavy administration.'"

47.     Mr. Babcock further stated that the requests for resignations were meant to solicit a pledge of allegiance from state employees to Mr. Dunleavy's political positions by asking, "Do you want to work on this agenda, do you want to work in this administration? Just let us know."

48.     Mr. Babcock also announced that any state employee who refused or failed to offer her or his allegiance to Mr. Dunleavy risked being fired. "If you don't want to express a positive desire, just don't submit your letter of resignation," Babcock said. "And then you've let us know you just wish to be terminated."

49.     Mr. Dunleavy echoed Mr. Babcock's description of the resignation requests, saying they were meant "to give people an opportunity to think about whether they want to remain with this administration."

50.     The Babcock memorandum states that the resignations would not be "automatic," but that "consideration will be given" to each employee's "statement of interest in continuing in [her or his] current or another appointment-based state position."

51.     For Ms. Bakalar, loyalty to Gov. Dunleavy and his agenda personally was not a valid qualification for the effective performance of her job as a non-policymaking attorney.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 9 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 9 of 22

52.     Specifically, Ms. Bakalar did not report directly to any policymakers in government and, thus, there was always at least one layer of non-policymaking attorneys between herself (and her work) and those who make policy.

53.     Moreover, Ms. Bakalar's daily work was directed by these non-policymaking attorneys for whom she had minimal discretion in taking substantive positions on matters of litigation.

54.     The Babcock memorandum set a deadline of November 30, 2018, for employees to submit their resignations and statements of allegiance to the Dunleavy transition team.

55.     On information and belief, all of the attorneys in the Department of Law received the Babcock memorandum requesting their resignations, regardless of whether they were "policymakers" or not. Ms. Bakalar was one of the non-policymaking attorneys who received it.

56.     The Babcock memorandum caused a great deal of confusion, uncertainty, and anxiety within the Department. In an effort to allay these concerns, then-Attorney General Jahna Lindemuth provided the Department's attorneys with suggested language for those attorneys who intended to comply with the Babcock memorandum's resignation ultimatum. The language included the following statement: "I would like to continue serving the State of Alaska in the new Dunleavy administration in my current position, and I ask that my resignation not be accepted."

57.     Ms. Bakalar submitted her resignation to the Dunleavy transition team before the November 30 deadline, and included the statement that Attorney General Lindemuth suggested. Ms. Bakalar  also described in her resignation notice all of the work she had performed for the Department and for the State of Alaska.

58.     Mr. Dunleavy was sworn in as the Governor of Alaska at 12:00 p.m. on December 3, 2018.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 10 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 10 of 22

59.     At 12:18 p.m., Ms. Bakalar was notified that her resignation had been accepted and that her employment had been terminated. She was given less than two hours to clean out her office and leave the building.

60.     Ms. Bakalar's employment was terminated at the direction of Mr. Dunleavy and Mr. Babcock.

61.     Only one other non-policymaking attorney in the Department, assistant attorney general Ruth Botstein, was fired when Mr. Dunleavy became Governor. Like Ms. Bakalar, Ms. Botstein was an Attorney V, had outstanding performance evaluations, enjoyed the confidence of her supervisors and colleagues, and had represented the State in numerous cases. Ms. Botstein worked in the Opinions, Appeals, and Ethics section of the Department and has twice represented the State of Alaska before the United States Supreme Court.

62.     Although Ms. Botstein's social media presence is much more limited than Ms. Bakalar's, in January 2017 Ms. Botstein tweeted or retweeted several posts that are critical of Donald Trump.

63.     Shortly after President Trump assumed office, Ms. Botstein retweeted two tweets from an account named "Rogue POTUS Staff ," one of which accused Mr. Trump as wanting to "be remembered as a King," and another arguing that Mr. Trump is "known to favor low quality pub[lic] schools, saving quality edu[cation] for the right, to remind commoners 'where they rank in the world.'"

64.     In addition to complaining about Ms. Bakalar's blogging activities, Ms. Stroup also complained about Ms. Botstein's tweets. On February 27, 2017, Ms. Stroup posted a message on social media in which she complained that "[t]he 'Deep State' is a true problem in our country . . . . The vast majority of AAGs for the State of Alaska are liberal. One of them - one of the state's

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 11 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 11 of 22

top appellate attorneys -who has represented the State in many high profile political cases (including US Supreme Court cases) is posting all sorts of left-wing liberal nonsense on her twitter feed and keeps retweeting the completely bogus 'Rogue Potus Staffer' stuff. . . . I don't trust ANY of these AAGs to represent conservative Alaskan's [sic] interests."

65.     After the 2018 election, Ms. Stroup complained to Gov. Dunleavy's transition team that attorneys in the Labor and State Affairs and Opinions, Appeals, and Ethics sections were "very, very liberal." She urged the transition team to "carefully vet" such lawyers because she believed having them work for the State of Alaska created a "lack of trust."

66.     Like Ms. Bakalar, Ms. Botstein submitted a resignation letter in response to the Babcock memorandum.

67.     Like Ms. Bakalar, Ms. Botstein's resignation was accepted within minutes of Gov. Dunleavy becoming Governor.

68.     On December 12 and 13, 2018, a news story about Ms. Bakalar's and Ms. Botstein's firings aired on Alaska radio. The story highlighted Ms. Botstein's most recent United States Supreme Court argument in which she argued a position on behalf of the State that was closely aligned with John Sturgeon, a hunting advocate who is fighting a legal battle to increase access to federal lands in Alaska. Mr. Sturgeon's case has been known to be a "celebrated cause for conservative Alaska politicians, including [Gov.] Dunleavy."

69.     The December 12 and 13 news story also quoted Mr. Sturgeon as saying that Ms. Botstein "did a fantastic job. . . . I was extremely surprised that they didn't keep her, and I'm not sure the reason."

70.     On December 13, soon after the news story aired, the State approached Ms. Botstein to inquire about her interest in being reinstated to her position.

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

71.     Ms. Botstein asked if Ms. Bakalar was also asked to consider an offer of reinstatement. She was told no.

72.     On information and belief, several other State of Alaska employees intended, but were unable, to submit resignation notices on November 30 because a strong earthquake that occurred in Southcentral Alaska on that day disrupt d their ability to get to work or send and receive email. These employees were also fired from their jobs on the morning of December 3.

73.     On information and belief , these employees submitted their resignation letters immediately after learning that they had been fired, explaining the reason for their inability to meet the Babcock memorandum's November 30 deadline, and their termination notices were rescinded.

74.     Three other non-policymaking employees refused to submit their resignations to the Dunleavy transition team because they did not believe that their jobs required them to offer a pledge of allegiance to the new Governor.

75.     All three of the employees who refused to submit their resignations were fired by Mr. Babcock as soon as Gov. Dunleavy became Governor.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

### Violation of Right to Freedom of Speech Under the
### <u>First Amendment to the United States Constitution</u>

76.     Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

77.     The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 13 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 13 of 22

78.     Inherent in the First Amendment's guarantee is the principle that public employees in non-policymaking roles cannot constitutionally be compelled to relinquish the free speech rights they otherwise enjoy as citizens to comment on matters of public interest.

79.     Plaintiff Elizabeth Bakalar frequently engaged in public speech on matters of public concern.

80.     Ms. Bakalar was employed in a non-policymaking role as an assistant attorney general for the State of Alaska.

81.     Defendants received and were aware of numerous complaints about Ms. Bakalar's public speech on matters of public concern.

82.     Much of Ms. Bakalar 's public speech on matters of public concern was contrary to the political beliefs of Defendants Dunleavy and Babcock.

83.     Defendants retaliated against Ms. Bakalar for her public and political speech by terminating her employment.

84.     Defendants had no legitimate reason for terminating Ms. Bakalar's employment.

85.     By terminating Ms. Bakalar's employment, Defendants have violated, and continue to violate Ms. Bakalar's rights to free speech guaranteed by the First Amendment to the United States Constitution.

86.     Defendants' violation of Ms. Bakalar 's free speech rights was done with intent, malice, and gross and reckless disregard for Ms. Bakalar's constitutional rights.

87.     Ms. Bakalar has suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 14 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 14 of 22

## SECOND CAUSE OF ACTION:

## Violation of Right to Freedom of Speech Under Article I § 5 of the Alaska Constitution

88. Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

89. Article I § 5 of the Alaska Constitution provides: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

90. Like the United States Constitution, the Alaska Constitution's free speech guarantee includes the principle that public employees in non-policymaking roles cannot constitutionally be compelled to relinquish the free speech rights they otherwise enjoy as citizens to comment on matters of public interest.

91. Plaintiff Elizabeth Bakalar frequently engaged in public speech on matters of public concern.

92. Ms. Bakalar was employed in a non-policymaking role as an assistant attorney general for the State of Alaska.

93. Defendants received and were aware of numerous complaints about Ms. Bakalar's public speech on matters of public concern.

94. Much of Ms. Bakalar's public speech on matters of public concern was contrary to the political beliefs of Defendants Dunleavy and Babcock.

95. Defendants retaliated against Ms. Bakalar for her public and political speech by terminating her employment.

96. Defendants had no legitimate reason for terminating Ms. Bakalar's employment.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 15 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 15 of 22

97. By terminating Ms. Bakalar's employment, Defendants have violated, and continue to violate Ms. Bakalar's rights to free speech guaranteed by Article I § 5 of the Alaska Constitution.

98. Defendants' violation of Ms. Bakalar's free speech rights was done with intent, malice, and gross and reckless disregard for Ms. Bakalar's constitutional rights.

99. Ms. Bakalar has suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

## THIRD CAUSE OF ACTION:

### Violation of the Implied Covenant of Good Faith and Fair Dealing

100. Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

101. Every at-will employment contract in Alaska is subject to the implied covenant of good faith and fair dealing.

102. The implied covenant of good faith and fair dealing has two components, a subjective component and an objective component. If an employer breaches either component, the employer breaches the implied covenant.

103. An employer breaches the subjective component of the implied covenant of good faith and fair dealing when it terminates an employee's employment and the termination decision is motivated by an improper or impermissible objective.

104. An employer breaches the objective component of the covenant of good faith and fair dealing if it treats an employee in a manner that a reasonable person would regard as unfair.

105. Under either component an employer cannot legally terminate an employee on unconstitutional grounds.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 16 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 16 of 22

106. Plaintiff Elizabeth Bakalar frequently engaged in public speech on matters of public concern.

107. Ms. Bakalar was employed in a non-policymaking role as an assistant attorney general for the State of Alaska.

108. Defendants received and were aware of numerous complaints about Ms. Bakalar's public speech on matters of public concern.

109. Much of Ms. Bakalar 's public speech on matters of public concern was contrary to the political beliefs of Defendants Dunleavy and Babcock.

110. Defendants retaliated against Ms. Bakalar for her public and political speech by terminating her employment.

111. Defendants had no legitimate reason for terminating Ms. Bakalar's employment.

112. Defendants Michael Dunleavy and Tuckerman Babcoc unconstitutionally directed the termination of Ms. Bakalar's employment with the State.

113. By terminating Ms. Bakalar's employment, Defendants have violated, and continue to violate Ms. Bakalar's rights to free speech guaranteed by the First Amendment to the United States Constitution and Article I § 5 of the Alaska Constitution.

114. Defendants' violation of Ms. Bakalar 's free speech rights was done with intent, malice, and gross and reckless disregard for Ms. Bakalar's constitutional rights.

115. Defendants' actions in discharging Ms. Bakalar from employment breached the implied covenant of good faith and fair dealing because they were subjectively unfair; i.e. defendants intended to diminish and take away Ms. Bakalar's employment because of her political beliefs and speech.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 17 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 17 of 22

116.    Defendants' actions in discharging Ms. Bakalar from employment were objectively unfair in that a reasonable person would not believe that Ms. Bakalar was treated fairly in being forced to resign and then not rehired like almost all other members of the Partially Exempt Service.

117.    Defendants violated both the subjective and objective components of the implied covenant of good faith and fair dealing when they terminated Ms. Bakalar's employment.

118.    Ms. Bakalar has suffered harm in the form of special and general damages in an amount in excess of $100,000.00, the exact amount to be demonstrated at time of trial.

## FOURTH CAUSE OF ACTION:

## Wrongful Discharge in Violation of Public Policy

119.    Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

120.    It is the public policy of the State of Alaska, embodied separately in AS 39.26.010, that a person's political affiliation or philosophy have no bearing on her or his consideration for employment with the State.

121.    It is also the policy of the State of Alaska, embodied in AS 44.17.040, that the principal executive officer of each State department be responsible for the appointment and removal of employees. In accordance with this policy, Ms. Bakalar was hired with the understanding that she was subject to removal only by the Attorney General.

122.    Defendants violated the public policy of the State when they terminated Ms. Bakalar's employment based upon her political affiliation and/or philosophy.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 18 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 18 of 22

123.     Defendants Michael Dunleavy and Tuckerman Babcock also violated the public policy of the State when they directed the termination of Ms. Bakalar's employment, rather than the Attorney General.

124.     Ms. Bakalar has suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

## FIFTH CAUSE OF ACTION:

### Violation of Article XII, § 6 of the Alaska Constitution

125.     Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

126.     State employment is governed by the merit principle, which is expressly established in the Alaska Constitution. Alaska Const. Art. XII, Sec. 6.

127.     In accordance with this constitutional requirement, the legislature enacted laws (primarily the State Personnel Act) and has required that personnel rules be adopted through regulation, to govern state employment. AS 39.25.150(1) and (2), 2 AAC 07 *et. seq*.

128.     Ms. Bakalar was a member of the "Partially Exempt Service" as set forth in AS § 39.25.120(a)(3).

129.     As a member of the "Partially Exempt Service" Ms. Bakalar was entitled to the protections set forth in Article XII, Section 6 of the Alaska Constitution.

130.     More particularly, Article XII, Section 6 protected Ms. Bakalar from adverse job action that punished her for political activity and protected speech.

131.     More generally, Article XII, Section 6 protected all members of the "Partially Exempt Service" in Alaska from adverse job action based on their political activity and protected speech.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 19 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 19 of 22

132.    The Department of Law evaluated Ms. Bakalar on an annual basis as part of its normal personnel practices.

133.    The Department of Law in reviewing and evaluating Ms. Bakalar's job performance over twelve years, from 2006 to 2018, concluded in each evaluation that Ms. Bakalar's work was satisfactory.

134.    Consistent with years of outstanding performance evaluations, Ms. Bakalar was promoted from her starting position of Attorney II to Attorney V by the end of her employment with the State of Alaska.

135.    Moreover, Ms. Bakalar's supervisor described her as "an exceptional attorney who can produce organized, top notch legal work quicker than any attorney she has supervised during her long career."

136.    Defendants violated the merit principle when they required all members of the Partially Exempt Service to resign and conditioned the decision on whether they would be rehired to fill the same positions performing the same duties based on an expression of loyalty or assessment of their politics.

137.    Defendants violated the merit principle when they terminated Ms. Bakalar's employment based upon her political affiliation and/or philosophy, rather than on her performance evaluations.

138.    All members of the Partially Exempt Service were harmed in that their jobs were threatened, taken away from them, and their rehiring was conditioned either expressly or implicitly on their loyalty to the Dunleavy Administration and or the assessment that their political affiliation and/or philosophy was either acceptable or invisible to the oversight of the defendants.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 20 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 20 of 22

139. All members of the Partially Exempt Service, by having their jobs effectively ended and rehiring contingent upon the politically-motivated evaluations of defendants, had their constitutional rights to merit system protection violated.

140. Ms. Bakalar had planned on remaining with the State of Alaska for the balance of her career as an attorney. She liked her work and was good at it. She suffered harm in the form of lost wages, benefits, other remuneration, and damages as a result of Defendants' termination of her employment.

## INJUNCTIVE RELIEF

141. Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

142. The State of Alaska and defendant Dunleavy should be enjoined from requiring members of the Partially Exempt Service to resign their positions when there is a change in the political leadership of the state.

143. The State of Alaska and defendant Dunleavy should be enjoined from conditioning employment as a member of the Partially Exempt Service on the employee's political affiliation and or protected speech.

## DAMAGES

144. Ms. Bakalar repeats, realleges and incorporates the allegations in paragraphs 1 through 75 above.

145. Ms. Bakalar suffered past and future economic damages as a result of the wrongful conduct of the defendants.

146. Ms. Bakalar suffered past and future non-economic damages including emotional distress, loss of reputation, embarrassment and mental suffering.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 21 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 50-1   Filed 10/01/20   Page 21 of 22

147.    Ms. Bakalar's special and general damages exceed $100,000.00.

## DEMAND FOR JURY TRIAL

Ms. Bakalar demands jury trial on all issues so triable in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendants as follows:

1.     For past lost earnings and benefits;

2.     For future lost earnings and benefits;

3.     For contract damages;

4.     For general damages;

5.     For injunctive relief for all members of the Partially Exempt Service.

6.     For attorneys' fees;

7.     For prejudgment and post-judgment interest;

8.     For allowable costs;

9.     For such other and further relief as the court deems just and equitable.

Dated: October 1, 2020


By:/s/ Mark Choate_____
       Mark C. Choate, AK #8011070
       Attorney for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Page 22 of 22

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 50-1    Filed 10/01/20    Page 22 of 22