Mark Choate, AK #8011070
Attorney for Plaintiff
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Tel: (907) 586-4490
Fax: (206) 424-9705
Email: lawyers@choatelawfirm.com

Amanda Harber, AK #1011119
Attorney for Plaintiff
49TH STATE LAW LLC
P.O. Box 661
Soldotna, AK 99669
Tel: (907) 420-4290
Email: amanda@49thstatelaw.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ELIZABETH BAKALAR,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA,<br><br>　　　　Defendants. | Case No. 3:19-CV-00025-JWS<br><br>**AFFIDAVIT OF ELIZABETH BAKALAR** |

STATE OF ALASKA　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　） ss.
FIRST JUDICIAL DISTRICT　　　　　　)

　　　　Elizabeth Bakalar, being duly sworn upon oath, deposes and states:

BAKALAR AFFIDAVIT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 1 of 7

1.  I am the plaintiff in this matter and over the age of 18 years. I make this affidavit in support of the Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment on my own knowledge and belief.

2.  I was hired by the State of Alaska to work in the Department of Law in 2006 as an Attorney III.

3.  I worked for the State of Alaska for over 12 years and for five administrations and seven Attorneys General. I was steadily promoted and was an Attorney V when my employment was terminated.

4.  In 2013, I defended the State in a two-week federal trial brought by Alaska Native individuals and tribes under Section 203 of the federal Voting Rights Act.

5.  In 2014, I defended the Republican Parnell administration in a lawsuit brought by the Alaska Dispatch News under the state Public Records Act.

6.  In 2016, I represented the State in a trial over the 2016 primary election in House District 40.

7.  Over the course of my employment with the State of Alaska, I secured or helped secure favorable decisions for the State from the Alaska Supreme Court and the Ninth Circuit Court of Appeals, including in *Hughes v. Treadwell*, 341 P.3d 1121 (Alaska 2015); *State v. Alaska Fisheries Conservation Alliance, Inc.*, 363 P.3d 105 (Alaska 2015); *Bachner Co., Inc. v. State*, 387 P.3d 16 (Alaska 2016); *Mallott v. Stand for Salmon,* 431 P.3d 159 (Alaska 2018); *Nageak v. Mallott*, 426 P.3d 930 (Alaska 2018); *Patterson v. Walker,* 429 P.2d 829 (Alaska 2018); and *Raymond v. Fenumiai*, 580 F. App'x. 569 (9th

Cir. 2014). I briefed and argued *Reynolds-Rogers v. State, Dep't of Health and Social Services*, 436 P.3d 469 (Alaska 2019), while I was still working for the State, and it was decided in Alaska's favor shortly after I was discharged.

8. Although I represented the State in many important and sometimes high-profile cases, I never worked in a "policy-making" role.

9. I was never required to file a statement pursuant to AS 39.52.180(f) that is required for governmental "policy makers". I'm unaware of any Assistant Attorney General who ever filed or was required to file such a statement.

10. My responsibilities as an attorney for the State were well-defined and narrow in scope. I did not act as an adviser on policy or formulate plans for the implementation of policy goals.

11. My supervisors charged me with handling individual—though complex—cases and pursuing goals defined by higher-level government officials.

12. I had little autonomy to make even routine decisions. I needed permission from supervisors to disqualify a judge, file a Rule 11 motion, travel, and even get basic supplies.

13. I had no authority to settle cases without permission from my superiors.

14. Specific political affiliations or beliefs were not a requirement for the position of an Attorney V generally, nor for my job duties specifically.

15. In 2014, I started a blog entitled "One Hot Mess" that focused on my personal lifestyle and parenting, but never my job.

16. After the 2016 presidential election, I started blogging more about national politics, to oppose what I believed were problems in the Trump administration.

17. I also occasionally participated in public gatherings to support social justice causes.

18. Although I publicly expressed my political views, I *never* publicly criticized—in my blog or elsewhere—any position taken by the State of Alaska in matters related to my work.

19. I uniformly received positive feedback and support for my work both from colleagues and my clients, irrespective of their political views.

20. Less than 20 minutes after Governor Dunleavy's inauguration—I was notified that my resignation had been accepted and that my employment had been terminated.

21. I was given less than two hours to clean out my office and leave the building.

22. The only other non-policymaking attorney in the Department of Law who was fired when Dunleavy became governor was Assistant Attorney General Ruth Botstein, who was both a colleague of mine and was and remains a close personal friend.

23. Ms. Botstein was also publicly critical of Donald Trump. She too was an Attorney V, enjoyed the confidence of her supervisors and colleagues, and had represented the State in numerous cases including to the United States Supreme Court.

24. Ms. Botstein worked in the Opinions, Appeals, and Ethics section of the Department of Law and twice represented the State of Alaska before the United States Supreme Court.

25. I believe Ms. Botstein was fired from her very successful career as a dedicated public servant for the State of Alaska because of the above-described tweets.

26. Although some of the cases I worked on involved legal challenges to government programs, I did not exert any authority or influence over those government programs.

27. I did not act as a policy adviser or formulate plans for the implementation of policy goals.

28. The advice I provided to the Division of Elections—a nonpartisan institution—involved pure legal analysis. I told the Division what I thought the law was but had no role in translating my legal opinion into policy.

29. I did not have the authority to "instruct" the Director of the Division of Elections to do anything. Instead, my advisory opinions on election matters merely analyzed pre-existing law in a neutral manner and offered recommendations. These opinions were all signed on behalf of the Attorney General.

30. My work was limited to my prescribed duties. I did not control others. I had three levels of unelected supervisors and no subordinate staff, no power to hire or fire employees, and no power to determine employee pay.

31. I had no regular interaction with partisan politics or political leaders performing partisan duties.

32. I participated in no political strategy sessions.

33. I drafted no regulations or legislation beyond technical drafting assignments.

34. In my capacity as an Assistant Attorney General, my role was simply to apply the law to a set of facts to answer a legal question assigned to me by my supervisor.

35. At no time while working for the State of Alaska as an Assistant Attorney General did my speech in my private life and in my blog interfere or impede my ability to do my job. The proof is in my excellent performance as I vigorously represented the State of Alaska on all matters assigned to me, irrespective of the politics of the moment or the political affiliation of the current administration.

36. My blog and social media involvement were never for commercial purposes or for profit.

37. I did not report to any policymakers in government, and I was always at least one full layer removed from the policymaking apparatus. I never reported directly to the Attorney General or to any elected official.

38. To my knowledge, every attorney in the Department of Law received the Babcock memorandum requesting their pledges of loyalty, regardless of whether they were "policymakers."

39. I observed and witnessed that the Babcock memorandum caused a great deal of confusion, uncertainty, and anxiety within the Department.

40. Then-Attorney General Jahna Lindemuth provided the Department's attorneys with suggested language to ensure compliance with the Babcock memorandum. I used that suggested language in complying with the demand for resignation.

FURTHER, AFFIANT SAYETH NAUGHT.

Dated: 07/30/2021

_____
Elizabeth Bakalar

SUBSCRIBED AND SWORN TO BEFORE ME this  30  date of July, 2021.

**SAMANTHA NYE**
ELECTRONIC NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
REGISTRATION # 7747969
COMMISSION EXP SEPTEMBER 30, 2021
Notary Stamp Placed at 2021/07/30 14:31:14 EST          pi5ar

_____
Notary Public
My Commission Expires: September 30, 2021

Document Notarized using a Live Audio-Video Connection