500 L Street, Suite 500
Anchorage, Alaska 99501

Telephone: (907) 677-3600
Facsimile: (907) 677-3605
www.alaskalaw.pro

**SEDOR WENDLANDT EVANS FILIPPI**

Attorneys at Law

Allen F. Clendaniel
William J. Evans
Lea E. Filippi
Carolyn Y. Heyman-Layne
John M. Sedor
John C. Wendlandt

March 16, 2017

James E. Cantor
Deputy Attorney General
State of Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501

**Via Electronic Mail**

Re: Employment Investigation Report; Libby Bakalar – "One Hot Mess Alaska" Blog
Our File No. 5078-0001

Dear Mr. Cantor:

This Investigation Report constitutes the factual findings and conclusions stemming from the investigation conducted into possible misconduct committed by Assistant Attorney General Libby Bakalar in connection with her blog "One Hot Mess Alaska."[1] The investigation took place during the first two weeks of March 2017. The primary impetus for the investigation were concerns raised about the partisan political nature of "One Hot Mess Alaska" and the possible use by Ms. Bakalar of state resources or work time in the creation of articles posted on the blog.[2]

## I. Scope and Limits of Investigation

The investigation was limited to two threshold questions: (1) whether Ms. Bakalar posted or in any manner worked on her blog during work time or with the aid of state

---

[1] While the focus of this investigation involved Ms. Bakalar's activities with respect to the blog site "One Hot Mess Alaska," it also included a review of similar activities concerning Ms. Bakalar's use of social media including the "One Hot Mess Alaska" Facebook page. This page most often was used a forum for re-posting or sharing previously posted blog articles.

[2] The investigation did not include any specific complaint filed against Ms. Bakalar. On February 27, 2017, prior to the commencement of the investigation, I was provided with an email message from Ms. Bakalar which indicated her belief that the investigation was prompted by a complaint from Nancy Driscoll Stroup. The email from Ms. Bakalar included a copy of a Facebook posting by Ms. Driscoll Stroup complaining that the "vast majority of [Assistant Attorneys General] for the State of Alaska are liberal." Ms. Bakalar requested that her email message and the message from Ms. Driscoll Stroup be part of the official record of the investigation. Ms. Bakalar's email message and supporting Facebook post are attached hereto as Ex. 1.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 1 of 18
Ex. 2C - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 1 of 18

James E. Cantor
March 16, 2017
Page 2



**Attorneys at Law**

funds or resources; and (2) whether, if the answer to the first question was "yes," such activity violated any law or policy applicable to Ms. Bakalar.[3]

The investigation included a review of potentially applicable Alaska statutes, State of Alaska employment policies and ethics decisions.[4] (A list of the statutes, policies and decisions reviewed is attached as Exhibit 2.) The investigation also included interviews with Ms. Bakalar and her immediate supervisor Marjorie Vandor.[5] Inquiries were made concerning the ability of the State Security Office to review Ms. Bakalar's use of her work computer for posting on her blog.[6] A review of Ms. Bakalar's blog and Facebook postings was also conducted.[7]

## II. Summary of Conclusions

Ms. Bakalar did on infrequent occasions do some work on her blog during her normal business day. The level of her activity was consistent with the commonly accepted practice of allowing salaried attorneys to take small unscheduled breaks during their work day to engage in de minimis personal activities. Ms. Bakalar has a reputation as a very productive and hard working attorney who does not abuse her unscheduled breaks.

---

[3] It is important to note that the scope of the investigation did not include whether Ms. Bakalar's involvement in the blog "One Hot Mess Alaska" on her own personal time was in any manner improper.

[4] Rebecca Cain, a Civil Division Attorney V who focuses on employment law, and Melanie Ferguson, the Civil Division's Administrative Operations Manager, were consulted to ensure that all applicable policies and practices were identified.

[5] Both interviews took place telephonically. Ms. Bakalar's interview took place on March 7 and Ms. Vandor's on March 8. Ms. Bakalar's personal attorney, James Sheehan, was present with Ms. Bakalar during her interview.

[6] Because traffic with Blogspot, the site which hosts Ms. Bakalar's blog, is encrypted, the State Security Office was unable to identify the use of Ms. Bakalar's work computer for any specific blog postings. Accordingly, IT resources were unable to provide any specific verification concerning Ms. Bakalar's claim of de minimis use of her state computer for activity concerning her blog. Because of a recent change, however, going forward, it is reported that the state will have a better ability to determine the frequency of use of such sites via a state computer.

[7] The investigation did not include a review of every single post on either the blog or Facebook. A comprehensive review of the last few months of postings was done and a more summary review of previous months' postings was also included. Ms. Bakalar is prolific in her writing and her blog often contains multiple articles per day.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 2 of 18
EXH. 2C - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 2 of 18

James E. Cantor
March 16, 2017
Page 3


Attorneys at Law

The infrequent work by Ms. Bakalar on her blog during work hours did not violate any state statutes or policies. Ms. Bakalar receives no financial remuneration from her blog and there is no evidence that any "partisan political" activity occurred during work hours. To the extent that any "partisan political" activity may have occurred during work hours, it would have to be characterized as de minimis and insignificant and thus not a violation of state restrictions on such activity.

### III. Relevant Factual Background

Ms. Bakalar is an Attorney V, who has been working for the Attorney General's office since 2006.[8] She has worked in the Labor and State Affairs section under the supervision of Marjorie Vandor since 2011. Similar to the majority of attorneys in her section, Ms. Bakalar works a Regular Day Off ("RDO") schedule.[9] Her normal work day is from 8:30 a.m. until 5:00 p.m. Monday through Friday with every other Friday off.

As a salaried employee, Ms. Bakalar will often work hours that fall outside of her normally scheduled work hours and work days.[10] All of the attorneys in the Department are required to account for their time in the state's *ProLaw* system.[11] Each attorney, like Ms. Bakalar who is on a RDO schedule, must account for 8.5 hours each work day.[12] According to Ms. Bakalar, unless she is in trial or attending to some other special

---

[8] Ms. Bakalar's original assignment was to the section of the attorney general's office representing the Department of Health and Human Services. As an Attorney V, Ms. Bakalar does not supervise any other attorneys. She has on occasion supervised summer interns and does serve as a mentor in the Department's official mentorship program.

[9] According to the Department of Law Civil Manual, the Department allows employees to elect (with approval of their supervisor) either a flex or an alternate work week schedule. (Department of Law Civil Manual, p. 21) The alternate work week schedule consists of working nine out of every 14 days and completing 75 working hours within every two-week period. (Id) The "alternate work week schedule" is the RDO schedule.

[10] Both Ms. Bakalar and Ms. Vandor report that the primary emphasis for attorneys in their section is getting the job done which requires putting in the necessary hours whenever they are needed.

[11] Vandor Interview.

[12] In addition to "billable" hours, attorneys often record "administrative" time in order to properly reflect and account for their full day of work.
Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 3 of 18
EX-H2C - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 3 of 18

James E. Cantor
March 16, 2017
Page 4



matter, she would be found in her office from 8:30 a.m. until 5:00 p.m. during her work days.[13]

Even though Ms. Bakalar and the other attorneys in her section are required to account for 8.5 hours of work time during their normal work day, it is a commonly accepted practice that the attorneys will from time-to-time take short breaks from work to engage in purely personal activities or to simply refresh their minds.[14] Such personal activities could include getting a cup of coffee, reading a news article online, checking personal email or social media messages, or simply chatting briefly with co-workers.[15]

In October of 2014, Ms. Bakalar began her blog "One Hot Mess Alaska."[16] The blog began as a mostly comedic and satirical take on a variety of issues.[17] Initially, many of the articles were focused on parenting issues but could also include posts concerning feminism, meals, and other general lifestyle issues.[18] Periodically, there would be posts on political issues as well as current events.[19] The rise of Donald Trump as a candidate for President became an increasingly frequent topic for Ms. Bakalar.[20] Ms. Bakalar readily acknowledges that the intent of many of her posts involving Mr. Trump is to ridicule and criticize him.[21] Other than posts critical of Donald Trump, the blog does not typically target other politicians or public officials.[22] To the extent that it is

---

[13] Bakalar Interview. Because she has two small children, Ms. Bakalar states that unless there is a pressing work requirement she usually leaves the office promptly at 5:00 p.m.

[14] Bakalar Interview; Vandor Interview.

[15] As section chief, Ms. Vandor confirmed that these short breaks occur regularly and are viewed as entirely acceptable as long as they are not abused. Because the attorneys have a work load they are responsible for, such breaks are largely self-regulated. Ms. Vandor reports she has had no problems with attorneys in her section spending too much time on personal matters during the work day.

[16] Bakalar Interview.

[17] Bakalar Interview.

[18] Bakalar Interview.

[19] Bakalar Interview.

[20] Bakalar Interview.

[21] The blog received some wide-spread notoriety when one of its posts involving imaginary tweets from Frederick Douglass was reportedly shared over two million times. The original post appeared on her blog on February 1, 2017.

[22] Bakalar Interview.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 4 of 18
EXHIBIT 2C - Opposition to Motion Summary Judgment & Cross Motion for Summary Judgment
Page 4 of 18

James E. Cantor
March 16, 2017
Page 5



fair to label the overall viewpoint or tenor of the blog, it can be described as progressive or liberal leaning on many issues.[23]

Ms. Bakalar considers her blog a creative exercise.[24] Her specific individual talents allow Ms. Bakalar to compose articles for the blog fairly quickly, often taking only ten minutes to complete an article.[25] So while Ms. Bakalar's blog posts can be described as prolific, they may not require as much time as one might normally assume.

Ms. Bakalar's normal practice is to do most of writing for the blog at night and not infrequently during early morning hours.[26] Much of her blog work is conducted in the bedroom of her children while she awaits them falling asleep.[27] Ms. Bakalar uses her personal laptop or phone for composing her posts.[28] Even though Ms. Bakalar may compose a post at night or early in the morning, she often does not officially post the article until later.[29] Her blog site allows her to save drafts and chunks of material for future work and/or posting.[30] She is also able to pre-select a future time for the article to be automatically posted.[31] Often Ms. Bakalar would compose an article at night and

---

[23] To avoid any bias, this description of the blog content was provided to Ms. Bakalar and approved by her attorney.

[24] Bakalar Interview.

[25] Ms. Bakalar's ability to churn out significant material in a short amount of time has been noted by her supervisor as well. According to Ms. Vandor, Ms. Bakalar is a very quick study who can provide a finished work product quicker than just about any attorney she has worked with in her career. Ms. Bakalar's claims of being able to compose her blog articles relatively quickly are ostensibly consistent with her abilities as noted by her supervisor.

[26] Bakalar Interview.

[27] Bakalar Interview.

[28] Bakalar Interview.

[29] Bakalar Interview.

[30] Bakalar Interview.

[31] Ms. Bakalar does not believe that the posting times displayed on the blog always align properly with actual Alaska Time. She believes that sometimes the blog appears to be using Pacific Time. Prior to this investigation, however, Ms. Bakalar was not concerned about the precise posting time of her posts, so she had not investigated this further.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 5 of 18
EXH 2C - Opposition to Motion Summary Judgment & Cross Motion for Summary Judgment
Page 5 of 18



then manually post it the next day.[32] The actual act of posting the article involves nothing more than simply clicking on a button.[33]

Ms. Bakalar states that it has not been her practice to write any of the articles for her blog during work hours, but she cannot say that it has never occurred during the two-and-a-half years that she has maintained the blog.[34] She cannot, however, recall any specific instance when she has composed an article during work hours.[35] She acknowledges that there have been times during her work day when she might check her blog site on her work computer to view readership statistics.[36] Ms. Bakalar also acknowledges that there have been occasions during her normal 8.5 hour work day when she might spend a few minutes performing some last minute editing or posting a previously written article.[37] Moreover, while Ms. Bakalar does acknowledge engaging in some last minute editing and posting of articles during normal work hours, her normal practice is to do so using either her personal laptop or phone.[38] It is possible, however, on some rare occasion she may have used her work computer to either edit or post an article, but she does not recall specifically ever doing so.[39]

After a particular article is posted to her blog site she will frequently share the blog post to the "One Hot Mess Alaska" Facebook page.[40] The sharing of blog posts to the Facebook page can at times occur during work hours as it takes only seconds to perform and can easily be accomplished during a short break.[41]

Ms. Bakalar receives no compensation or any remuneration from her blog.[42] On a couple of occasions, however, the Anchorage Dispatch News contacted Ms. Bakalar and offered her a small stipend ($100) in return for permission to publish one of her

---

[32] Bakalar Interview.

[33] Bakalar Interview.

[34] Bakalar Interview.

[35] Bakalar Interview.

[36] Bakalar Interview.

[37] Bakalar Interview.

[38] Bakalar Interview.

[39] Bakalar Interview.

[40] Ms. Bakalar has a personal Facebook page and also maintains a page for "One Hot Mess Alaska."

[41] The state work computer cannot be used to access Facebook; so any sharing of blog posts to Facebook must be done utilizing Ms. Bakalar's personal devices.

[42] Bakalar Interview.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 6 of 18
EXH. 20 - Opposition to Motion Summary Judgment & Cross Motion for Summary Judgment
Page 6 of 18


posts as a commentary in their newspaper.[43] On these occasions Ms. Bakalar has consulted with her immediate supervisor and others within the Department's management before accepting the stipend.[44]

IV. Analysis

    A. Did Ms. Bakalar Work on her Blog During "Work Time" or Use State Funds or Resources?

*Answer:* Yes.[45]

The concept of "work time" for a salaried Assistant Attorney General is somewhat nebulous. There is no question that Ms. Bakalar's first mission is to ensure that the legal work she is responsible for is completed in a timely manner.[46] That would often require Ms. Bakalar to actually be working during periods when she would normally be off work including late hours, weekends and holidays.[47]

Despite frequently having to work at other times, there is, nonetheless, an expectation that Ms. Bakalar would be in her office and available for work from between 8:30 a.m. and 5:00 p.m. Monday through Friday.[48] Accordingly, for the purpose of this

---

[43] Bakalar Interview.

[44] Bakalar Interview; Vandor Interview.

[45] A reasonable argument can be made that the answer to this question should be "no." AS § 39.52.120(d) provides that "[i]n this section, when determining whether a public officer is considered to be performing a task on government time, the attorney general and personnel board shall consider the public officer's work schedule as set by the public officer's immediate supervisor, if any." Because Ms. Bakalar's immediate supervisor permitted attorneys in Ms. Bakalar's section to engage in personal activities while on unscheduled and self-regulated breaks during the work day, it can be argued that such break times should not be considered "work time." For the purpose of this investigation, however, it is believed to aid in the understanding of the situation if it is acknowledged that Ms. Bakalar engaged in certain blog-related conduct from between 8:30 a.m. and 5:00 p.m. during her work days. Answering "yes" to this question does not lead to the conclusion that Ms. Bakalar engaged in any inappropriate or unlawful conduct.

[46] Bakalar Interview; Vandor Interview.

[47] Bakalar Interview; Vandor Interview.

[48] Vandor Interview. Ms. Vandor indicates that occasionally attorneys may be running late and will not arrive at the scheduled start time. On such occasions the attorneys

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 7 of 18
EXH 2C - Opposition to Motion Summary Judgment & Cross Motion for Summary Judgment
Page 7 of 18



investigation, these days and hours will be considered Ms. Bakalar's "work time." This concept is supported by the requirement that Ms. Bakalar account for 8.5 hours of time during a scheduled work day in the state's *Prolaw* system. Ms. Bakalar is required to account for the full 8.5 hours even if some of the time is administrative or non-billable time.[49]

Ms. Bakalar acknowledges that on occasion she may perform some minor tasks related to her blog (or Facebook page) during the period between 8:30 a.m. and 5:00 p.m. on work days.[50] While she does the vast majority of composition for her blog during non "work-time" hours, she admits that on occasion she may edit or post an article to her blog during her work hours.[51] In addition, although it is not her normal practice, Ms. Bakalar acknowledges she may have on occasion used her state work computer in accomplishment of these incidental blog-related tasks.[52]

A review of the blog reveals some posting times which would fall between 8:30 a.m. and 5:00 p.m. during normal work days. A similar situation exists with respect to posting times on the "One Hot Mess Alaska" Facebook page. The listed posting times, however, cannot be viewed as determinative as to when Ms. Bakalar was actually working on the blog content. There are several reasons why the posting times are not determinative. First, it cannot be verified that the posting times listed on the blog accurately reflect Alaska Time. In fact, a discrepancy between blog and Facebook posting times for certain articles suggests that the posting time for at least one of the sources is inaccurate.[53] Second, Ms. Bakalar's blog site allows her to pre-select an automatic time for posting an article, meaning she can compose an article at home at

---

typically notify Ms. Vandor that they will be late and will often indicate that they will make up the time during their lunch hour or by working later.

[49] Bakalar Interview; Vandor Interview.

[50] Bakalar Interview.

[51] Bakalar Interview.

[52] Bakalar Interview. Ms. Bakalar has indicated that her work computer was occasionally used to review her blog's readership statistics. Such use would not involve any work on the content of articles on the blog.

[53] There are a number of Facebook posts in which blog articles are shared registering a Facebook posting time that is earlier than the time the article is shown as being posted to the blog. In order to share the blog posting to Facebook, the article has to first be posted to the blog. It follows that there should not be any Facebook postings that pre-date the blog postings. This discrepancy is sufficient to cause concern regarding a too-strict reliance on the blog posting time as evidence of when Ms. Bakalar was working on her blog.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 9 of 18
EX. B2C - Opposition to Motion Summary Judgment & Cross Motion for Summary Judgment
Page 8 of 18



**Attorneys at Law**

night and pre-select a time the next day for the article to be posted to the blog.[54] Finally, Ms. Bakalar acknowledges that on occasion she will compose an article at night and delay posting it until the next day. On such occasions she may manually click on the button to post the article during work hours, but won't have actually worked on the content during work hours. For these reasons, the conclusion of the investigation is that the extent of Ms. Bakalar's work on her blog posts cannot accurately be determined by simply reviewing the posting times on her blogs.

Based entirely on Ms. Bakalar's own admissions, it must be concluded that on occasion she has engaged in some activities associated with her blog during her normal work hours. Similarly, on rare occasions, Ms. Bakalar has indicated that she may have used her work computer for tasks associated with her blog.

### B. Did Ms. Bakalar's Blogging Activities that Occurred During her Normal Work Hours or with Use of her Work Computer Violate any State Statute or Policy?

*Answer:* No.

#### 1. Statutory and Policy Restrictions on Personal and Political Activity

There are several restrictions applicable to state employees which prohibit them from engaging in conduct that benefits them personally or financially or which involves partisan political activity on work time or with state resources. Two primary statutes establish the framework for the activities that state employees may or may not engage in during work hours or with state resources.

The State Personnel Act, AS § 39.25.178, codifies the political rights of state employees.[55] Among the rights protected by the Personnel Act is the qualified right of a

---

[54] Bakalar Interview. Ms. Bakalar claims that she does not routinely use the pre-selected posting feature but has periodically used it over the history of her work on the blog. She can't recall specific times or specific posts for which when she has used the pre-set posting option. In reviewing the blog's posting times there are an unusual number of posts which show a posting time of exactly 5:00 p.m. It is possible that these posts reflect occasions when Ms. Bakalar set a pre-determined time for posting.

[55] The Department of Law Civil Manual provides a useful summary of the rights and restrictions on political activities for state employees. The manual provides:

> Division employees, like all state employees, enjoy statutory protection to engage in certain political activities. *See* AS 39.25.178. A state employee may:

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 9 of 18
EXH. 2C - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 9 of 18

state employee to "express political opinions."[56] This right is a qualified right because the state employee may not display or distribute partisan political material while engaged on official business.[57]

The restriction on engaging in certain activities on work time and with state resources is further set forth in the Alaska Executive Branch Ethics Act ("Ethics Act"), AS § 39.52.010 et seq. At issue for the purpose of this investigation are two restrictions found in the Ethics Act. The restrictions bar state employees from:

> [using] state time, property, equipment, or other facilities to benefit personal or financial interests[58];

and

> [using] or [authorizing] state funds, facilities, equipment, services, or another government asset or resource for partisan political purposes…[59]

"Partisan political purposes" is defined to mean having the intent to differentially benefit or harm a candidate or potential candidate for elective office or a political party or group.[60]

In addition to the applicable statutes, the State's Information and Security Policy regarding "Business Use/Acceptable Use" prohibits employees from using the email system and other communications to engage in:

> Express political opinions; however, while engaged in official business, a state employee may not display or distribute partisan political material.
>
> ***

In addition, AS 39.52.120(b)(6) prohibits the use of any state funds, facilities, equipment services, or government asset or resource for partisan political purposes….

As explicit as these provisions are, they do not replace good judgment in your daily conduct of state business. They also many not cover every possible situation. Employees are encouraged to seek guidance from their supervisor if questions arise.

Department of Law Civil Manual, pp. 12-13.

---

[56] AS § 39.25.178(3).

[57] AS § 39.25.178(3).

[58] AS § 39.52.120(b)(3).

[59] AS § 39.52.120(b)(6).

[60] AS § 39.52.120(b)(6)(A)(i) and (ii).

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 10 of 18
Exhibit 3 – Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 10 of 18



Attorneys at Law

Any illegal activity;[61]

Use for fundraising, political campaign or partisan activities, or public relations activities not specifically related to SOA government activities.[62]

### 2. Ms. Bakalar's Use of Work Hours for Personal Activities was De Minimis and Within Commonly Accepted Limits

The head of Ms. Bakalar's section, Ms. Vandor, acknowledges that the sixteen attorneys she supervises routinely take intermittent breaks during their work day.[63] During such breaks it is not uncommon for the attorneys to engage in a variety of personal tasks.[64] Such tasks can include getting coffee, making a personal phone call, sending a text message, checking personal email or social media, or reading items online.[65] Ms. Vandor is not aware of any written departmental policy that specifically authorizes such breaks but believes the practice has been to allow such activities as long as they remain de minimis.[66]

Ms. Vandor describes Ms. Bakalar as an exceptional attorney who can produce organized, top-notch legal work quicker than any attorney she has supervised during her long career.[67] She further describes Ms. Bakalar as "a worker" who frequently reaches out to fellow employees offering her assistance. Because Ms. Bakalar can turn around work so quickly, she ends up performing more overall work than others in her section.[68] While Ms. Vandor has not specifically monitored exactly what Ms. Bakalar does during her brief break periods, she is certain that it has not interfered with her work

---

[61] Business Use/Acceptable Use Policy, Section 5.1.9.1. This could conceivably be implicated if Ms. Bakalar's conduct violated either the State Personnel Act or the Executive Branch Ethics Act.

[62] Business Use/Acceptable Use Policy, Section 5.1.9.1.

[63] Vandor Interview.

[64] Vandor Interview.

[65] Because attorneys in the Labor and State Affairs section often get involved in issues that are political and newsworthy, it is not uncommon for the attorneys to keep abreast of political and news developments during the workday by checking various internet news sources.

[66] Vandor Interview.

[67] Vandor Interview.

[68] Vandor Interview.

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 11 of 18
Ex. 20 - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 11 of 18

James E. Cantor
March 16, 2017
Page 12



Attorneys at Law

and has not been excessive.[69] Based on her observations, Ms. Vandor believes Ms. Bakalar spends no more time on breaks than any other attorney she supervises.[70]

In addition to her diligence during the work day, Ms. Vandor reports that Ms. Bakalar is very responsive during non-work hours. It is common to receive work-related messages from Ms. Bakalar at all hours of the day or night. Put simply, Ms. Vandor describes Ms. Bakalar as being extremely conscientious about her work.

Based upon the information obtained from Ms. Bakalar and Ms. Vandor and absent any contradictory evidence, the investigation concludes that Ms. Bakalar's personal activities during work hours are de minimis, consistent with that of her co-workers, and fully within the level of such activity historically accepted by Department management.

### 3. Incidental Work by Ms. Bakalar on her Blog Occurring During Work Hours does not Violate any State Statute or Policy

Because Ms. Bakalar's use of personal time during work hours is deemed to be acceptable, the only question is whether the nature of the personal activities undertaken by Ms. Bakalar during such break periods is unlawful or inappropriate. The Ethics Act prohibits employees from using state time, property, equipment or other facilities to advance personal or financial interests.[71] Ms. Bakalar receives no income or remuneration from her blog.[72] It follows that work performed by Ms. Bakalar on her blog during her work hours or using her work computer would not benefit Ms. Bakalar's personal or financial interest and thus would not violate AS § 39.52.120(b)(3).

The Ethics Act also prohibits employees from using or authorizing state funds, facilities, equipment, services, or another government asset or resource for partisan political purposes.[73] A review of Ms. Bakalar's blog postings indicates that a minority of her posts can be considered as being for "partisan political purposes" under the statute. The definition of "partisan political purpose" is quite narrow. Only activities that have the "intent to differentially benefit or harm a candidate or potential candidate for elective office" or a political party or group are considered as having a partisan political purpose. Accordingly, while a significant portion of the content of Ms. Bakalar's blog can be

---

[69] Vandor Interview.

[70] Vandor Interview.

[71] AS § 39.52.120(b)(3).

[72] In the few instances the Alaska Dispatch News paid Ms. Bakalar to publish one of her posts in the newspaper as a commentary, Ms. Bakalar ensured that her supervisor and others within the state approved of her receipt of a payment.

[73] AS § 39.52.120(b)(6).

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 12 of 18
Exh. 20 - Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 12 of 18



interpreted to evince a liberal or progressive worldview, few posts actually meet the definition of having a partisan political purpose.

The majority of posts that can be described as "political" involve criticism or satirical mockery of Donald Trump. Ms. Bakalar acknowledges that her blog rarely references any specific political figure other than Mr. Trump.[74] Many of the posts concerning Mr. Trump, while political in nature, cannot be viewed as having a "partisan political purpose," based upon its statutory definition. Once Mr. Trump was elected President, he was no longer "a candidate or potential candidate," therefore any critical posts concerning him post-election would not be a violation of the Ethics Act and would simply be allowable political opinion or commentary.[75]

Accordingly, the sphere of posts on Ms. Bakalar's blog that can be said to potentially involve partisan political activity occurred prior to November 8, 2016, during Mr. Trump's presidential candidacy. During this period there are certainly posts critical of Mr. Trump which can be characterized as having the intent to "differentially harm" Mr. Trump's candidacy. It is important to understand, however, that there is no evidence that any of these specific potentially partisan posts were ever worked on by Ms. Bakalar during work hours or using state resources.

Ms. Bakalar has acknowledged that she has on rare occasions done some minor work on a post during work hours or possibly used her work computer for some work on her blog.[76] There is no evidence, however, that links any of these rare occasions to any specific post concerning Donald Trump during the presidential campaign. In other words, on the rare occasions when Ms. Bakalar engaged in any work involving her blog during work hours, it may have involved posts which did not constitute partisan political activity and were thus acceptable for Ms. Bakalar to work on during her de minimis breaks.

Even if we assume that on one of those occasions when Ms. Bakalar worked on her blog during work hours she actually worked on a post that could be considered as having a partisan political purpose it is still unlikely that she violated any statutory prohibition. The Ethics Act incorporates its own "de minimis" standard. For instance, AS § 39.52.110(a)(3) states:

(3) standards of ethical conduct for members of the executive branch need to distinguish between those minor and inconsequential conflicts that

---

[74] Bakalar Interview.

[75] Note that the State Personnel Act expressly acknowledges that state employees retain their right to "express political opinions." AS § 39.25.178(3)

[76] Bakalar Interview.

Case 3:19-cv-00025-JWS   Document 71-1   Filed 07/30/21   Page 13 of 18
Exh. 20 - Opposition to Motion Summary Judgment & Cross- Motion for Summary Judgment
Page 13 of 18

James E. Cantor
March 16, 2017
Page 14



Attorneys at Law

are unavoidable in a free society, and those conflicts of interest that are substantial and material.

Similarly, AS § 39.52.110(b) states:

> (b) Unethical conduct is prohibited, but there is no substantial impropriety if, as to a specific matter, a public officer's
>
> (2) action or influence would have insignificant or conjectural effect on the matter.

Accordingly, because the evidence establishes that the vast majority of work performed by Ms. Bakalar on her blog occurs during non-work hours and that the few de minimis instances on which some work on the blog may have occurred during work hours did not necessarily involve an posts that could be said to have a "partisan political purpose," Ms. Bakalar's activities, when viewed in their entirety, do not appear to violate any state statute or policy.

V. Conclusion

Ms. Bakalar's activity with respect to her blog "One Hot Mess Alaska" is an activity that takes place predominately on Ms. Bakalar's own time and would appear to be protected activity. Any amount of work or activity with respect to the blog occurring during normal work hours appears to fall within the accepted level of de minimis personal activity allowed by her section. It cannot be established that any of the de minimis activity occurring during normal work hours involved activity having a partisan political purpose.

Sincerely,

SEDOR, WENDLANDT, EVANS & FILIPPI, LLC

William J. Evans

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 14 of 18
Exh. 20 - Opposition to Motion Summary Judgment & Cross- Motion for Summary Judgment
Page 14 of 18

From: Bakalar, Elizabeth M (LAW)
Sent: Monday, February 27, 2017 10:49 AM
To: Lindemuth, Jahna M (LAW); Cantor, James E (LAW); DeVries, Steven D (LAW); Vandor, Marjorie L (LAW); Grace, Joanne M (LAW)
Cc: Jim Sheehan (jsheehan@stsl.com)
Subject: RE: Independent Personnel Investigation and Retention of Counsel

All,

I have an important follow-up that I think you should know about—and that Mr. Evans should know about--because it affects our entire Department, and I want this email and the attachment made part of the official record of Mr. Evans' "investigation." I know for a fact that Ms. Driscoll-Stroup is behind the attack on my job via the Legislature. Rick Allen from OPA forwarded me the attached screenshot of Ms. Driscoll-Stroup's Facebook status attacking other "top appellate attorneys" in our office. She is not going to stop with me.

And while it might be politically expedient/necessary to "investigate" me, it won't be economical to spend thousands of dollars doing this to every lawyer in our office at the whim of a lunatic, whether she has the ear of the legislature or not. I just want you to understand who you are dealing with here, and that others could be impacted, as I have been.

I will add that this entire situation is making me incredibly stressed out and it is creating a very difficult work environment for me. I am having trouble eating, sleeping, and generally remaining sane and calm throughout this, much less focused on my work which I am doing my best to continue undistracted. I am crying at my desk every day. I have no idea when this investigation is starting or when it will end.

I feel like this is a LOT of indignity and uncertainty for a good employee to suffer, and while I understand why it's happening, I would also hate to see others—apparently many of our best lawyers per Ms. Driscoll-Stroup herself—go through the same thing at the instigation of one individual with a vendetta that she appears completely unwilling to abandon.

Thanks,

Libby

From: Bakalar, Elizabeth M (LAW)
Sent: Thursday, February 16, 2017 2:36 PM
To: Lindemuth, Jahna M (LAW); Cantor, James E (LAW); DeVries, Steven D (LAW); Vandor, Marjorie L (LAW)
Cc: Jim Sheehan (jsheehan@stsl.com)
Subject: Independent Personnel Investigation and Retention of Counsel

All,

1

**Exhibit 1**
**Page 1 of 3**

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 15 of 18
Exhibit 3 Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 15 of 18

Margie and Jim came to my office this morning to inform me that a contract is underway at the instigation of several legislators and one of their constituents into my popular blog, One Hot Mess. The purpose, as I understand it, is to conduct an independent personnel investigation into my blogging activities and its relationship to my work life, a relationship which is of course non-existent. My understanding is that the person who is being hired to conduct this investigation is an employment attorney named Bob Evans, whom I do not know.

I have reason to believe that this complaint has been initiated by a long-time online reader/stalker of One Hot Mess named Nancy Driscoll-Stroup. Ms. Stroup is an under-employed attorney living in the Mat-Su Valley, has documented white supremacist leanings, and has taken similar actions against other people with whom she disagrees to the point that she succeeded in getting her children expelled from the Valley Charter School based on her harassing conduct. She also initiated a similar personnel action this year against a federal law clerk, who was subsequently hospitalized with a mental health breakdown (though not ultimately disciplined to my knowledge) as a result of the "investigation" into the intersection of her work life and her so-called "political" beliefs, as initiated by Ms. Driscoll-Stroup.

I will not be bullied and threatened by this individual, or by anyone.

Regardless of the origins of the complaint, based on our conversation this morning, it is my understanding that you are not asking me to stop blogging on my own time or to take down my blog, and I have no intention of doing either. It is also my position that I do not use state time and resources beyond any *deminimus* level to look at, read, or write my blog notwithstanding the time stamps on some of the posts, for which there is a ready explanation that I will be happy to share with Mr. Evans.

It is further my position that I am a productive and valued member of this Department, just promoted to an Attorney V in December, with an excellent relationship to almost all my co-workers and every last one of my clients throughout my ten plus years at the Department and my three plus years of writing my blog. It is further my position that I have a First Amendment right to my beliefs and all of my writings on my own time. I have many references who would vouch for me and I plan to share their names with the investigator should he request them.

That said, I am taking this situation seriously. At this time, I have retained an attorney, Jim Sheehan, of Simpson, Tillinghast, Sorensen and Sheehan to represent me on all matters related to this "investigation" and its ultimate outcome. I have copied him on this email. Please pass on this information to Mr. Evans, who can reach me through Mr. Sheehan at the above email and at (907) 586-1400.

I fully plan to cooperate with Mr. Evans, but not without my attorney present.

Sincerely,

Libby

Libby Bakalar
Assistant Attorney General
State of Alaska
Department of Law
Labor & State Affairs
Tel: (907) 465-3600
Fax: (907) 465-2520

2

Exhibit 1
Page 2 of 3

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 16 of 18
Ex. A to Opposition to Motion Summary Judgment & Cross-Motion for Summary Judgment
Page 16 of 18


**Nancy Driscoll Stroup**
15 mins

The "Deep State" is a true problem in our country. I have been doing some research. The vast majority of AAGs for the State of Alaska are liberal. One of them - one of the State's top appellate attorneys - (not Libby but another AAG) who has represented the State in many high profile political cases (including US Supreme Court cases) is posting all sorts of left - wing liberal nonsense on her twitter feed and keeps re-tweeting the completely bogus "Rogue Potus Staffer" stuff. This is a problem because so many cases are politically charged and attorneys and judges take the side/issue opinions based on their partisan opinions. The law is so malleable it is ridiculous. Planned Parenthood just sued our State. I don't trust ANY of these AAGs to represent conservative Alaskans' interests.

 Like   Comment   Share

**Exhibit 1**
**Page 3 of 3**

Case 3:19-cv-00025-JWS Document 71-1 Filed 07/30/21 Page 17 of 18
Ex. A to Opposition to Motion Summary Judgment & Cross- Motion for Summary Judgment
Page 17 of 18

## Exhibit 2

### Statutes, Policies and Decisions Reviewed

1. State Personnel Act.  AS § 39.25.010 et seq.
2. Alaska Executive Branch Ethics Act.  AS § 39.52.010 et seq.
3. Department of Law Civil Manual
4. Information Security Policies – Web Filtering.  ISP-166
5. Information Security Policies – Business Use/Acceptable Use. ISP-172
6. Select Committee on Legislative Ethics – Minutes May 12, 2008
7. Select Committee on Legislative Ethics – Advisory Opinion April 23, 2004
8. Draft State of Alaska Social Media Policy – Draft June 12, 2012

Exhibit 2
Page 1 of 1

Case 3:19-cv-00025-JWS   Document 71-1   Filed 07/30/21   Page 18 of 18
Ex. 2 to Opposition to Motion Summary Judgment & Cross- Motion for Summary Judgment
Page 18 of 18