Mark Choate, 8011070
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
E-mail: lawyers@choatelawfirm.com

Amanda Harber, 1011119
49th State Law LLC
P.O. Box 661
Soldotna, AK 99669
Phone: (907) 545-4435
E-mail: amanda@49thstatelaw.com

Adam W. Hansen* pro hac vice forthcoming
Eleanor Frisch*     pro hac vice forthcoming
Apollo Law LLC
333 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Phone: (612) 927-2969
E-mail: adam@apollo-law.com
        eleanor@apollo-law.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| ELIZABETH BAKALAR, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA, <br><br> Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT & CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 3:19-CV-0002 |

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 1 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 1 of 75

# INTRODUCTION

When Michael Dunleavy became Governor of Alaska, he took an unprecedented step to screen out and stifle those with dissenting political beliefs. Through his chief of staff Tuckerman Babcock, Dunleavy told thousands of state employees—including doctors, pharmacists, geologists, IT professionals, and every attorney in the Department of Law—that they would be required to submit resignations along with pledges of loyalty to the new administration's political agenda. Plaintiff Elizabeth Bakalar, like thousands of other state employees, submitted to these extraordinary demands. Governor Dunleavy then accepted Bakalar's resignation, along with another attorney, because they had shared their opinions on national politics—opinions that differed from those of the new administration.

Defendants' Motion for Summary Judgment conveniently ignores Babcock and Governor Dunleavy's mass-resignation scheme and request for loyalty pledges. As a result, Defendants misrepresent the facts, as well as the law that governs this case. Defendants' extortion of loyalty pledges from thousands of state employees through a mass-resignation scheme was itself a loyalty test and patronage scheme that violated the First Amendment and Alaska state law. Defendants' loyalty test coerced employees' beliefs, chilled their willingness to express political views, and screened out those unwilling to affirmatively support Governor Dunleavy's political agenda. Dunleavy's demand for coerced loyalty pledges and attempt to screen out employees with opposing political beliefs independently infringed on Bakalar's, and thousands of other employees', right to freedom of association.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 2 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 2 of 75

*See Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976).

The free-speech component of this case emerges with Defendants' subsequent decision to accept Bakalar's coerced resignation because of the beliefs expressed in her blog. This infringed on both her freedom of association and her freedom of speech. The Pickering balancing test applies to these types of hybrid claims. *Hudson v. Craven*, 403 F.3d 691, 698 (9th Cir. 2005). For purposes of the Pickering analysis, however, Bakalar's termination cannot be divorced from the context of Defendants' unconstitutional loyalty test. Defendants' decision to accept Bakalar's coerced resignation must be viewed in light of their motives in seeking mass resignations and loyalty pledges in the first place—to screen out employees who were not politically loyal. Here, the evidence shows that Defendants did not actually terminate Bakalar for her blog posts about her bodily functions, Donald Trump's election, or Justice Kavanaugh's appointment. Instead, Defendants terminated Bakalar because she had voiced opposing political views and therefore had failed Governor Dunleavy's misguided and blatantly unconstitutional loyalty test. For purposes of the Pickering analysis, Defendant cannot rely on pretextual justifications like disruption in the workplace. *Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009). And even if they could, Defendants have not and cannot demonstrate any "actual, material and substantial disruption, or reasonable predictions of disruption in the workplace." *Id.* at 824 (cleaned up). At bottom, Bakalar prevails on her First-Amendment free-speech claim

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 3 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 3 of 75

because Defendants fired her for her speech, and they did so without any countervailing claim of workplace disruption.

Further, Bakalar does not fall within the "policymaker" exception outlined in *Branti v. Finkel*, 445 U.S. 507, and *Elrod v. Burns*, 427 U.S. 347. The *Elrod-Branti* analysis looks initially to state law to determine whether political affiliation is an appropriate requirement for the position in question. *See Branti*, 445 U.S. at 518; *Curtis v. Christian Cnty.*, Missouri, 963 F.3d 777, 786 (8th Cir. 2020); *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1309 (9th Cir. 2000). Here, Alaska's Personnel Act explicitly categorizes which state employees are free to engage in political speech without job repercussions and which state employees are "policymakers" that may be terminated for their political beliefs and speech. A.S. §§ 39.25.010, 39.25.100, 39.25.110, 39.25.120. The Alaska legislature has determined that political loyalty is not an appropriate requirement of Bakalar's position. See A.S. § 39.25.120(c)(3). Bakalar's actual job duties further support this determination. Bakalar analyzed legal questions and litigated cases under preexisting law. She had no control over any government programs, no authority to choose or settle her cases, and no final say even over the content of her advisory opinions, all of which were ultimately reviewed and signed by the Attorney General of Alaska. As a matter of law, her job duties, in view of Alaska's Personnel Act, placed her squarely outside the purview of the *Elrod-Branti* exception.

Bakalar is also entitled to summary judgment on her state-law claims, which are not dependent on the outcome of her First Amendment claims. First, Alaska's free-speech clause is "more protective of employee speech than is federal law." *Alaskans for a Common*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 4 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 4 of 75

*Language, Inc. v. Kritz*, 170 P.3d 183, 203 (Alaska 2007). Among other things, the Alaska Supreme Court considers an employee's policymaker status "of minimal value in its own right, but instead only one of the factors to be considered" in determining whether the government's interests outweigh the employee's right to free speech. *City and Borough of Sitka v. Swanner*, 649 P.2d 940, 945 (Alaska 1982). Thus, Bakalar's free-speech and associational claims under the Alaska Constitution are at least as strong as her First Amendment claims, and she is entitled to summary judgment for a violation of the Alaska Constitution regardless of whether she falls within the federal Elrod-Branti exception under federal law.

Defendants also violated Alaska's constitutional merit principle embodied in the Personnel Act. Uniquely among the fifty states, Alaska's Constitution and Personnel Act strongly rejected the spoils systems and patronage regimes that had come to predominate in other states and municipalities. In its place, the people of Alaska chose a better path: robust protections for a state workforce built on merit, ability, and professional character. Dunleavy's loyalty oath, which harkens back to Boss Tweed's famously corrupt regime in 19th Century New York, has no home under Alaska law. Defendant's sole argument on this issue—that the merit principle cannot offer an "end run" around the First Amendment—makes no sense. Nothing prevents the State of Alaska from giving its employees greater protections than the First Amendment does. And that is exactly what the State of Alaska has done in establishing a merit system of employment.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 5 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 5 of 75

Finally, Bakalar is entitled to summary judgment on her common-law claim for wrongful discharge. Defendants' conduct was not only unconstitutional, it was also unfair, malicious, and in contravention of public policy. Bakalar has thus established a violation of Defendants' duty of good faith and fair dealing under Alaska law.

Governor Dunleavy's unprecedented loyalty test, and his termination of Bakalar for failing that misguided test, was blatantly unconstitutional under clearly established state and federal law. Defendants are not entitled to qualified immunity or summary judgment. Instead, the Court should grant Bakalar's instant motion for summary judgment on all of her claims.

## FACTUAL BACKGROUND

Throughout her time as a state employee under multiple administrations, Bakalar demonstrated stellar performance. Bakalar worked for the State of Alaska as an assistant attorney general in the Department of Law for over twelve years. First hired by the State as an "Attorney II" in 2006, she was steadily promoted over the next decade. In 2018, she was promoted to become an Attorney V, or an "expert attorney."[1]

Margie Vandor, Bakalar's immediate supervisor, described Bakalar as a "highly valued" lawyer who could "comfortably handle complex matters" and who did a "splendid job" on issues that were "novel, highly complicated, and involved detailed analysis of applicable constitutional law."[2] "She was a great colleague...very helpful. She had a great

---

[1] Exh. 1 & 2.
[2] Exh. 1, p. 15.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 6 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 6 of 75

attitude about helping other people. She was very responsive if you needed her—an answer to something."[3]

Bakalar was a vigorous advocate for the State of Alaska, no matter the cause. In 2013, she defended the State in a two-week federal trial brought by Alaska Native individuals and tribes under Section 203 of the federal Voting Rights Act.[4] In 2014, she defended the Republican Parnell administration in a lawsuit brought by the Alaska Dispatch News under the state Public Records Act.[5] In 2016, she represented the State in a trial over the 2016 primary election in House District 40.[6]

Over the course of Bakalar's employment with the State of Alaska, she secured favorable decisions for the State from the Alaska Supreme Court and the Ninth Circuit Court of Appeals, including in *Hughes v. Treadwell*, 341 P.3d 1121 (Alaska 2015); *State v. Alaska Fisheries Conservation Alliance, Inc.*, 363 P.3d 105 (Alaska 2015); *Bachner Co., Inc. v. State*, 387 P.3d 16 (Alaska 2016); *Mallott v. Stand for Salmon*, 431 P.3d 159 (Alaska 2018); *Nageak v. Mallott*, 426 P.3d 930 (Alaska 2018); *Patterson v. Walker*, 429 P.2d 829 (Alaska 2018); and *Raymond v. Fenumiai*, 580 F. App'x. 569 (9th Cir. 2014). Bakalar briefed and argued *Reynolds-Rogers v. State, Dep't of Health and Social Services*, 436 P.3d 469 (Alaska 2019), while she was still working for the State, and it was decided in Alaska's

---

[3] Exhibit 3, 38:20-24.
[4] *Bakalar Affidavit* ¶ 4.
[5] *Id.,* ¶ 5.
[6] *Id.* ¶ 6.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 7 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 7 of 75

favor shortly after she was discharged.[7] Bakalar also received "Special Recognition" by her supervisor, Margie Vandor:

> I am nominating Libby Bakalar for the "Lightning Fast Award." When you combine passion, conviction, focus, accuracy, writing skills and "speed" - you have described Libby. Libby has been with the Department for 7 years. She joined the Human Services section in September, 2006, and transferred to the Labor & State Affairs section in the Fall of 2011, where she has been primary counsel for the Lieutenant Governor and the division of elections. In the short time she's been in L&SA, she has handled numerous high profile matters for elections, including voting rights act matters, voter registration issues, ballot initiative legal certifications, referendum matters; she has also drafted regulations for precincts after redistricting, as well as drafted legislation. To say that Libby is enthusiastic in the approach to her work is truly an understatement.[8]

No allegation has ever been made that Bakalar's political beliefs compromised her advocacy on behalf of Alaska during her time in the Department of Law, regardless of the administration she worked under.

Although Bakalar represented the State in many important and sometimes high-profile cases, she never worked in a "policy-making" role. "Policy makers" are defined by AS 39.52.180(f) as members of the Executive Branch who are required to file a statement with the Alaska Public Offices Commission under AS 39.50.20. Neither Bakalar nor any other assistant attorney general was required to file such a statement.[9] Furthermore, the State Personnel Act, which identifies state employees who are allowed to engage in free political speech and association without job repercussions, does not designate Bakalar's

---

[7] *Id.* ¶ 7.
[8] Exh. 4.
[9] *Bakalar Affidavit* ¶ 9.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 8 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 8 of 75

position as exempt from its protections from political considerations, instead placing her in the same partially exempt category as public defenders. A.S. § 39.25.120(c)(3).

Bakalar's responsibilities as an attorney for the State were well-defined and narrow in scope. She did not act as an adviser on policy or formulate plans for the implementation of policy goals.[10] Bakalar's supervisors charged her with handling individual—though complex—cases and pursuing goals defined by higher level government officials.[11] Bakalar had little autonomy to make even routine decisions. Bakalar needed permission from supervisors to disqualify a judge, file a Rule 11 motion, travel, and even get basic supplies.[12] She had no authority to settle cases without permission from her superiors.[13] Specific political affiliations or beliefs were a requirement neither for the position of an Attorney V generally, nor for Bakalar's job duties specifically.[14]

## I.   As a Private Citizen, Bakalar Maintained a Personal and Political Presence on Social Media.

In 2014, Bakalar started a blog entitled "One Hot Mess" that focused on her personal lifestyle and parenting, but never her job.[15] Through One Hot Mess, she shared commentary on topics including books, movies, childhood, friendships, music, technology, style, fashion, and national politics. As the byline says: "You'll laugh. You'll cry. You'll feel better about yourself. I promise."[16]

---

[10] *Id.* ¶ 10.
[11] *Id.* ¶ 11.
[12] *Id.* ¶ 12.
[13] *Id.* ¶ 13.
[14] *Id.* ¶ 14.
[15] *Id.* ¶15.
[16] Exh. 5.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 9 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

After the 2016 presidential election, Bakalar started blogging more about national politics, to oppose what she viewed as problems in the Trump administration.[17] She also occasionally participated in public gatherings to support social justice causes.[18]

Although Bakalar has publicly expressed her political views, she has never publicly criticized—in her blog or elsewhere—any position taken by the State of Alaska in matters related to her work.[19] To the contrary, Bakalar has won high praise for her work from colleagues and clients from all sides of the political spectrum.[20]

In January 2017, Nancy Driscoll Stroup, a politically conservative attorney in Palmer, Alaska, started a blog of her own entitled "Ethics and One Hot Mess Alaska." Stroup's blog had one purpose: "This blog makes the case that Blogger Libby Bakalar of 'One Hot Mess Alaska' fame should not be working as an Assistant Attorney General for the State of Alaska."[21] This is what Stroup had to say about Bakalar:

> Alaskan Assistant Attorney General Libby Bakalar uses extremely profane and vulgar and mean language in her Blog. She makes fun of people based on their political affiliations (Trump supporters) and their religion (fundamental Christians) and lectures white people on how they need to behave ("Memo to White People from a White Person: Don't be a Shithead" - 6/12/16 post). Take a look at her blog.
>
> Is Bakalar the type of person we want working as an attorney in the Attorney General's office?
>
> My opinion: NO.[22]

---

[17] *Id.* ¶16.
[18] *Id.* ¶17.
[19] *Id.* ¶18.
[20] *Id.* ¶19. Exh. 4, *Scott Kendall Affidavit*.
[21] Exh. 6.
[22] Exh. 7.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 10 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 10 of 75

Stroup has posted numerous times on her blog since January 2017 and has repeatedly called for Bakalar to be terminated from her job as an assistant attorney general.[23] Stroup believed Bakalar should be fired for being "hysterically anti-Trump" and having "a liberal worldview."[24] Stroup also accused Bakalar of blogging while working, thereby violating provisions of the State of Alaska Executive Ethics Act that prohibit state employees from doing personal business on State time. Stroup voiced these complaints to State officials.[25]

Bakalar was also targeted by another conservative blogger, Suzanne Downing. Believing—wrongly—that Bakalar had received a gift of travel from the ACLU, Ms. Downing blogged complaining of a potential conflict of interest and asking whether there was an "ethics disclosure?"[26] Downing has frequently commented on Bakalar's termination.[27]

## II. The State of Alaska Conducted an Investigation and Cleared Bakalar's Social Media Activity.

Soon after Stroup made these complaints, the State of Alaska initiated an investigation into Bakalar's blogging to determine whether she violated any ethics rules. The State hired an outside attorney, William J. Evans, to conduct the investigation and to issue findings. On March 16, 2017, Evans issued a fourteen-page report that concluded that Bakalar did not violate any ethical standards in writing or posting to One Hot Mess

---

[23] Exhs. 8 – 14.
[24] Exh. 6.
[25] Exh. 15.
[26] Exh. 16.
[27] Exh. 17, 18 & 19.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 11 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Alaska.[28] The report notes that Bakalar's supervisor described her as "an exceptional attorney who can produce organized, top notch legal work quicker than any attorney she has supervised during her long career."[29] The supervisor was certain that Bakalar's blogging activities "had not interfered with her work" in any way.[30]

## III. Babcock Demanded Loyalty to Governor Dunleavy from Thousands of Alaska Employees.

On November 6, 2018, Michael Dunleavy was elected Governor of Alaska. On November 8, 2018, the Governor-elect announced that Tuckerman Babcock would serve as his chief of staff and as the chair of Dunleavy's transition team.[31] Immediately before being selected as Dunleavy's chief of staff and transition chair, Babcock served for two-and-a-half years as the chair of the Alaska Republican Party.[32] Babcock is a prolific blogger who uses Facebook to publish his very conservative political views, often publishing multiple times a day.[33] As the chair of the Alaska Republican Party, Babcock was well known for his criticisms of Republicans who worked in a bipartisan manner on issues facing Alaska. Babcock actively undermined such officials and, sometimes successfully, attempted to remove them from office.[34]

On November 16, 2018—the Friday before Thanksgiving and less than two weeks after Dunleavy was elected—Babcock requested the resignations of more than 1,200

---

[28] Exh. 20, Exh. 3, 69:6-73:9.
[29] Exh. 20, p. 11.
[30] *Id.* at 11-12. Other than the statutory state personnel rules, the Department of Law did not have a separate employee policy about political or personal social media usage. Exh. 3, 79:20-81:17.
[31] Exh. 21.
[32] Exh. 22.
[33] *Id.*
[34] Exhs. 23-26.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 12 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 12 of 75

partially-exempt State of Alaska employees, asking each employee to submit an unprecedented loyalty pledge to the new governor.[35] Babcock's memorandum stated that "the incoming administration will be making numerous personnel decisions" and that Dunleavy "is committed to bringing his own brand of energy and direction to state government."[36] Even worse, Babcock said that the administration "just wants all of the state employees who are at-will . . . to affirmatively say, 'Yes, I want to work for the Dunleavy administration.'"[37] He intended the resignation request to measure each employee's agreement with Dunleavy and his politics, stating, "Do you want to work on this agenda, do you want to work in this administration? Just let us know." *Id*. Babcock gave employees two weeks to respond with their resignations and loyalty pledges.[38]

Babcock made clear that any state employees who refused to offer their allegiance to Dunleavy would likely be fired. "If you don't want to express a positive desire, just don't submit your letter of resignation," Babcock said. "And then you've let us know you just wish to be terminated."[39] For those who were to submit resignations, Babcock stated that "consideration will be given" to each employee's "statement of interest in continuing" in the Dunleavy administration.[40]Dunleavy echoed Babcock's description of the mass-

---

[35] Exh. 27.
[36] *Id.*
[37] Exh. 28.
[38] Exh. 27.
[39] Exh. 28.
[40] *Id.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 13 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 13 of 75

resignation scheme, saying it was meant "to give people an opportunity to think about whether they want to remain with this administration."[41]

Although characterized as "customary during the transition from one administration to the next," Babcock's loyalty demand was sent to an unprecedented number of State of Alaska employees who did not even arguably hold policymaking positions.[42] These employees included, according to several legislators who agreed the move was inappropriate, "medical doctors, psychiatrists, pharmacists, fiscal analysts, state tax code specialists, investment managers, petroleum geologists, trust managers, accountants, research analysts, IT professionals, loan officers, military & veterans affairs coordinators, marine transportation managers, administrative law judges, and state attorneys presently working on behalf of the public on important and complicated legal issues, including prosecutors on criminal cases."[43]

There is a good reason these loyalty pledges are unprecedented: loyalty to Gov. Dunleavy and his agenda was irrelevant to Bakalar's job as a non-policymaking attorney.[44] She did not even report to any policymakers in government, so she was always at least one full layer removed from the policymaking apparatus.[45] And the non-policymaking

---

[41] *Id.*
[42] In her 30 years of service to the Department of Law, deponent Joanne Grace agreed that requesting that the nearly 1,200 individuals who make up the state's workforce resign and reapply was unprecedented and that it negatively affected employee morale. Exh. 3, 51:3-16.
[43] Dkt. 50-1 ¶ 45.
[44] *Bakalar Affidavit ¶¶ 10-14.*
[45] *Bakalar Affidavit ¶ 37.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 14 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 14 of 75

attorneys to whom Bakalar reported controlled the most substantive decisions involved in her litigation.[46]

Every attorney in the Department of Law received the Babcock memorandum requesting their pledges of loyalty, regardless of whether they were "policymakers."[47] The Babcock memorandum caused a great deal of confusion, uncertainty, and anxiety within the Department.[48] Attempting to allay these concerns, then-Attorney General Jahna Lindemuth provided the Department's attorneys with suggested language to ensure compliance with the Babcock memorandum.[49]

## IV. Defendants Terminated Bakalar Because of Her Political Beliefs and Expressions.

Bakalar submitted her resignation to the Dunleavy transition team before the November 30 deadline, consciously including the statement that Attorney General Lindemuth suggested.[50] In her letter, Bakalar also described the successful work she had performed for the Department and for the State of Alaska. *Id*. All she wanted was to keep her job.

Dunleavy was sworn in as the Governor of Alaska at 12:00 p.m. on December 3, 2018. At 12:18 p.m.—less than 20 minutes after Dunleavy's inauguration—Bakalar was

---

[46] *Id.*

[47] *Bakalar Affidavit* ¶ 38. Babcock wrongly defended this move by claiming that "that most of the attorneys, if not all, are to one degree or another, policymakers in the Department of Law." Exh. 31, 169:10-21. But Alaska law and the attorneys' actual job duties refute that claim. Exh. 2. Notably, Babcock's statement also demonstrates that Defendants performed no individualized appraisal of state employees' positions to determine who was and wasn't a "policymaker."

[48] *Id.* at ¶ 39.

[49] *Id.* at ¶ 40. Exh. 29.

[50] Exh. 30.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 15 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 15 of 75

notified that her resignation had been accepted and that her employment had been terminated.[51]  Babcock, as the chair of the Dunleavy Transition Team, had directed that she be terminated.[52] She was given less than two hours to clean out her office and leave the building.[53]

The stated reasons for Bakalar's termination have shifted over time. Babcock first claimed he terminated Bakalar because of the tone of her resignation letter.[54] Though admittedly unaware of any criticisms of Bakalar's actual work for the State, Babcock claims he interpreted her statement that her "resignation is not voluntary but is instead being made at the request of Babcock, who has indicated that if [she did] not submit [her] resignation as requested, [her] employment [would] be terminated"—as "unprofessional" and as a "poke in the eye."[55] Now, in their brief, Defendants have concocted entirely new reasons for Bakalar's termination: the supposed "pueril[ity]" of her posts, and feigned concerns that her political posts about Trump and Justice Kavanaugh's appointment would cause disruption in the workplace.[56] Defendants have offered zero evidence that these were the actual reasons for Bakalar's termination.

To the contrary, the shifts in Defendants' rationale demonstrate that all of their proffered justifications are pretextual. Bakalar was actually terminated for another reason entirely: she is a liberal who has expressed her political opinions on her private blog.

---

[51] *Bakalar Affidavit*, ¶ 20.
[52] Exh. 31, 138:7-9.
[53] *Bakalar Affidavit*, ¶ 21.
[54] Exh. 31, 138:7-9.
[55] Exh. 31, 133:3-136:8.
[56] Defs'. Mot. in Support of Summ. J. 1, 10, 17.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 16 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 16 of 75

Defendants' mass-resignation scheme was designed to weed out political dissenters, and that's exactly what they did when they terminated Bakalar.

The only other non-policymaking attorney in Bakalar's Department who was fired when Dunleavy became governor—assistant attorney general Ruth Botstein—was also publicly critical of Donald Trump.[57] She, too, was an Attorney V, had outstanding performance evaluations, enjoyed the confidence of her supervisors and colleagues, and had represented the State in numerous cases.[58] She worked in the Opinions, Appeals, and Ethics section of the Department and twice represented the State of Alaska before the United States Supreme Court.[59] However, in January 2017, Botstein tweeted or retweeted several posts that were critical of President Trump.[60] Specifically, Botstein retweeted two tweets from an account named "Rogue POTUS Staff," one of which accused Trump of wanting to "be remembered as a King," and another arguing that Trump is "known to favor low quality pub[lic] schools, saving quality edu[cation] for the right, to remind commoners 'where they rank in the world.'"[61]

Stroup, the conservative attorney who opined that Bakalar should not be an assistant attorney general because of her political beliefs, also complained about Botstein. On February 27, 2017, Stroup posted a message on social media in which she complained:

> The 'Deep State' is a true problem in our country… The vast majority of AAGs for the State of Alaska are liberal. One of them - one of the state's top appellate attorneys -who has represented the State in many high profile

---

[57] Exh. 38.
[58] *Bakalar Affidavit*, ¶ 23.
[59] *Bakalar Affidavit*, ¶ 24.
[60] *Bakalar Affidavit*, ¶ 23.
[61] *Id.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 17 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 17 of 75

political cases (including US Supreme Court cases) is posting all sorts of left-wing liberal nonsense on her twitter feed and keeps retweeting the completely bogus 'Rogue Potus Staffer' stuff. I don't trust ANY of these AAGs to represent conservative Alaskan's [sic] interests.[62]

Stroup specifically notified Babcock's transition team that attorneys in the Alaska government were "very, very liberal."[63] She urged the transition team to "carefully vet" such lawyers because she believed their work created a "lack of trust."[64]

Like Bakalar, Botstein was terminated within minutes of Dunleavy becoming Governor.[65] Given this course of events, no reasonable trier of fact would find that it was a coincidence that the only two assistant attorneys general Dunleavy discharged had engaged in "liberal" political speech and had been targeted by Stroup's critiques. It seems Stroup's preaching was heard by the choir: Babcock terminated Bakalar and Botstein because Dunleavy did not want liberals in the Alaska government. Terminations that occurred outside the Department of Law support his. For example, at least two psychiatrists who refused to pledge loyalty to Governor Dunleavy have filed suit because they were terminated as a part of Defendants' mass resignation scheme. *Blanford & Bellville v. Dunleavy et al,* Case No. 3:19-cv-00036.

### STANDARD OF REVIEW

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "[t]he movant

---

[62] Exh. 15.
[63] *Id.*
[64] Exh. 38.
[65] Dkt. 50-1 ¶ 61.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 18 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 18 of 75

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 378 (2007). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion." *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)), aff'd in part, 726 F. App'x 631 (9th Cir. 2018). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

## ARGUMENT

Defendants discriminated against Bakalar because of her political opinions and beliefs. Governor Dunleavy's demand for mass resignations and loyalty pledges from rank-and-file state employees constituted a patronage system that violated Bakalar's clearly established rights to freedom of association under the First Amendment. Defendants' subsequent decision to accept Bakalar's resignation also violated her rights to free speech and freedom of association. There can be no genuine dispute that Defendants accepted Bakalar's resignation, while denying other employees', because of the political opinions

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 19 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 19 of 75

Bakalar expressed in her blog. The United States Constitution and opinions from the Supreme Court and courts of appeals clearly forbid this. Although Defendants now argue that Bakalar was terminated for workplace disruption, that is an obvious pretext and therefore cannot overcome Bakalar's right to engage in protected speech under Pickering. Even if it could, however, the Defendants bear the burden of demonstrating real or reasonably anticipated workplace disruption. And the purported evidence of disruption they have proffered is woefully insufficient.

As a matter of law, Bakalar was not a "policymaker" and did not fall within the Elrod-Branti exception to political dismissals. Alaska statutes comprehensively and clearly define which positions within the state employment hierarchy are considered policymakers, and Bakalar's position is not among them. A.S. §§ 39.25.110, 39.25.120, 39.25.178, 39.52.180(f). Alaska statutes define her position as one for which party affiliation is not an appropriate requirement, and the Alaska legislature's pronouncement on the policymaking status of State employees is entitled to great weight. Bakalar's actual job duties support the Alaska legislature's judgment. Accordingly, Bakalar is entitled to summary judgment on the issue of whether she falls within the Elrod-Branti exception and on the issue of Defendants' liability under the First Amendment. Moreover, the law indicating that Bakalar was not a policymaker was clearly established at the time of her termination, and therefore Defendants are not entitled to qualified immunity.

Defendants also violated the Alaska Constitution and Alaska statutes. Defendants violated the merit principle embodied in article XII section 6 of the Alaska Constitution

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 20 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 20 of 75

and implemented by the Alaska Legislature via the Personnel Act, A.S. §§ 39.25.010-39.25.995. Under the merit principle, public employees in Alaska must be treated "under conditions of political neutrality, equal opportunity, and competition on the basis of merit and competence." *Alaska Pub. Emps. Ass'n v. State*, 831 P.2d 1245, 1249 (Alaska 1992) (citation omitted). Defendants' actions fell short of that standard by a mile. Defendants targeted Bakalar and others explicitly because of their political beliefs—not their merit and competence. Defendants also infringed on Bakalar's right to freedom of expression under Alaska's free-speech clause, which is even "more protective of employee speech than is federal law." *Alaskans for a Common Language*, 170 P.3d at 203. Defendants' demand for a loyalty pledge and their discharge of Bakalar for her political views blatantly violated both provisions of the Alaska Constitution as well as the Personnel Act, entitling Bakalar to summary judgment on her state constitutional and merit-principle claims.

Finally, Defendants violated the implied covenant of good faith and fair dealing inherent in Bakalar's employment contract. Defendants' constitutional violations establish a violation of the covenant as a matter of law. Defendants' request for mass resignations and loyalty pledges, and its decision to accept Bakalar's resignation because of the political views expressed in her blog, were also patently unfair, in bad faith, and in obvious violation of public policy.

Bakalar is thus entitled to summary judgment on every one of her claims against Defendants.

## I. Defendants Infringed on Bakalar's Rights Under the First Amendment.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 21 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 21 of 75

The First Amendment grants Bakalar a right to freedom of speech and expression. U.S. Const. amend. I. "The Free Speech Clause exists principally to protect discourse on public matters." *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 790 (2011). It reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). It embraces an "open marketplace of ideas," ensuring access to a wide range of "social, political, esthetic, moral, and other ideas and experiences." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 354 (2010); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969); *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). It is "[p]remised on mistrust of governmental power," and "stands against attempts to disfavor certain subjects or viewpoints." *Citizens United*, 558 U.S. at 340. "[I]t furthers the search for truth," *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018) (citation omitted), and "ensure[s] that…individual citizen[s] can effectively participate in and contribute to our republican system of self-government," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982).

The First Amendment shields public employees in non-policymaking roles from retaliation for their protected First Amendment activities. *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). "A public employee does not relinquish [his] First Amendment rights… by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). Though the government "may impose certain restraints on the speech of its employees… that would be unconstitutional if applied to the general public," *City of*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 22 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 22 of 75

*San Diego v. Roe*, 543 U.S. 77, 80 (2004), "the government does not gain the unfettered ability to interfere with the constitutional rights of its employees." *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003). The government "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick*, 461 U.S. at 142.

That is exactly what Defendants did here. Defendants engaged in two separate but related actions that violated Bakalar's First Amendment rights. First, as Supreme Court cases make clear, Defendants' request for mass resignations and loyalty pledges itself violated Bakalar's right to freedom of association. Such patronage schemes are patently illegal unless they are narrowly targeted to employees who fall within the *Elrod-Branti* exception. Contrary to Defendants' argument, Bakalar does not fall within the exception for "policymakers" who may be fired for political reasons without infringing the First Amendment. Second, Defendants' decision to terminate Bakalar because of her political beliefs and speech violated her right to both freedom of association and freedom of speech under the Pickering balancing test. Defendants have not met and cannot meet their burden of demonstrating that "legitimate administrative interests outweigh [Bakalar's] First Amendment rights." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (citation omitted). Bakalar is therefore entitled to summary judgment.

### A. Defendants' Request for Mass Resignations and Loyalty Pledges Violated Bakalar's Right to Freedom of Association.

Defendants' request for mass resignations accompanied by pledges of loyalty patently infringed on Bakalar's right to freely associate. Accordingly, even if Defendants

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 23 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

had never seen Bakalar's blog, their mass-resignation scheme independently violated the First Amendment.

The First Amendment protects public employees from patronage-based interference with the freedom of association. "[P]olitical belief and association constitute the core of those activities protected by the First Amendment." *Elrod*, 427 U.S. at 356. "Conditioning public employment on the provision of support for the favored political party unquestionably inhibits protected belief and association." *Rutan*, 497 U.S. at 69 (citation and quotations omitted).

Thus, the Supreme Court has long held that patronage practices impermissibly restrict freedoms of belief and association granted under the First Amendment. In a patronage system, "public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party." *Elrod*, 427 U.S. at 359. Such practices "are not narrowly tailored to serve vital government interests." *Rutan*, 497 U.S. at 63. "Patronage… is inimical to the process which undergirds our system of government and is at war with the deeper traditions of democracy embodied in the First Amendment." *Elrod*, 427 U.S. at 357 (quotations and citations omitted). Even an "ostensible" pledge of allegiance to another party serves to compromise an individual's true beliefs. *Id.* at 355. And the "threat of dismissal for failure to provide that support unquestionably inhibits protected belief and association." *Id.* at 359. "A government's interest in securing effective employees can be met by discharging, demoting, or transferring persons whose work is deficient," and its "interest in securing employees who

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 24 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

will loyally implement its policies can be adequately served by choosing or dismissing high-level employees on the basis of their political views." *Rutan*, 497 U.S. at 63 (emphasis added). Patronage practices thus violate the First Amendment unless they fall within the narrow *Elrod-Branti* exception, which only applies to those employees for whom "party affiliation is an appropriate requirement for the effective performance" of the job. *Branti*, 445 U.S. at 518.

Defendants' scheme to elicit loyalty pledges from state employees constituted an obvious patronage practice that infringed on all of those employees' freedoms of association and belief. Babcock's memorandum requested the resignations of 1,200 partially exempt employees, presumably for no reason other than that they were hired by previous administrations.[66] This alone constituted discrimination against these employees for political considerations. Babcock then made it clear that these employees were expected to "express a positive desire" to work on Governor Dunleavy's "agenda," and that any employee who failed to do so would be terminated.[67]

Supreme Court precedent demonstrates that Babcock's demand was "tantamount to coerced belief" and thus unconstitutional. *Elrod*, 427 U.S. at 355. In Elrod, for example, employees were "required to pledge their political allegiance to the Democratic Party" to maintain their jobs. *Id.* The Supreme Court held that this violated their right to freedom of association. *Id.* at 373. Similarly, in *Rutan*, the Supreme Court struck down a governor's

---

[66] Exh. 27.
[67] Exhs. 27-28.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 25 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 25 of 75

hiring freeze that only allowed promotions subject to his explicit approval. 497 U.S. 62. The hiring freeze, the Court held, created a patronage system that would chill employees' freedoms of speech and association. *Id.* at 74. The Court observed that as a result of the hiring freeze, employees "will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder." *Id.* at 73.

Defendants' mass resignation scheme was an even more blatant violation of the freedom of association than the hiring freeze in *Rutan*, because Defendants said the quiet part out loud: political dissenters are unwelcome.[68] As a result of Defendants' patronage scheme, a number of employees lost their jobs, and thousands of employees of the state of Alaska will now "feel a significant obligation to support political positions" held by Governor Dunleavy and to "refrain from acting on the political views they actually hold." *Rutan*, 497 U.S. at 73. Like the hiring freeze in *Rutan* and the loyalty pledge in *Elrod*, Defendants' loyalty test here created a patronage system that "impermissibly encroach[ed] on First Amendment freedoms." *Id.* at 74.

### B. Bakalar Does Not Fall Within the Elrod-Branti Exception.

Both state law and Bakalar's actual job duties demonstrate that she does not fall within the *Elrod-Branti* exception to patronage systems' illegality.

Patronage schemes for government employment are generally unconstitutional because the "First Amendment prevents the government, except in the most compelling

---

[68] Exhs. 27-28.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 26 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

circumstances, from wielding its power to interfere with its employees' freedom to believe and associate." *DiRuzza*, 206 F.3d at 1308  (emphasis in original) (quoting *Rutan*, 497 U.S. at 76). "Although the practice of patronage dismissals clearly infringes First Amendment interests," the United States Constitution narrowly allows patronage dismissals of a small set of "policymaking positions" in which "the employee acts as an adviser or formulates plans for the implementation of broad goals." *Elrod*, 427 U.S. at 368. This exception (known as the "*Elrod-Branti* exception" or "policymaker exception") enables "the implementation of policies of [a] new administration, policies presumably sanctioned by the electorate.'" *Id.* at 367. "Policymaker" is a bit of a misnomer, however. Some employees who make policy will not fall within the exception, and others who do not make policy will. "[T]he ultimate inquiry is not whether the label 'policymaker'… fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518.

In evaluating whether an employee is a policymaker, courts typically look first to "state law to determine whether political loyalty is a requirement" of the position. *Curtis*, 963 F.3d at 786; *see also Rose v. Stephens*, 291 F.3d 917, 924 (6th Cir. 2002) (analyzing Kentucky statutes to determine whether police commissioner was a policymaker); *Biggs v. Best, Best & Krieger,* 189 F.3d 989, 997 (9th Cir. 1999) ("[T]he focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." (*citing Collins v. Voinovich*, 150 F.3d 575, 577

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 27 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 27 of 75

(6th Cir. 1998))); *Jenkins v. Medford*, 119 F.3d 1156, 1163 (4th Cir. 1997) (relying on North Carolina statute's characterization of the role of deputy sheriffs and finding it significant that the legislature made deputies at-will employees serving at the "pleasure" of the appointing officer). The Supreme Court elaborated on this point in *Branti*.

> As one obvious example, if a State's election laws require that precincts be supervised by two election judges of different parties, a Republican judge could be legitimately discharged solely for changing his party registration. That conclusion would not depend on any finding that the job involved participation in policy decisions or access to confidential information. Rather, it would simply rest on the fact that party membership was essential to the discharge of the employee's governmental responsibilities.

445 U.S. at 518. Thus, irrespective of whether a public employee actually makes policy, state law explicitly defining whether political considerations are appropriate for that position will establish as a matter of law whether the policymaker exception applies. *Id.*; *Curtis*, 963 F.3d at 786.

In the absence of guidance from state law, however, courts in the Ninth Circuit look to an employee's "actual, not… possible, duties." *DiRuzza*, 206 F.3d at 1310. For example, in *DiRuzza*, the Ninth Circuit considered whether a deputy sheriff fell within the policymaker exception. *Id*. The court first looked to "California law" and determined that state law had not answered whether deputy sheriffs were policymakers, distinguishing the case from cases in other states with different laws. *Id.* at 1309, 1311-13. After finding California law unhelpful, the court instructed the district court to look to the employee's individualized job responsibilities using the factors outlined in *Fazio v. City and County of San Francisco*, 125 F.3d 1328 (9th Cir. 1997). Id. at 1310, 1313. Under *Fazio*, the "factors

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 28 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 28 of 75

to be considered when determining whether a job is a policymaking position" include "vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of the policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." 125 F.3d at 1334 n. 5.

### 1. State Law Establishes that Party Affiliation Is Not a Requirement for Bakalar's Position.

The Alaska legislature has specifically spoken, repeatedly, on the "ultimate inquiry" in the policymaker analysis. And it has consistently stated that "party affiliation" or political loyalty is not "an appropriate requirement" for Bakalar's position. *See Branti*, 445 U.S. at 518. Accordingly, Bakalar is entitled to summary judgment on this issue.

First, the Alaska Legislature has spoken via personnel rules specific to state employees. Alaska's State Personnel Act sets forth a statutory merit system of employment and explicitly gives state employees the right to engage in political activity and express political opinions. A.S. §§ 39.25.010, 39.25.178. The Personnel Act classifies public employees into three categories: "exempt," "partially exempt," and "classified" positions. These classifications determine which state employees are exempt from the right to express political views and hold political beliefs without job repercussions. A.S. §§ 39.25.010, 39.25.100, 39.25.110, 39.25.120. The Alaska legislature refused to categorize Bakalar's position as one of several dozen fully exempt positions, instead explicitly placing her in the same category as public defenders, who are generally not policymakers under *Branti*. 445 U.S. at 518; A.S. § 39.25.120(c)(3) (covering "attorney

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 29 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 29 of 75

members of the staff of the Department of Law, of the public defender agency, and of the office of public advocacy"). The Alaska legislature understood that Bakalar's job was an ordinary one that could be performed regardless of politics, and it codified this understanding. *See* A.S. §§ 39.25.110(b), 39.25.178. Alaska's legislature has definitively mandated that political affiliation is not an appropriate requirement of Bakalar's job.

Other provisions of state law also support this conclusion. For example, Alaska law identifies which positions within the Office of the Governor are "policy-making position[s]," imposing a one-year lobbying restriction on individuals leaving them. A.S. § 39.52.180. The goal of the provision is to prevent those with policymaking authority from taking "substantial official action" for personal gain. *Op. Att'y Gen.*, 1986 WL 81207, at *2 (Alaska Oct. 3, 2011). Employees are defined as "policymakers" for purposes of this provision if they are required to file a statement with the Alaska Public Offices Commission per A.S. § 39.50.020, A.S. § 39.52.180(f). A review of APOC filings confirms that Joanne Grace, head of the Department of Law's civil division, and Ed Sniffen, former deputy Attorney General and acting Attorney General, filed APOC reports.[69] In contrast, neither Bakalar nor any other Assistant Attorney General has filed APOC statements since at least 2017.[70]

Contrary to Defendants' argument, Bakalar's work for the division of elections—a small portion of her job duties[71]—did not make political loyalty an appropriate requirement

---

[69] *Choate Declaration* ¶¶ 32-33.
[70] *Id.,* ¶ 40.
[71] *Bakalar Affidavit* ¶ 38.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 30 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 30 of 75

of her job. Indeed, the opposite is true. Alaska law explicitly designates the division of elections as a "nonpartisan" and "impartial[]" institution. *See* A.S. § 15.10.105(b). Though Defendants seem to think this designation helps them, it does not. Political affiliation is an essential job requirement for policymakers because they fill positions that involve partisan policymaking and therefore may require political loyalty. *See Branti*, 445 U.S. at 518. Since the division of elections is a nonpartisan and politically impartial institution by statutory mandate, "whatever policymaking occurs in [that] office" does not relate to "partisan political interests"—which is the ultimate question in the *Elrod-Branti* analysis. *Id*. (emphasis added). Indeed, this is exactly why the Supreme Court in *Branti* held that the exception did not apply to public defenders. *Id.* The same holds true for Alaska's division of elections. Defendants have no legitimate interest in demanding the political loyalty of an attorney who advises a nonpartisan division of the state government. State law governing the division of elections thus further supports the notion that Bakalar falls outside the policymaker exception.

Indeed, accepting Defendants' argument that political loyalty was an appropriate requirement of Bakalar's work advising the division of elections would only erode the nonpartisan nature of that institution. If employees or advisors of the division of elections could be subjected to loyalty pledges and patronage dismissals, that would disrupt the balance of political beliefs among them, leading to a more partisan institution.

The State of Alaska has stated that political loyalty is not a requirement for Bakalar's position in state government. State personnel laws explicitly tackle this question

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 31 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 31 of 75

and dictate that employees in Bakalar's position may engage freely in political speech and activity without repercussions to their public employment. This alone is sufficient to grant summary judgment to Bakalar on the issue of whether she is a policymaker.

### 2.    The Factors Set Forth in Fazio Weigh Heavily in Bakalar's Favor.

Alaska statutory law clearly establishes that party affiliation is not a requirement of Bakalar's position, meaning she cannot fall within the policymaker exception. *See Branti*, 445 U.S. at 518. Accordingly, the Court need not look to Bakalar's actual duties in determining whether she is a "policymaker." *Id.* However, even if state law were not dispositive of the issue, the *Fazio* factors show that Bakalar's actual job duties do not meet the requirements of the *Elrod-Branti* exception.

Under *Fazio*, the "factors to be considered when determining whether a job is a policymaking position" include "vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of the policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." 125 F.3d at 1334 n. 5. The most critical factor is influence over programs. *Walker v. City of Lakewood*, 272 F.3d 1114, 1133 (9th Cir. 2001). These factors "should not be considered in a vacuum, but rather in light of the underlying purpose of the 'policymaker' exception." *Hunt v. County of Orange*, 672 F.3d 606, 611 (9th Cir. 2012).

These factors show that Bakalar's work fell outside the *Elrod-Branti* exception. Bakalar did not have "vague or broad responsibilities." *Id.* She was assigned individual

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 32 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 32 of 75

cases and individual matters for litigation or legal analysis, and she had limited authority even over those cases. For example, she had no authority to settle them, and needed permission from supervisors to disqualify a judge or file a Rule 11 motion.[72]  Although some of her cases involved legal challenges to government programs, she did not exert any authority or influence over those government programs, which is the most critical factor in the policymaker analysis. *Walker*, 272 F.3d at 1133. Bakalar did not act as a policy adviser or formulate plans for the implementation of policy goals. *See Fazio*, 125 F.3d at 1334 n.5. Her advising of the division of elections—a nonpartisan institution—involved pure legal analysis. She stated what she thought the law was but had no role in translating her legal opinion into policy. Nor does the mere fact that she authored attorney general opinions on particular discrete matters render her a policymaker. Notably, all of those opinions, though written by Bakalar, were signed under the name of the Attorney General, who had ultimate authority over their content.[73] Defendants are plainly incorrect that Bakalar "publicly instructed the director of elections how to handle three efforts to recall elected officials."[74] Bakalar did not have the authority to "instruct" the director of elections to do anything. Instead, her advisory opinions on election matters merely analyzed pre-existing law in a neutral manner and offered recommendations—and, again, these opinions were all signed by the Attorney General. *See Op. Att'y Gen.*, 2011 WL 5848617 (Oct. 3, 2011); *Op. Att'y*

---

[72] *Bakalar Affidavit* ¶¶ 10-13.
[73] *Bakalar Affidavit* ¶ 37.
[74] Defs.' Mot. for Summ. J. 13.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 33 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 33 of 75

*Gen.*, 2013 WL 6593253, (Dec. 6, 2013); *Op. Att'y Gen.* 2014 WL 5323741 (Sept. 30, 2014).[75]

Indeed, without permission from her supervisors, Bakalar had no authority to speak in the name of policymakers on any subjects that even arguably involved partisan policymaking. Like many attorneys, she occasionally made statements to the press about the status of specific cases:

- Bakalar stated to the press, "The state is evaluating whether to appeal. The process will take weeks." ECF No. 56-2.

- Bakalar indicated to the press that, "in order to avoid a conflict or the appearance of a conflict given the administration's re-election campaign," the Attorney General had made an appeal decision without consulting with Governor Bill Walker or Lt. Gov. Byron Mallott. ECF No. 56-3.

- Bakalar stated to the press that she was "unaware of any penalties in state law for an elector who breaks his or her pledge." ECF No. 56-4.

These bland and superficial statements to the press do not demonstrate that Bakalar spoke in the name of policymakers. Bakalar, as many attorneys do, simply communicated indisputable facts about the status of her cases and her own recollection of the law.

Furthermore, like the sheriff's deputy in *DiRuzza*, whom the Ninth Circuit refused to call a policymaker on summary judgment, Bakalar's work was "limited to her prescribed… duties." *DiRuzza*, 206 F.3d at 1311. Bakalar did not "control others." She had

---

[75] *Bakalar Affidavit* ¶ 37.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 34 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 34 of 75

three levels of unelected supervisors and no subordinate staff, no power to hire or fire employees, and no power to determine employee pay.[76] In this respect, she was like the sheriff's deputy in *DiRuzza*, whose position was situated "below other categories of employees." 206 F.3d at 1311. Bakalar lacked even the authority to autonomously travel for work or order supplies.[77] Nor does the record suggest that the general public was aware of Bakalar's work for the government, despite the fact that a few partisan activists were concerned with her unrelated private blog activity. Lastly, Bakalar had no regular interaction with partisan politics or political leaders performing partisan duties.[78] As explained above, her work for the division of elections involved advising an explicitly nonpartisan division of the state government. See A.S. § 15.10.105(b). Bakalar worked on complex issues to be sure, but so does "the coach of a state university's football team." *Branti,* 445 U.S. at 518. Neither implicates the policymaking exception. *Id*. And the court need not take Bakalar's word for all of this. That the Alaska legislature decided Bakalar's position was not a policymaking one is not only legally relevant; it also indicates the limits of Bakalar's responsibilities for the *Fazio* analysis.[79]

Designating Bakalar a policymaker would subvert "the underlying purpose of the 'policymaker' exception." *Hunt*, 672 F.3d at 611. All evidence suggests that Bakalar performed her job superbly regardless of her politics.[80] She excelled under three

---

[76] *Bakalar Affidavit* ¶ 30.
[77] *Bakalar Affidavit*. ¶ 10-13.
[78] *Bakalar Affidavit*. ¶ 33.
[79] *See supra* at ¶ I.B.2.
[80] Exh. 1, Exh. 3, 38:20-24, Exh. 4.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 35 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 35 of 75

Republican governors and an Independent governor, and there is no reason to believe she would not have excelled under another Republican governor.[81] Defendants have not shown that Bakalar's job duties involve any partisan interests whatsoever. And when Defendants fail to demonstrate such job duties, summary judgment must be denied. In *Simpson v. Cty. of Contra Costa*, the Northern District of California refused to call a "Deputy District Attorney" a policymaker because "there [were] no facts in the record regarding the duties actually performed from which to determine whether political loyalty is a legitimate requirement for the job." 2013 WL 1283348, at *3 (N.D. Cal. Mar. 26, 2013). This Court should rule similarly here. Defendants have failed to show that Bakalar's political leanings were relevant to her job performance.

Defendants' cases do not show that Bakalar was a policymaker. In *Fazio*, the Ninth Circuit deemed an Assistant District Attorney to be a policymaker, but it stressed that the plaintiff "handled high profile cases with a great degree of autonomy," meaning his responsibilities were "nearly identical to those of the actual District Attorney." 125 F.3d 1328, 1334 (9th Cir. 1997). Three rungs down the authority ladder and without autonomy to select her own cases, Bakalar was no de facto Attorney General. In fact, the Ninth Circuit contrasted the plaintiff in *Fazio* with a "rank and file" attorney, implying the latter—like Bakalar—would not be a policymaker. *Id.* Moreover, Bakalar's duties do not resemble those of an assistant district attorney. For example, an assistant district attorney maintains

---

[81] Republican Sean Parnell served as governor from 2009 to 2014, and Independent Bill Walker served from 2014 to 2018.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 36 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

special discretion over criminal prosecutions, making political consistency with the district attorney crucial. *See Id.* at 1334 n.4. Bakalar's position as an assistant attorney general involved no such discretion.

*Biggs v. Best, Best & Krieger* is also unhelpful here. 189 F.3d 989. In *Biggs*, the Ninth Circuit ruled that an associate at a private law firm who participated in "strategy sessions" for "politically controversial" city matters, "worked on an ordinance that would have limited utility services to City residents," and "drafted City regulations" was a policymaker. *Id*. at 996. Bakalar, of course, did none of these things. She participated in no political strategy sessions.[82] She did not draft any regulations or legislation beyond technical drafting assignments. *Id.* In her capacity as an advisor to the state, her role was simply to apply the law to a set of facts in order to answer a legal question assigned to her by her supervisor..[83] In a nutshell, Bakalar litigated cases and wrote memos on issues of law. She is nothing like the attorney in *Biggs*. As a final note, unlike in *Biggs,* state statute here defines whether employees in Bakalar's position were free to hold private political opinions and express political views without job repercussions.[84] Under *Biggs*, this would place Bakalar outside the *Elrod-Branti* exception. 189 F.3d at 997 (indicating the focus is on the inherent duties of the position).

Defendants mistakenly rely on the Ninth Circuit's reference in *Biggs* to the Second Circuit's statement that "'[a]ll circuit court decisions—and almost all other court

---

[82] *Bakalar Affidavit*. ¶ 32.
[83] *Id.* ¶ 33.
[84] *See supra* at ¶ I.B.1.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 37 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 37 of 75

decisions—involving attorneys in government service, other than public defenders, have held that *Elrod/Branti* do not protect these positions.'" *Id.* at 995 (*quoting Gordon v. County of Rockland*, 110 F.3d 886, 890-91 (2d Cir.1997)). This quote is inapposite for several reasons. First, the Ninth Circuit did not state a rule; it presented an observation by the Second Circuit. Indeed, the court surrounded this dictum with two reiterations that an employee's status as a policymaker is dependent on specific factors that cut in Bakalar's favor for the reasons above. There is no sweeping rule that all government attorneys are policymakers. Indeed, courts continue to analyze government attorneys' policymaking status on a case-by-case basis. *See Simpson*, 2013 WL 1283348, at *3 (N.D. Cal. Mar. 26, 2013) (holding that defendants could not prevail by alleging that vague policymaking tasks are inherent to a government attorney's role). This Court should rule similarly here. Defendants have failed to show either that Bakalar made policy, or that her political leanings were relevant to her job performance. Both statutory personnel rules and Bakalar's actual job duties demonstrate that the opposite is true.

Importantly, a selection bias distinguishes the cases cited in *Biggs* and in Defendants' brief from Bakalar's case. None of those cases involved an assistant attorney general, much less one at Bakalar's level, because Governor Dunleavy is unique in having sought mass resignation of ordinary employees. And that is precisely the point; Dunleavy's targeting of Bakalar was virtually unprecedented. None of the government attorneys in Defendants' cited cases held jobs resembling Bakalar's, and none of them sat as far down the ladder of authority as Bakalar. Instead, the cited cases involved city and county

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 38 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

attorneys or others who had high levels of discretion in carrying out the prosecutorial and regulatory policies of their superiors.[85] That these cases involved attorneys in discretionary positions with political decision-making roles, unlike Bakalar, simply illustrates how unprecedented and blatantly unconstitutional Defendants' actions were here.[86]

Indeed, the Defendants are the ones presenting a radical position. Relying on loosely applicable dictum, they ask this court to announce a new rule that all government attorneys other than public defenders are policymakers, simply because they represent the government. Under Defendants' rule, attorneys fresh out of law school may be fired for their Tweets, Facebook posts, and TikTok videos, even when those expressions of speech have nothing to do with their jobs. Defendants' sweeping rule would chill the speech of young government attorneys. It would also subvert the fundamental rationale of the policymaking exception, which is to allow elected officials to ensure "effective performance of the public office involved" where "party affiliation is an appropriate requirement." *Branti*, 445 U.S. at 518. This Court should therefore reject Defendants' overly broad, sweeping rule and look at the facts of this case. Bakalar was an ordinary employee, not a policymaker.

---

[85] *See Williams v. City of River Rouge*, 909 F.2d 151, 154 (6th Cir. 1990) (city attorney's job involved "trust"-based and "confidential" relationship with new mayor); *Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir. 1981) (city attorney acted as "trusted adviser" to mayor and "draft[ed] ordinances"); *Newcomb v. Brennan*, 558 F.2d 825, 830 (7th Cir. 1977) ("The deputy city attorney of Milwaukee functions in a highly discretionary role…[M]any of the decisions that he makes will involve implementation of the policies of the city attorney's office as a whole."); *Gordon v. County of Rockland*, 110 F.3d 886, 890 (2d Cir. 1997) ("[E]ach of the three plaintiffs served as a liaison and advisor to a policymaking commission."); *Bavaro v. Pataki,* 130 F.3d 46, 51 (2d Cir. 1997) ("Associate Counsels…are expressly charged with [litigating] while taking into account…impact on public policy." (internal quotation omitted)).
[86] *Bakalar Affidavit*. ¶ 18.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 39 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

**C.     The Pickering Balancing Test Shows that Bakalar's Right to Free Speech Prevails Over the Government's Interest as an Employer.**

Defendants' termination of Bakalar for failing its loyalty test violated both her freedom of association and her freedom of speech; accordingly, the Court should apply *Pickering* to analyze whether Bakalar's discharge violated the First Amendment. *Hudson*, 403 F.3d at 698.[87] The *Pickering* balancing test weighs heavily in Bakalar's favor. Bakalar engaged in core political speech. She did so on her own time. And her speech never addressed her work activities. In contrast, Defendants have offered little more than a hypothesized and pretextual claim to workplace disruption.

The *Pickering* test used by courts in the Ninth Circuit is "a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (*citing E*ng, 552 F.3d at 1070); *see generally Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, *Will Cnty.*, Illinois, 391 U.S. 563 (1968). "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Ellins,* 710 F.3d at 1056 (*quoting Robinson*, 566 F.3d at 822).

The first *Pickering* factor is significant because speech on public issues occupies the "highest rung of the hierarchy of First Amendment values" and is entitled to special

---

[87] In cases where government retaliation involves intertwined speech and associational rights, courts may apply the *Pickering* test to both forms of protected activity under the First Amendment. *See id.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 40 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 40 of 75

protection. *NAACP v. Claiborne Hardware Co*., 458 U.S. 886 (1982) (*quoting Carey v. Brown*, 447 U.S. 455, 466 (1980)). The second factor is significant because speech that is part of an employee's official job duties is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421-23 (2006). The third is important because a First Amendment retaliation claim requires motive. *Allen v. Iranon*, 283 F.3d 1070, 1075 (9th Cir. 2002).

The *Pickering* test continues as follows: "[I]f the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.* (*quoting Robinson*, 566 F.3d at 822). The fourth step seeks "to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The fifth step, expanding on the third, ensures that the protected speech was the but-for cause of the adverse employment action. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). These factors uniformly favor Bakalar.

### 1.    Bakalar spoke on a matter of public concern.

Bakalar's political blogging clearly addressed matters of public concern. "[M]atters of public concern" include matters of political or social importance to the community.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 41 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 41 of 75

*Connick,* 461 U.S. at 147-48. In evaluating speech under the Connick framework, courts examine the content, form, and context of the speech in question. *Id.*

There is no doubt that Bakalar spoke on a matter of public concern, and Defendants have not challenged this factor. For example, Bakalar's blog posts and social media comments often discussed former President Donald Trump. It goes without saying that the elected leader of the country is a person of public concern. Regardless, the Supreme Court has specifically held that statements "addressing the policies of the President's administration" address matters of public concern. *Rankin v. McPherson*, 483 U.S. 378, 386 (1987).

The potentially controversial nature of Bakalar's statements, and the colorful language she used, is irrelevant to whether her blog addressed topics of public concern. *See id.* at 387 (comment about killing the President addressed matters of public concern); *Sullivan*, 376 U.S. at 270 ("[D]ebate on public issues should be uninhibited, robust, and wide-open, and . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.").

### 2. Bakalar spoke as a private citizen.

Bakalar's social media accounts and blog featured only her personal speech as a private citizen. Bakalar's blog never addressed her work for the state of Alaska, let alone criticized her department or superiors.[88] An outside attorney, William Evans, who was

---

[88] *Bakalar Affidavit.* ¶ 18.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 42 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

hired to investigate Bakalar, concluded the same.[89] In this respect, Bakalar is like the plaintiff in *Pickering*, who succeeded partially because her statements were "in no way directed towards any person with whom appellant would normally be in contact." 391 U.S. at 569-70.

### 3. Bakalar's protected activity was a substantial motivating factor for defendants' adverse action.

Defendants terminated Bakalar because of her political views as expressed in her blog.

A plaintiff may offer either direct or circumstantial evidence to "to show that [her] constitutionally protected speech was a motivating factor in [the state]'s adverse employment action." *Marable v. Nitchman*, 511 F.3d 924, 930, n.10 (9th Cir. 2007); *see also Ulrich*, 308 F.3d at 980; Allen, 283 F.3d at 1075. The plaintiff must first demonstrate that the defendant knew of her protected speech. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 928 (9th Cir. 2004); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750-52 (9th Cir. 2001). Once the plaintiff establishes the defendant's knowledge, she may circumstantially establish a retaliatory motive by showing: "(1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual." *Allen*, 283 F.3d at 1077. "There is no set time beyond which acts cannot support an inference of retaliation, and there is no

---

[89] Exh. 20.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 43 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 43 of 75

set time within which acts necessarily support an inference of retaliation." *Coszalter*, 320 F.3d at 978. Instead, the court must consider suspicious timing alongside the circumstance of the case. *Id.* Bakalar can show that defendants knew of her protected speech and establish a retaliatory motive using any of the three available methods.[90] Here, all three methods lead to the same conclusion: Bakalar was terminated for the political beliefs expressed in her blog.

Babcock knew about Bakalar's speech. Stroup complained specifically to his office about it.[91] Furthermore, the Court cannot accept as coincidence that Bakalar and Botstein are both (a) two lawyers who were removed from the Department of Law following Governor Dunleavy's inauguration, and (b) two lawyers who criticized President Trump. There is no explanation for why Defendants would have terminated these particular individuals unless they were aware of their speech.

Bakalar has also established a retaliatory motive. Defendants terminated Bakalar suspiciously quickly. Bakalar was terminated at 12:18 PM on December 3, 2018, which is less than twenty minutes after Dunleavy was inaugurated as governor.[92] Bakalar was then given less than two hours to clean out her office and leave the building.[93] This was not enough time for Defendants to terminate Bakalar for work-related reasons. They terminated her at the first available opportunity. This supports an inference that Defendants

---

[90] It is unclear whether defendants challenge whether Bakalar can make these showings. Insofar as they argue Babcock was justified in terminating Bakalar for her speech, *see* Defs. Mot. for Summ. J. 15, their argument assumes she was, in fact, terminated for her speech.
[91] Exh. 15.
[92] *Bakalar Affidavit*. ¶ 20.
[93] *Bakalar Affidavit*. ¶ 21.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 44 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 44 of 75

were aware of her speech and that her speech motivated them to retaliate. *See Coszalter,* 320 F.3d at 977 ("[T]hree to eight months is easily within a time range that can support an inference of retaliation.").

Second, Babcock expressed firm opposition to those who disagreed with the Governor's politics. Babcock said to those who would not "express a positive desire" to work for Dunleavy's "agenda" that "you've let us know you just wish to be terminated."[94] Thus, Babcock admitted he was willing to retaliate against employees for their protected political speech and association. *Schwartzman v. Valenzuela* is a similar case. 846 F.2d 1209 (9th Cir. 1988). There, the Ninth Circuit found that an employer's "expressed opposition" supported an inference of retaliation when an employee received a similar notice "warning him that he was not authorized to speak out" against that employer. *Id.* at 1212; *see also, Allen v. Scribner*, 812 F.2d 426, 435 (9th Cir. 1987). In both cases, the employer's warning, coupled with the plaintiff's controversial speech, revealed a retaliatory motive in the employee's termination. This retaliatory inference is supplemented by Babcock's known history of disdaining Democrats and attempting to remove moderate Republicans from office.[95]

Third, Babcock's claim that he dismissed Bakalar because of the tone of her resignation letter is clearly pretextual.[96] Bakalar's letter followed the template suggested

---

[94] Exh. 38.
[95] Exhs. 23-26.
[96] Even assuming, however, that Babcock's proffered motive was not pretextual, and that Bakalar was in fact terminated because the "tone" of her resignation letter somehow failed Defendants' loyalty test, Bakalar's termination remains unconstitutional as a direct result of Defendants' unlawful patronage scheme, which in and of itself violated her right to freely associate.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 45 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

by her supervisor.[97] It was also similar to the letters of Bakalar's coworkers who were not fired.[98] For example, one attorney in the Special Litigation Section wrote, "I do not do this voluntarily, but rather, because I understand that if I do not submit my resignation as requested my employment will be terminated."[99] Another Assistant Attorney General, wrote to Joanne Grace with questions including, "What are the criteria that will be used to evaluate the resignation requests. Everything from press publications informs her this is a political or loyalty litmus test. Is that in error?"[100] In *Coszalter,* the Ninth Circuit found evidence of pretext when there was a "lack of clarity and even-handedness" in an employer's punishment of different employees, and the employer's punitive "policy tended to change from one to the other." 320 F.3d at 978. The inconsistency of Babcock's reactions begets the same conclusion here, especially because the one characteristic unifying the two employees who were terminated—Bakalar and Botstein—is that both criticized former President Trump.

Defendants' brief curiously omits Babcock's initial justification for Bakalar's termination, instead focusing on the "puerility" of Bakalar's blog posts. Such a change in tune would be unnecessary had Babcock's initial explanation been honest. *See Ulrich*, 308 F.3d at 981 (employer's stated reason for terminating employee was inconsistent). Given

---

[97] Exh. 29.
[98] Exhs. 34 & 35.
[99] Exh. 36.
[100] Exh. 37.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 46 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 46 of 75

the above analysis, there is no doubt that Babcock terminated Bakalar to retaliate against her for her political speech.

### 4. Defendants had no justification for terminating Bakalar.

Bakalar has established a prima facie case for retaliation, and Defendants cannot demonstrate that "legitimate administrative interests outweigh the employee's First Amendment rights." *Id.* These interests include promoting efficiency and integrity in the discharge of official duties and maintaining discipline in public service. *Connick*, 461 U.S. at 150-51. "Cases that analyze whether the government's administrative interests outweighed the plaintiff's right to engage in protected speech examine disruption resulting both from the act of speaking and from the content of the speech." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1107 (9th Cir. 2011). Here, defendants have not shown that Bakalar caused any disruption to her workplace or her performance, let alone one sufficient to outweigh her First Amendment rights.

First, Bakalar did not speak in an inherently disruptive "manner, time, [or] place." *Connick*, 461 U.S. at 152. In Connick, the Supreme Court explicitly contrasted disruptive speech occurring in the workplace with that in Pickering, which was more deeply protected because it did not occur in the workplace. *Id.* at 153; s*ee also Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n.4 (1979) ("Private expression, however, may in some situations bring additional factors to the *Pickering* calculus."). None of Bakalar's speech took place in or around her workplace, and speech made in her own private time deserves the utmost protection. *See Connick*, 461 U.S. at 152.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 47 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 47 of 75

Second, Bakalar's speech did not impede her ability to perform her job. *See Connick*, 461 U.S. at 151. Bakalar was terminated in December 2018, yet she had been blogging since 2014 with no resulting disruption to her work.[101] Both her supervisor and a third-party investigation determined that her blogging activity did not interfere with her work.[102] Defendants' rank speculation that Bakalar's blog could have hurt her relationship with her co-workers or the judiciary is completely belied by the fact that the vast majority of the complained-of speech had been sitting on her blog for months without causing disruption. Defendants have pointed to no actual work disruptions throughout Bakalar's years of blogging. Importantly, too, the Department of Law did not have any employee policy about political or personal social media usage, meaning Bakalar did not breach any rules.[103] *See Mt. Healthy*, 429 U.S. at 284 ("There is no suggestion by the Board that Doyle violated any established policy."). Defendants have not met their burden of putting forth any evidence to show that Bakalar's speech prevented her from performing her job. *See Alaska v. Haley*, 687 P.2d 305, 314 (Alaska 1984) (employee's free-speech interests prevailed where employee's "statements did not concern areas in which she performed research, and her work was uniformly rated as outstanding").

Bakalar's speech did not interfere with her working relationships. To prove that Bakalar's speech interfered with working relationships, Defendants must demonstrate "actual, material and substantial disruption, or reasonable predictions of disruption in the

---

[101] *Bakalar Affidavit*, ¶ 37.
[102] Exh. 20.
[103] Exh. 3, 79:20-81:17.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 48 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

workplace." *Robinson*, 566 F.3d at 824 (internal quotation marks omitted). In *Connick*, the Supreme Court found that a public employee's speech was disruptive specifically because it "caus[ed] a mini-insurrection" and was "an act of insubordination which interfered with working relationships." 461 U.S. at 151. Defendants, again, cite no evidence to support a similar finding. Instead, the record displays only positive relationships between Bakalar and her coworkers. The "evidence does not include a showing that [plaintiff's] statements had any actual effect on her working relationship." *Haley*, 687 P.2d at 314; *see also Rankin*, 483 U.S. at 389 ("[T]here is no evidence that [plaintiff] interfered with the efficient functioning of the office.").

Defendants' other arguments to the contrary are unconvincing. They use *Haley*, a case much like this one, to articulate six sub-factors related to this step of the Pickering analysis.[104] The factors concern the impact of an employee's speech on her professional relationships (factors 1-3) and her office's work (factors 4-6):

> (1) maintenance of discipline by immediate superiors; (2) preservation of harmony among co-workers; (3) maintenance of personal loyalty and confidence when necessary to the proper functioning of a close working relationship; (4) maintenance of the employee's proper performance of daily duties; (5) public impact of the statement; (6) impact of the statement on the operation of the governmental entity.

*Haley*, 687 P.2d at 311 (Alaska 1984). These factors unanimously favor Bakalar for the reasons above: Bakalar's relationships with superiors and co-workers never suffered as a

---

[104] Defendants omit the seventh factor given in *Haley*—whether the employee addressed a topic of public concern—presumably because it undoubtedly favors Bakalar. 687 P.2d at 311.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 49 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 49 of 75

result of her speech (factors 1-3), and neither did her work or that of her department (factors 4-6).

Defendants further argue that "Bakalar made public comments about judges," stating that this would "impede" her cases. On this point, they cite a single post commenting on the confirmation of Justice Kavanaugh the United States Supreme Court. Bakalar's post about Justice Kavanaugh's confirmation hardly reveals bias about the judiciary writ large. It goes without saying that Justice Kavanaugh's appointment was a politically charged event that garnered commentary from lawyers throughout the country. There is no evidence that Bakalar's post offended any judges, or even that any judges read it. Moreover, there is virtually no chance that Justice Kavanaugh read Bakalar's post or that he will ever read it in the future.

The complete lack of evidence supporting Defendants' theory of workplace disruption, coupled with the context of Bakalar's termination and Defendants' shifting justifications, shows that Defendants' complaints about disruption are nothing more than a pretext. And for purposes of the *Pickering* analysis, Defendants' interests cannot be founded on pretext. *Robinson*, 566 F.3d at 825-26. For example, in *Robinson*, the Ninth Circuit held that there were genuine issues of fact whether the defendants had actually disciplined an employee due to concerns of workplace disruption. Id. at 825. The Ninth Circuit explained that if a factfinder determined that concerns over "disruption" were a pretext, the employee's "speech interests would outweigh Defendants' interest in avoiding workplace disruption." *Id.*, *accord Miller v. City of Canton*, 319 F. App'x 411, 421 (6th

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 50 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 50 of 75

Cir. 2009) (claims of disruption that are pretextual or not genuinely held are entitled to no weight in the *Pickering* analysis.); *Harnishfeger v. United Sta*tes, 943 F.3d 1105, 1118-19 (7th Cir. 2019) (same).

Here, there can be no genuine dispute that Defendants' claim—that Bakalar was terminated because of fears of workplace disruption—is a pretext. First, Babcock stated that Bakalar was terminated because of the "tone" of her resignation letter, not because of disruption in the workplace. Of course, this, too, was a pretext, but Defendants have pointed to zero evidence in the record suggesting that concerns over efficiency or workplace disruption were the actual—or even the initially made up—reasons behind Bakalar's discharge. Defendants terminated Bakalar as part of their mass-resignation scheme and loyalty test—a scheme clearly designed to weed out perceived political disloyalty. Defendants' loyalty test reveals their true motives. Finally, the other attorney terminated as a result of this patronage scheme had only made a few tweets criticizing President Trump, and yet Defendants terminated her anyway, demonstrating that the true reason for the termination was political disloyalty rather than disruption in the workplace.[105] Thus, Bakalar was not terminated because of concerns over workplace disruption or for any particular blog post. She was terminated simply because Defendants disagreed with her politics as expressed in her blog. As a result, Defendants could not cite workplace disruption to argue that its interests outweighed Bakalar's right to free speech and association, even if they had a plausible argument. *See id.* at 825-26. And they don't.

---

[105] Exh. 38.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 51 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 51 of 75

Bakalar's First Amendment rights far outweigh Defendants' pretextual justifications for her termination.

> **5.** **Defendants would not have terminated Bakalar absent her protected speech.**

A defendant may finally avoid liability by showing that the employee's protected speech was not a but-for cause of its adverse employment action. *Mt. Healthy*, 429 U.S. at 287; *Eng*, 552 F.3d at 1072. Defendants cannot make that showing here.

According to the Ninth Circuit, this question relates to, but is distinct from, the plaintiff's burden of showing that the protected conduct was a substantial or motivating factor in her adverse employment action (the third Pickering factor). It is a question of fact, *Robinson*, 566 F.3d at 824, addressing whether the state "would have taken the adverse action if [a] proper reason alone had existed," *Eng*, 552 F.3d at 1072 (*quoting Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)); *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996); *Coszalter*, 320 F.3d at 978.

As shown above, Bakalar would not have been terminated absent her protected speech. This is demonstrated by the suspicious timing, the loyalty test and mass-resignation scheme, Babcock's known distaste for Democrats, the utter insufficiency of the Defendants' explanations for Bakalar's firing, and the parallel termination of Botstein. Defendants, meanwhile, do not argue that Bakalar's termination emerged from events other than her speech, thereby failing to meet the burden placed on them by this fifth factor.

In sum, the *Pickering* analysis strongly favors Bakalar at every step, and Bakalar is entitled to summary judgment on her hybrid speech-associational claim.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 52 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 52 of 75

**D.  Babcock and Governor Dunleavy Are Not Entitled to Qualified Immunity for Bakalar's § 1983 Claim.**

Babcock and Governor Dunleavy are not entitled to qualified immunity with regard to their scheme to extort loyalty oaths from partially exempt state employees. Nor are they entitled to qualified immunity with respect to their decision to terminate Bakalar because of her political speech.

"As a general rule, an official is entitled to qualified immunity from damages if his conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alexander v. Perrill*, 916 F.2d 1392, 1396 (9th Cir. 1990) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If "the allegations, viewed in light most favorable to the plaintiff, indicate adequate justification, qualified immunity should be granted." *Id.* at 1072.

Because Babcock and Governor Dunleavy engaged in two separate but related unconstitutional acts—the first being the mass-resignation and loyalty-pledge demand, and the second being its decision to discharge Bakalar for her political speech—each qualified immunity issue must be addressed separately.

First, Babcock and Governor Dunleavy's mass-resignation scheme and demand for a loyalty pledge from thousands of non-policymaking employees violated Bakalar's clearly established right to freedom of association. As explained in detail above, the Supreme Court has stated, and it is therefore clearly established, that demands for loyalty pledges

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 53 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

from non-policymaking employees are unconstitutional. *Elrod*, 427 U.S. at 355. Babcock and Governor Dunleavy's request for mass resignations from employees, subject to the Governor's acceptance or refusal to accept the resignation, is even more egregious than the hiring freeze in *Rutan*, 497 U.S. 62. Although "[c]losely analogous pre-existing case law is not required to show that the law is clearly established," *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994), as amended (May 31, 1994), here, *Rutan* and *Elrod* are closely analogous.

Bakalar also was not a policymaker under clearly established law. It was clearly established that the policymaker status applies only to public officials for whom "party affiliation is an appropriate requirement for the effective performance" of the job. *Branti*, 445 U.S. at 518. It was also clearly established that, in evaluating whether an employee is a policymaker, courts first look to state law to determine whether political loyalty is an appropriate requirement for the position. *Id*.; *Curtis*, 963 F.3d at 786; *Rose*, 291 F.3d at 924; *DiRuzza*, 206 F.3d at 1309; *Jenkins*, 119 F.3d at 1163. And Alaska state law, through explicit personnel rules, clearly establishes that political affiliation is not an appropriate qualification for Bakalar's job.[106]

Even if that were not enough, Bakalar's actual job duties fall outside the policymaking exception under well-established law. For purposes of deciding whether to grant Defendants' summary judgment, the court must assume Bakalar's job duties were as she describes them. *Eng*, 552 F.3d at 1071-72. Bakalar simply litigated cases (which were

---

[106] *See supra* at ¶ I.B.1.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 54 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 54 of 75

supervised and which she had no authority to settle) and applied pre-existing law to analyze legal questions assigned to her by her superiors.[107] Defendants have not pointed to a single, particular aspect of Bakalar's actual work that would have rendered political loyalty an appropriate requirement, instead relying on vague generalizations about her work with the nonpartisan division of elections. Defendants assert that state law required political neutrality in her role as an advisor to this division, but the state law specific to Bakalar's position directly undercuts this claim. See A.S. §§ 39.25.010, 39.25.100, 39.25.110, 39.25.120. Moreover, Defendants' mass-resignation and loyalty-pledge scheme did not demand political neutrality—it demanded political loyalty, and the focus of the policymaker exception is whether political loyalty was an appropriate requirement for the position. Both state law and Bakalar's actual duties demonstrate that it was not. Accordingly, Babcock and Governor Dunleavy are not entitled to qualified immunity on Bakalar's freedom-of-association claim.

Moreover, the court must look to Defendants' conduct as a whole, and "the qualified immunity analysis should not occur in a vacuum, processing facts wrenched from their proper context." *Rigg v. California*, 32 F. App'x 398, 401 (9th Cir. 2002). The conduct of the Defendants clearly violated constitutional rights—even assuming arguendo that it was not clearly established that Bakalar fell outside the *Elrod-Branti* exception. Qualified immunity "focuses on the objective legal reasonableness of an official's acts and not on whether the plaintiff may or may not recover for the alleged illegalities." *Eng*, 552 F.3d at

---

[107] *Bakalar Affidavit*, ¶¶ 10-13.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 55 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 55 of 75

1068 (emphasis in original). "[T]he appropriate focus in a qualified immunity analysis is the legality of the conduct of the public official, not... his liability to the ultimate plaintiff." *Id.* (*quoting Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 499 (7th Cir.1993)). "According to the policies underlying qualified immunity, '[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate,' regardless whether 'the person who suffers injury caused by such conduct may have a cause of action.' " *Id.* (*quoting Harlow*, 457 U.S. at 821, and *Triad Assocs.*, 10 F.3d at 500). Any reasonable official in Babcock and Governor Dunleavy's position would have known a demand for mass resignations and loyalty pledges from such a broad swath of state employees violated those employees' constitutional rights. Although Defendants argue that Bakalar fell within the policymaker exception, Defendants' conduct was not targeted solely at Bakalar. Defendants demanded loyalty pledges and resignations from thousands of employees, including many who could not even arguably be considered policymakers under any factual circumstances, like medical doctors, pharmacists, and petroleum geologists. This conduct was patently unconstitutional under clearly established law—regardless of whether terminating Bakalar in particular was unconstitutional under clearly established law (which it was). Since Defendants' conduct is the focus of the qualified-immunity analysis, *Eng*, 552 F.3d at 1068, they are not entitled to qualified immunity for their patronage scheme.

Defendants are not entitled to qualified immunity for their free-speech retaliation any more than they are entitled to qualified immunity for their patronage scheme. Aside

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 56 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 56 of 75

from arguing that Bakalar was a policymaker, Defendants make no qualified-immunity arguments particular to Bakalar, instead claiming that employee free-speech claims rarely survive qualified immunity because of the fact-intensive nature of the *Pickering* inquiry. But this observational dictum does not hold up: the Ninth Circuit has upheld the denial of qualified immunity in employee free-speech cases on multiple occasions. *See, e.g., Clairmont*, 632 F.3d 1091; *Robinson*, 566 F.3d at 825-26; Eng, 552 F.3d at 1076. Defendants have also waived any *Pickering*-based arguments with regard to Bakalar's First Amendment claim, instead focusing on the policymaker exception and addressing *Pickering* only as it applies to her Alaska free-speech claim. *See Eng*, 552 F.3d at 1076 n.6 (refusing to consider qualified-immunity argument based on fact-intensive *Pickering* balancing where Defendants had waived it).

Even generously mapping Defendants' state-constitutional arguments onto Bakalar's First Amendment claim, Defendants' qualified immunity argument fails. "[I]t was clearly established by 2005 that for a government employer's legitimate administrative interests to outweigh an employee's right to engage in protected speech, the disruption had to be 'real, not imagined.'" *Clairmont*, 632 F.3d at 1110. Defendants' arguments all rest on the theory that Bakalar's speech could have eventually disrupted harmony among coworkers or Bakalar's ability to argue cases in front of Justice Kavanaugh. Defendants have pointed to no evidence that either of these things were reasonably likely to happen. It has presented no evidence that either Bakalar's coworkers or Justice Kavanaugh read her blog. It has presented no evidence that her blog upset any of her coworkers or affected her

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 57 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

credibility before any members of the judiciary. And it has pointed to no evidence that any judges or any of Bakalar's coworkers or supervisors ever complained about her blog interfering with her work. To the contrary, an investigation conducted by the State of Alaska noted that her blogging activities had not interfered with her work.[108] "It was clearly established at the relevant time that [Defendants'] proffered evidence of disruption in the workplace was woefully insufficient." *Id.* Lastly, Defendants have offered no evidence that concerns over disruption in the workplace actually led to Bakalar's discharge. It was "clearly established… that this exception cannot serve as a 'pretext.'" *Robinson*, 566 F.3d at 826. Defendants cannot rely on such pretextual justifications to obtain qualified immunity.

## II. Defendants Violated Alaska's Constitutional Merit Principle and Its Implementing Legislation, the Personnel Act.

Defendants also violated Alaska's constitutional merit principle and the Personnel Act. Together, these laws protect the professional and merit-based character of Alaska's public workforce. They reject in the strongest possible terms the spoils systems and political patronage regimes that had come to dominate elsewhere in the country. Defendants' unprecedented demand for political loyalty ran roughshod over Alaska's cherished merit principles.

The Alaska Constitution requires the legislature to "establish a system under which the merit principle will govern the employment of persons by the State." Alaska Const.

---

[108] Exh. 20.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 58 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

art. XII, Sec. 6. According to the State's Division of Personnel, this "merit principle is the foundation on which our personnel administration system is built."[109] This provision constitutionally mandates the use of the merit principle in state employment. *Alaska Pub. Emps. Ass'n*, 831 P.2d at 1249.

"Generally defined, the merit principle requires the recruitment, selection, and advancement of public employees under conditions of political neutrality, equal opportunity, and competition on the basis of merit and competence." *Id.* (citation and quotations omitted). The drafters of the Alaska Constitution designed the merit principle primarily to prevent state employees from being hired or fired based on their political views or affiliations. Delegate Sundborg said during the development of the Alaska Constitution that "I don't think anybody is, in principle, opposed to the merit system.… It is a system by which persons who are to be employed by the state are employed on the basis of their ability rather than… how they voted in a recent election." 4 Proceedings of the Alaska Constitutional Convention (PACC) 2887 (Jan. 23, 1956. And delegate Nordale similarly opined that "we do not believe in a spoils system," in which a political party could give public offices to its supporters. *Id.*

Thus, the merit principle's "primary" goal is "shielding state workers and jobs from political influence" and "the evils of the spoils system." *Moore v. State, Dep't of Transp. & Pub. Facilities*, 875 P.2d 765, 771-72 (Alaska 1994). Though the state may "eliminate

---

[109] Exh. 39.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 59 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

positions and order layoffs for reasons of efficiency and economy," it may only do so "provided that [its] decisions are not politically motivated." *Id.* at 770.

The Personnel Act gave statutory form to the merit principle. The Alaska legislature "adopted the Personnel Act for the express purpose of implementing the constitutionally mandated merit principle in state employment." *Alaska Pub. Emps. Ass'n*, 831 P.2d at 1249. "Clearly recognizing the complexity of its task, [the Alaska] legislature also provided a detailed definition for the merit principle." Id.

The merit principle includes the following:

(1) recruiting, selecting, and advancing employees on the basis of their relative ability…

(4) equal treatment of applicants and employees with regard only to consideration within the merit principles of employment; and

(5) selection and retention of an employee's position secure from political influence.

A.S. § 39.25.010(b). The Personnel Act also grants state employees specific "political rights," stating that "a state employee may," among other things, "take part in a political campaign" and "express political opinions." A.S. § 39.25.178.

The Alaska Legislature exempted certain employees from the Act, including, for example, elected officials, employees of the state legislature, the heads of the departments of the executive branch, and employees working in the governor's office. A.S. § 39.25.110. Bakalar, however, falls under another group of employees who are "partially exempt." A.S. § 39.25.120. These employees are only exempt from particular personnel rules not pertinent here. A.S. § 39.25.120(b). Accordingly, the merit principle, as

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.,* Case No. 3:19-cv-00025
Page 60 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 60 of 75

embodied in the Personnel Act, applies in full force to Bakalar and other partially exempt employees.

Governor Dunleavy's decision to request resignations and pledges of loyalty from such a huge number of state employees was obviously politically motivated. According to his own chief of staff, the purpose was to root out employees who might not want "to work in the administration" because they disagreed with his "agenda."[110]Although these employees were described as "at will" and "appointment-based,"[111]that was false. The request for resignations went to the entire segment of partially exempt employees.[112] Like Bakalar, these were employees who are not appointed, who are not exempt from the merit principle, and to whom the Personnel Act gives an affirmative right to political expression.

Bakalar's expression of her opinions is exactly the kind of behavior protected by the Personnel Act. Babcock's decision to terminate Bakalar without reference to her ability is exactly the kind of behavior prohibited by the Alaska Constitution and the Personnel Act.

As argued above, Defendants terminated Bakalar because of her political views and expression. Would Bakalar have been terminated had a different governor been elected, or had Babcock never required a pledge of allegiance to Governor Dunleavy? Because the answer is plainly no, Bakalar was not retained "secure from political influence." A.S. § 39.25.010(b)(5). The merit principle prohibits Defendants' actions.

---

[110] Exh. 28.
[111] *Id.*
[112] *Id.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 61 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

## III.     Defendants Violated Alaska's Free-Speech Clause.

Defendants also violated the Alaska Constitution's free-speech clause. Several decades of precedent in Alaska reveal an undeniable trend: the Alaska Supreme Court has consistently interpreted the Alaska Constitution to offer broader free-speech protections than the First Amendment. Accordingly, Bakalar's claims for infringement on her right to free speech and association under the Alaska Constitution are at least as strong as, if not stronger than, her federal claims.

This Court cannot simply look to federal First Amendment jurisprudence when interpreting Alaska's free-speech clause. Both the plain language of the clause and Alaska precedent show that the clause offers broader protections than the Federal Constitution. Alaska's Supreme Court has reiterated that it is "not bound in expounding the Alaska Constitution's Declaration of Rights by the decisions of the United States Supreme Court, past or future, which expound identical or closely similar provisions of the United States Constitution.'" *Baker v. City of Fairbanks*, 471 P.2d 386, 402 n.26 (Alaska 1970) (quoting *Roberts v. State*, 458 P.2d 340, 342 (Alaska 1969)); *see also Breese v. Smith*, 501 P.2d 159, 167 (Alaska 1972) ("[T]his court is not obliged to interpret our constitution in the same manner as the Supreme Court of the United States has construed parallel provisions of the federal Constitution."). Instead, as a general rule, "Alaska's constitution is more protective of rights and liberties than is the United States Constitution." *Green Party of Alaska*, 118

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 62 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 62 of 75

P.3d at 1060.[113] The Alaska Supreme Court has interpreted the state constitution to offer broader protections than federal law—even when the language of the Alaska Constitution is identical to its federal counterpart, which is not the case here. *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1234 (Alaska 2003). "Alaska's constitutional heritage may require individual protections over and above federal guarantees…." *Club SinRock, LLC v. Municipality of Anchorage, Off. of the Mun. Clerk*, 445 P.3d 1031, 1037 (Alaska 2019). The Alaska Supreme Court has proudly declared:

> [W]e are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution if we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage.

*Baker*, 471 P.2d at 402.

The Alaska Supreme Court has held that Alaska's free-speech clause is "more protective of employee speech than is federal law." *Alaskans for a Common Language, Inc.*, 170 P.3d at 203. The plain language of the clause is more explicit, more direct, and broader than the First Amendment. *Messerli v. State*, 626 P.2d 81, 83 (Alaska 1980). Article I, section 5 of the Alaska Constitution provides: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." This language protects free speech "in a more explicit and direct manner" than the First

---

[113] *See also, e.g.*, *Malabed v. N. Slope Borough*, 70 P.3d 416, 420 (Alaska 2003) ("[T]he Alaska Constitution's equal protection clause affords greater protection to individual rights than the United States Constitution's…."); *State v. Jones*, 706 P.2d 317, 324 (Alaska 1985) (holding that Alaska Constitution's prohibition on unreasonable search and seizures more expansively than federal prohibition); *State v. Browder*, 486 P.2d 925, 935-36 (Alaska 1971) (holding Alaska's constitution offers stronger jury-trial protections than the federal constitution).

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 63 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Amendment. Messerli, 626 P.2d at 83. Unlike the federal Constitution, it explicitly covers verbal, written, and published speech "on all subjects." Alaska Const. art. I, § 5 (emphasis added). It also directly provides a right to free speech for "[e]very person," without exception. *Id*. The only limitation is "the abuse of that right." *Id*. Given the express sweeping language of this provision, which is "not found in the United States Constitution… it can only be concluded that the right is broader in scope than that of the Federal Constitution." *Ravin v. State*, 537 P.2d 494, 515 (Alaska 1975) (Boochever, J., concurring); accord *Anchorage Police Dep't Emps. Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 550 (Alaska 2001).

When given the opportunity to diverge from federal law, the Alaska Supreme Court has repeatedly chosen to adopt a more expansive interpretation of Alaska's free-speech clause. For example, with regard to employee speech, it protects speech on a "wide[r] range of subjects," such that "there may be instances where [the Alaska Supreme Court] would find that certain speech addressed a matter of public concern and was protected under Alaska's Constitution even though a federal claim might yield a contrary result." *Wickwire*, 725 P.2d at 703. Moreover, unlike the First Amendment, Alaska's free speech clause protects employee speech related to internal policies, including speech "by an employee as an employee," and "does not recognize a strict division between the speaker as citizen and as employee." *Alaskans for a Common Language*, 170 P.3d at 204.

Defendants urge this Court to treat Bakalar's free-speech claims under the Alaska Constitution as coextensive with the claims under the U.S. Constitution, but the analysis is

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 64 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 64 of 75

not the same. Most importantly here, in determining whether an employee's free-speech rights under the Alaska Constitution have been infringed, the Alaska Supreme Court considers an employee's policymaker designation "of minimal value in its own right, but instead only one of the factors to be considered." *Swanner*, 649 P.2d at 945.

Defendants' characterization of *Swanner's* policymaker analysis as "dicta" defies reality. Def's. Mot. for Summ. J. 14-15. The employer in *Swanner* argued that the plaintiff was a policymaker. 649 P.2d at 944. The Alaska Supreme Court directly addressed the policymaker issue. Id. at 944-45. "This holding was not dicta but rather was necessary to address defendant's argument…." *United States v. Spivey*, 781 F. Supp. 676, 680 (D. Haw. 1991), aff'd, 980 F.2d 740 (9th Cir. 1992). The fact that the Alaska Supreme Court found *Swanner's* policymaker status indeterminate does not render its statements of law any less precedential. And, the Alaska Supreme Court's holding accords with the plain language of the Alaska Constitution, which protects the free-speech rights of "every person" without exception, unless the right is "abuse[d]," leaving no room for a threshold policymaker exception. And, in case that weren't enough, the Alaska Supreme Court later reiterated that free-speech claims under the Alaska Constitution "should be analyzed under the Pickering balancing test as interpreted by *Swanner*." *Haley*, 687 P.2d at 312.

The Alaska Constitution's free-speech clause also includes the right to freedom of association. "[F]reedom of speech and association are integrally related rights which both derive from the First Amendment. Exercise of one of these rights almost invariably implicates the other for each is a means toward accomplishment of the other." *Alaska Gay*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 65 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 65 of 75

*Coal. v. Sullivan*, 578 P.2d 951, 954 (Alaska 1978). As such, "Article I, section 5 of the Alaska Constitution 'guarantees the rights of people, and political parties, to associate together to achieve their political goals.'" *State v. Galvin*, -- P.3d --, No. S-17887, 2021 WL 2879321, at *7 (Alaska July 9, 2021) (*quoting State v. Alaska Democratic Party*, 426 P.3d 901, 906 (Alaska 2018) (emphasis in original)). The Alaska Constitution is at least as protective of the right to free association as the United States Constitution, if not more. *State, Div. of Elections v. Green Party of Alaska*, 118 P.3d 1054, 1060 (Alaska 2005).

In view of these principles, Bakalar has proven that Defendants violated the free-speech and freedom-of-association principles of the Alaska Constitution.

First, with regard to Bakalar's free-association claim under Alaska's free-speech clause, Bakalar's policymaker status is only one factor to be considered in determining whether the government's interests as an employer outweigh her right to freely associate with her chosen political party. *Cf. Swanner*, 649 P.2d at 945. A threshold policymaker exception cannot be squared with the Alaska Constitution. The Alaska Constitution must be interpreted as a whole, and the freedom-of-association principles implicit in Alaska's free-speech clause "draw[] added strength" from the constitutional merit principle embodied in article XII section 6, which constitutionally entitles certain state employees to maintain their jobs free from political influence. *Anchorage Police Dep't Emps. Ass'n*, 24 P.3d at 550. Adding a threshold policymaker exception would create a constitutional inconsistency. And without such an exception, Defendants cannot prevail. For much the

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 66 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 66 of 75

same reasons, the Alaska Constitution, read as a whole, prohibits "[c]onditioning public employment on the provision of support for the favored political party" even more emphatically than the U.S. Constitution. *Rutan*, 497 U.S. at 69 (citation and quotations omitted). Any argument that Defendants had a legitimate interest in demanding political loyalty from Bakalar is completely undermined not only by Alaska law, but also by the record. Bakalar, a registered undeclared voter, excelled under a Republican governor and an Independent governor, and her liberal political beliefs never affected her job performance.

As for Bakalar's free-speech claim, policymaker status notwithstanding, under Alaska law the ultimate inquiry is whether the employer has met its burden of demonstrating that "the exercise of the employee's rights substantially and materially interfered with the discharge of [her] duties and responsibilities" and that "the prevention of the disruption outweighed the employee's interest in commenting on, and the public's right to be informed about, matters of public concern." *Haley*, 687 P.2d at 312 (*quoting Swanner*, 649 P.2d at 944). Defendants have not carried their burden. Bakalar spoke on matters of great importance to the general public. She did so through her private blog on her own time. She blogged for four years while working for the Department of Law, and yet Defendants do not point to even a shred of evidence that her blog interfered with her work or her working relationships during that time. As explained above, Bakalar excelled at her job, and Defendants have not made any showing that her speech caused an actual or

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 67 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 67 of 75

even a potential disruption to her or anyone else's job duties.[114] Again, Defendants' concerns about disruption, developed in the course of this litigation, are a mere pretext. Moreover, even assuming arguendo that Bakalar's job duties involved some small amount of policymaking (which they did not), those policymaking duties were minimal in scope. Since Bakalar's blogging never interfered with her job, never caused a disruption, and concerned matters of national importance unrelated to her job, her strong free-speech interests outweigh any minimal interest the government had in regulating her speech.

Bakalar's case mirrors that of the employee in *Haley*. There, as here, the employer argued that the employee's published political speech interfered with her ability to perform her work in a "nonpartisan position." *Haley*, 687 P.2d at 312-13. The Alaska Supreme Court rejected this argument, agreeing with the lower court that it was unrealistic to expect employees, "even in a nonpartisan position, not to have personal views on matters of public interest." *Id.* at 313. This was particularly true because (1) there was no showing of "actual" disruption or disharmony among coworkers, (2) the employee's statements did not concern areas related to her job, (3) the employee had outstanding performance, and (4) "no particular bias had ever been noted" in the employee's work. *Id*. at 314. The same analysis applies here. Defendants have not come forth with any evidence of actual disruption or bias in Bakalar's work. Bakalar was an excellent employee. And, her statements did not concern her job. As in *Haley*, Defendants have not and cannot meet their burden of proving that Bakalar's speech and political beliefs "substantially and materially interfered with the

---

[114] *See supra* at § III.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 68 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS    Document 75    Filed 08/04/21    Page 68 of 75

discharge of [her] duties and responsibilities" or that "the prevention of the disruption outweighed [her] interest in commenting on, and the public's right to be informed about, matters of public concern." 687 P.2d at 312 (*quoting Swanner*, 649 P.2d at 944).

## IV. Bakalar Is Entitled to Damages for Defendants' State Constitutional Violations.

Bakalar may pursue a claim for damages against Defendants for their flagrant violations of the state constitution. As the United States Supreme Court has recognized, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (*quoting Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60 (1803)). The Alaska Supreme Court has accordingly held that the Alaska Constitution supplies an independent cause of action for damages "in cases of flagrant constitutional violations where little or no alternative remedies are available." *Dick Fischer Dev. No. 2, Inc. v. Dept. of Admin.*, 838 P.2d 263, 268 (Alaska 1992).

Defendants' sole argument with regard to the issue of damages under the Alaska Constitution is that its violations were not flagrant. Although there is little caselaw offering guidance on what constitutes a "flagrant" violation, that is understandable; the Supreme Court of Alaska has never faced such a clear instance of political patronage as this one. Defendants' demand for a loyalty pledge trampled on Bakalar's and other employees' rights to free association. Requesting resignation from thousands of non-policymaking employees simply because they were hired by a previous administration is a blatant

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 69 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

patronage practice clearly foreclosed by *Elrod*, *Branti*, and *Rutan*,[115] and therefore even more clearly foreclosed by the more-protective Alaska Constitution. Babcock's accompanying demand that employees "express a positive desire" to work on the Governor's "agenda" in order to get back in with the administration can only be interpreted as pressure to shape their political orientations, chill political speech, and screen out employees unwilling to align themselves with the Governor's politics. Though "flagrance" is a hard thing to measure, it is difficult to envision a more flagrant violation of the rule against patronage practices than a demand to endorse a favored political party's agenda. This was a "direct action on the part of the defendants to thwart [employees'] constitutional right[s]" and therefore constituted a flagrant constitutional violation. *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005).

Terminating Bakalar also flagrantly violated the Alaska Constitution's free-speech clause. As argued above, Bakalar had a fundamental right to speak about political issues, which the Alaska Constitution explicitly recognizes.[116] She was clearly discharged for doing so, despite her not being a policymaker according to either commonsense or Alaska law, and despite her routinely excelling at her job. And Babcock's shifting justification for terminating Bakalar shows that even he knew or assumed his political motivations flew in the face of the Alaska Constitution.

---

[115] *See supra* at § I.B.
[116] *See supra* at § III.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 70 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 70 of 75

Defendants' constitutional violations are even more flagrant in light of Alaska's constitutional merit principle. *See* Alaska Const. art. XII, Sec. 6. The framers of Alaska's Constitution explicitly foretold, and hoped to prevent, the political patronage exemplified by Defendants' actions.[117] Alaska's Constitution could not more clearly forbid Governor Dunleavy's patronage scheme and the consequent political firing of an employee as well-regarded as Bakalar. Accordingly, this Court should deny Defendants' request for summary judgment on the issue of damages for violations of the Alaska Constitution.

## V. Defendants Violated the Implied Covenant of Good Faith and Fair Dealing.

Defendants' unconstitutional and bad-faith conduct violated the implied covenant of good faith and fair dealing in Bakalar's employment contract.

All "employment contracts are subject to the covenant of good faith and fair dealing." *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 356 (Alaska 2011). This covenant contains an objective and a subjective component, and "subjective bad faith is not always required" to create a breach. *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1225 (Alaska 1992). The objective component requires employers to "act in a manner that a reasonable person would regard as fair." *Id.* (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002)) (internal quotation marks omitted). An employer may breach this element in cases involving "terminations on grounds that were found unconstitutional, and firings that violated public policy." *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1140 (Alaska 1999). By contrast, "[t]he subjective

---

[117] *See supra* at § II.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 71 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 71 of 75

element focuses… on the employer's motives." *Id.* "An employer engages in subjective bad faith when it discharges an employee for the purpose of depriving him or her of one of the benefits of the contract." *Id.* Such a purpose may be presumed when "[t]he circumstances surrounding… termination give rise to an inference" that the employee was fired for an improper reason, such as malicious deprivation. *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983). Bakalar's termination violated both elements of this covenant.

Bakalar's termination violated the objective element of the covenant of good faith and fair dealing because it was unconstitutional. In *Haley*, the Alaska Supreme Court ruled that a legislative research assistant could collect damages under the covenant when she was fired for her political speech in violation of the First Amendment because "implicit in her contract of employment was the State's promise not to terminate Haley for an unconstitutional reason." 687 P.2d at 318. "In effect, [the Court held] that when the State fires an employee for an unconstitutional reason, this amounts to unfair dealing as a matter of law and gives rise to contract remedies*." Id.* This reasoning applies directly to Bakalar, who was terminated for reasons that violated the merit-principle and free-speech clauses of the Alaska Constitution, as well as the First Amendment of the United States Constitution, and that were therefore unfair.[118] Bakalar's claim thus prevails regardless of whether she has a constitutional cause of action; the common law provides one through the duty of good faith and fair dealing.

---

[118] *Id.*

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Bakalar's termination also violated the objective element of the covenant of good faith and fair dealing because it violated public policy. In *Luedtke*, the Alaska Supreme Court ruled that the covenant was violated when an employee was suspended after being "tested for drug use without prior notice." 834 P.2d at 1226. The court cited its own consideration of "public policy" to find "limits on the employer's right to invade the privacy of an employee." *Id.* at 1224-25; *see also Knight v. Am. Guard & Alert, Inc.*, 714 P.2d 788, 792 (Alaska 1986) ("We have never rejected the public policy theory."). Similar public policy considerations, rooted in principles of privacy and political freedom, ought to persuade this court to find for Bakalar. Political opinions unrelated to one's job simply should not be grounds for termination. And beyond Bakalar's personal rights, the State of Alaska would gravely suffer if elected officials could fire swaths of government employees for political reasons. Government expertise would evaporate, and polarization would skyrocket. Alaska's Personnel Act recognizes as much, instituting robust civil-service protection for employees like Bakalar. *See* A.S. § 39.25.010.[119] Acting against this clear public policy, Defendants breached the covenant of good faith and fair dealing when terminating Bakalar.

Lastly, Bakalar's termination violated the subjective element of the covenant of good faith and fair dealing because its purpose was to deprive Bakalar of her employment. *Seekins*, 973 P.2d at 1140. In *Mitford v. de Lasala*, the Alaska Supreme Court inferred that the covenant was violated when it appeared an employee was fired "for the purpose of

---

[119] *Id.*

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 73 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 73 of 75

preventing him from sharing in future profits." 666 P.2d at 1007; *see also Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage*, 783 P.2d 1164, 1169 (Alaska 1989) (bank violated covenant when it declined settlement offer to "take advantage" of its lawyer). The impermissible purpose was presumed in *Mitford* because the employer stated that it "did not recall the existence of the letter" giving the employee profit-sharing rights and fired the employee without cause. 666 P.2d at 1003. Babcock's firing of Bakalar emerged from similarly suspicious circumstances. First, Babcock is known to disdain individuals who do not share his politics.[120] Second, the pretextual reason Babcock first gave for terminating Bakalar—that he disapproved of the "tone of her resignation letter"—is so weak that even Defendants have created a new theory for termination during this litigation. Third, Bakalar was fired despite doing excellent work, and there is no reason to believe her excellent work would not have continued under Governor Dunleavy. Together, these facts give rise to an inference that Bakalar was fired because Defendants wanted to "own the libs" and deprive a progressive attorney of her employment with the State. That is a violation of the covenant of good faith and fair dealing. *See Mitford*, 666 P.2d at 1007; *Seekins*, 973 P.2d. at 1140.

## CONCLUSION

Governor Dunleavy and Babcock's unprecedented patronage scheme chilled thousands of public employees' speech. It eroded their freedom of association. It violated Alaska's merit system of employment and the duty of good faith and fair dealing. And ultimately, it resulted in retaliation against Bakalar, a non-policymaker, for expressing her

---

[120] Exh. 22.

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 74 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 74 of 75

political opinions and beliefs. The Court should grant Bakalar summary judgment on all of her claims and deny Defendants' motion for summary judgment in its entirety.

DATED this 30th day of July, 2021.

/s/ Mark Choate

_____

Mark Choate, 8011070
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
E-mail: lawyers@choatelawfirm.com

/s/ Adam W. Hansen

_____

Adam W. Hansen*
Eleanor Frisch*
Apollo Law LLC
333 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Phone: (612) 927-2969
E-mail: adam@apollo-law.com
            eleanor@apollo-law.com

*pro hac vice forthcoming

/s/ Amanda Harber

_____

Amanda Harber, 1011119
49th State Law LLC
P.O. Box 661
Soldotna, AK 99669
Phone: (907)
E-mail: amanda@49thstatelaw.com

OPPOSITION TO & CROSS-MOTION FOR SUMMARY JUDGMENT
*Bakalar v. Dunleavy et al.*, Case No. 3:19-cv-00025
Page 75 of 75

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99810
(907) 586-4490

Case 3:19-cv-00025-JWS   Document 75   Filed 08/04/21   Page 75 of 75