Mark Choate, AK #8011070
Attorney for Plaintiff
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Tel: (907) 586-4490
Fax: (206) 424-9705
Email: lawyers@choatelawfirm.com

Amanda Harber, AK
Attorney for Plaintiff
49TH STATE LAW LLC
P.O. Box 661
Soldotna, AK 99669
Tel: (907) 420-4290
Email: amanda@49thstatelaw.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ELIZABETH BAKALAR,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA,<br><br>　　　　Defendants. | Case No. 3:19-CV-00025-JWS<br><br>AFFIDAVIT OF ELIZABETH BAKALAR IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT |

STATE OF   Texas           )
                           ) ss.
  County of Harris         )

ELIZABETH BAKALAR, being duly sworn upon oath, deposes and states:

1. I am more than 21 years of age and if called to court would testify as follows:

2. I am the plaintiff in this matter and over the age of 18 years. I make this affidavit in support of the Reply to Opposition to Plaintiff's Cross-Motion for Summary Judgment.

3. In my experience as an Assistant Attorney General (AAG) for the State of Alaska, neither my private political views nor my opinions have never been an element of my work.

4. There were no requirements for political affiliation or allegiance when I applied for the position as an AAG. As far as I can recall, the only requirement for me once it was determined I met the qualifications for the job was for me to maintain a license to practice law in good standing.

5. I had already taken an "Oath of Attorney" when admitted to the Alaska Bar which says in part that I swear or affirm: "I will support the Constitution of the United States and the Constitution of the State of Alaska."

6. Before I was fired from my position with the Department of Law, I had worked with four different governors through five administrations. Other than Governor Dunleavy, I recall no situation in which I was required to prove or demonstrate political loyalty to a specific governor or his administration, either formally or informally.

7. At all times, my job as an AAG was to perform the tasks assigned to me from my superiors, consistent with my understanding of the law. I read the law as I was taught to in law school and in my work both as a law clerk and attorney. I did not read it through a political prism nor was I ever asked to do so.

8. I have been complemented in performance evaluations and my superiors for the speed of my legal analysis and the quality of my writing. Those skills made me someone to whom other lawyers and supervisors could reliably turn when legal product needed to be

generated, especially under tight deadlines. The sports metaphor was that I was a "utility infielder". I could play any position competently and as needed by the team.

9. Because I was reliable and could produce high quality legal work, I was asked to write several Attorney General Opinions (AGO) on a variety of topics. Not once was I told or directed by anyone to write an AGO based on the "politics" of the current administration or the politics of my supervisors.

10. I was assigned to work for a number of different state departments and divisions, providing legal assistance and advice. For example, I advised the Division of Motor Vehicles and Department of Health and Social Services on numerous regulatory issues; I assisted the Department of Commerce and Department of Health and Social Services with grant compliance; I defended the State against claims of inadequate language assistance under Section 203 of the Voting Rights Act; I advised against certifying the recall of two Republican house representatives; I advised for and against the certification of ballot measures on topics ranging from minimum wage to oil taxes to marijuana to salmon fisheries. I defended the Division of Retirement and Benefits in administrative proceedings regarding health insurance claims. I advised and defended the Division of Occupational Health and Safety and the State's Vocational Rehabilitation program in administrative proceedings. I helped interpret the Alaska Public Records Act for purposes of responding to requests for public records; I conducted Public Records Act trainings for colleagues and numerous state agencies, including the Division of Motor Vehicles and the Office of Administrative Hearings. I handled Child in Need of Aid and employment appeals. I did sectional analyses of legislation for bill reviews. These are just some examples of my daily work.

Page 3 of 5

Case 3:19-cv-00025-JWS Document 95 Filed 11/22/21 Page 3 of 5

11. I was never asked to provide a legal opinion that was influenced or based upon "politics". No one ever asked for my political opinions and I never even considered inserting my personal opinions, political or otherwise, in the work I performed as a state attorney.

12. One of the divisions I advised was the Division of Elections. This was not my only client, as its needs were cyclical and most urgent during election years, and I needed other work and clients to keep me busy. I provided legal support to the Division of Elections as to the application of the law to the question brought to me. The Division of Elections is apolitical. I was never asked to tailor or condition my advice on a specific political philosophy or political goal. I gave legal advice based on my best reading and analysis of the law. Politics were never considered or involved.

13. At no time was I ever asked to participate in formulating "policy" in any of the work I did as an AAG. I was never high enough in the "chain of command" to be someone who participated at that level of decision-making. At all times, I provided my view of how the law applies to questions before whatever client I was advising at the time.

14. My personal blog, "One Hot Mess Alaska," has been the subject of ongoing criticism by some people who perceive all actions through a political lens. The Department of Law addressed those concerns by hiring William Evans, a well-regarded Anchorage private attorney, to investigate whether there were any problems with my maintaining my blog while working as an AAG.

15. Mr. Evans interviewed a number of people and reviewed my entire blog. His conclusion was that my blog was a valid exercise of my free speech rights and that there was no indication that I had engaged in any wrongdoing or improper conduct, including using work time for political activity.

16. After Evans' report, I understood two things. First, that there were no conflicts between my work as an AAG and the exercise of private free speech on my blog. Second, there were no problems with my continuing to produce my blog while employed as an AAG.

17. Based on those understandings, I continued my blog and was subsequently terminated by the incoming Dunleavy Administration for what I had been informed by my superiors was constitutionally protected speech.

18. At no time prior to my termination did anyone ever suggest that there was a conflict between my work as an AAG, working on behalf of a number of departments and divisions, including elections, and my private political speech.

19. At no time prior to my termination, did anyone ever suggest that because of my private political speech, that I should be reassigned or voluntarily transfer to another position in the Department of Law.

20. At no time prior to my termination, did anyone ever advise me that my private political speech was not allowed or conflicted in any fashion with my duties as an AAG.

FURTHER, AFFIANT SAYETH NAUGHT.

Dated this __22__ day of November, 2021 at Juneau, Alaska.

_____
Elizabeth Bakalar

SUBSCRIBED AND SWORN TO before me this __22__ day of November 2021.

ANA LAURA SALAZAR URIBE
ELECTRONIC NOTARY PUBLIC
STATE OF TEXAS
NOTARY ID: 131757026
COMISSION EXP: OCT 11, 2022

_____
Notary Public for the State of   Texas
My Commission Expires:   October 11, 2022

Document Notarized using a Live Audio-Video Connection